# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## NEWARK DIVISION

| | | |
|---|---|---|
| DONNA GARBACCIO, individually and on behalf of all others similarly situated, | ) ) ) | No. |
| | ) | |
| Plaintiff, | ) ) | **CLASS ACTION COMPLAINT** |
| v. | ) ) | |
| ST. JOSEPH'S HOSPITAL AND MEDICAL CENTER AND SUBSIDIARIES, a New Jersey Nonprofit Corporation, ST. JOSEPH'S HEALTHCARE SYSTEM, INC., a New Jersey Nonprofit Corporation, JOHN AND JANE DOES 1-20, MEMBERS OF THE COMMITTEE THAT ADMINISTERS THE ST. JOSEPH'S HOSPITAL AND MEDICAL CENTER PENSION PLAN, each an individual, JOHN AND JANE DOES 21-40, MEMBERS OF THE EXECUTIVE FINANCE COMMITTEE OF THE BOARD OF TRUSTEES, each an individual, and JOHN and JANE DOES 41-60, each an individual, | ) ) ) ) ) ) ) ) ) ) ) | **CLAIM OF UNCONSTITUTIONALITY** |
| Defendants. | | |

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................... 1

II.     JURISDICTION AND VENUE ...................................................................... 5

III.    PARTIES ........................................................................................................ 6

        A.      Plaintiff Donna Garbaccio ................................................................. 6

        B.      Defendants .......................................................................................... 6

IV.     THE BACKGROUND OF THE CHURCH PLAN EXEMPTION ..................... 9

        A.      The Adoption of ERISA ..................................................................... 9

        B.      The Scope of the Church Plan Exemption in 1974 ................................ 10

        C.      The Changes to the Church Plan Exemption in 1980 ............................ 11

V.      ST. JOSEPH'S ............................................................................................. 15

        A.      St. Joseph's Operations ................................................................... 15

        B.      The St. Joseph's Plan ....................................................................... 19

                1.      The St. Joseph's Plan Meets the Definition of an
                        ERISA Defined Benefit Plan ....................................................... 20

                2.      The Defendants Meet the Definition of ERISA
                        Fiduciaries ................................................................................. 20

                3.      The St. Joseph's Plan Is Not A Church Plan ............................... 25

VI.     CLASS ALLEGATIONS ................................................................................ 33

        A.      Numerosity ....................................................................................... 33

        B.      Commonality ..................................................................................... 33

        C.      Typicality .......................................................................................... 34

        D.      Adequacy .......................................................................................... 35

E. Rule 23(b)(1) Requirements ....................................................35

F. Rule 23(b)(2) Requirements ....................................................36

G. Rule 23(b)(3) Requirements ....................................................36

VII. CAUSES OF ACTION.............................................................37

COUNT I ..............................................................................37

(Claim for Equitable Relief Pursuant to ERISA §§ 502(a)(2)
and 502(a)(3) Against All Defendants).........................................37

COUNT II..............................................................................39

(Claim for Violation of Reporting and Disclosure Provisions
Against Defendant St. Joseph's) ................................................39

COUNT III .............................................................................42

(Claim for Failure to Provide Minimum Funding Against
Defendant St. Joseph's)...........................................................42

COUNT IV .............................................................................43

(Claim for Failure to Establish the Plan Pursuant to Written
Instruments Meeting the Requirements of ERISA
§ 402 Against Defendant St. Joseph's) .........................................43

COUNT V ..............................................................................44

(Claim for Failure to Establish a Trust Meeting the
Requirements of ERISA § 403 Against Defendant St.
Joseph's) ...........................................................................44

COUNT VI ..............................................................................44

(Claim for Clarification of Future Benefits Under ERISA
§§ 502(a)(1)(B) and 502(a)(3) Against Defendant St.
Joseph's)............................................................................44

COUNT VII.............................................................................45

(Claim for Civil Money Penalty Pursuant to ERISA
§ 502(a)(1)(A) Against Defendant St. Joseph's)...........................45

COUNT VIII .......................................................................................46

(Claim for Breach of Fiduciary Duty Against All Defendants)...............46

COUNT IX ........................................................................................54

(Claim for Declaratory Relief That the Church Plan
Exemption Violates the Establishment Clause of the
First Amendment of the Constitution, and Is Therefore
Void and Ineffective) ..................................................................54

VIII.   PRAYER FOR RELIEF ......................................................................57

Plaintiff Donna Garbaccio, individually and on behalf of all those similarly situated, as well as on behalf of the St. Joseph's Hospital and Medical Center Pension Plan, as defined herein, by and through her attorneys, hereby alleges as follows:

## I.     INTRODUCTION

1.      Defendant St. Joseph's Hospital and Medical Center, by and through its subsidiaries and/or affiliates ("St. Joseph's" or "Defendant"), operates a healthcare conglomerate in New Jersey and provides healthcare services in the communities it serves. This case concerns whether St. Joseph's properly maintains its pension plan under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). As demonstrated herein, St. Joseph's fails to do so, to the detriment of its over 5,000 employees who deserve better.

2.      As its name implies, ERISA was crafted to protect employee retirement funds. A comprehensive history of ERISA put it this way:

> Employees should not participate in a pension plan for many years only to lose their pension…because their plan did not have the funds to meet its obligations. The major reforms in ERISA—fiduciary standards of conduct, minimum vesting and funding standards, and a government-run insurance program—aimed to ensure that long-service employees actually received the benefits their retirement plan promised.

James Wooten, THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, at 3 (U. Cal. 2004).

3.      This class action is brought on behalf of all participants and beneficiaries of the St. Joseph's Hospital and Medical Center Pension Plan, a noncontributory defined benefit pension plan that is established, maintained, administered, and/or sponsored by

St. Joseph's, St. Joseph's affiliates and/or by St. Joseph's committees (referred to as the "St. Joseph's Plan" or simply the "Plan") (the "Class").

4.      St. Joseph's is violating numerous provisions of ERISA—including, underfunding the St. Joseph's Plan—while erroneously claiming that the Plan is exempt from ERISA's protections because it is a "Church Plan." Two appellate courts, including the United States Court of Appeals for the Third Circuit, have recently concluded that the statutory language in ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A) is clear—only a church can establish a church plan, that the legislative history underscores this conclusion, and that any agency decisions that reach a different conclusion—private letter rulings obtained without input from plan participants—are entitled to no deference.  *See Kaplan v. Saint Peter's Healthcare Sys.*, 810 F.3d 175 (3d Cir. 2015); *Stapleton v. Advocate Health Care Network & Subsidiaries*, No. 15-1368, 2016 WL 1055784, --- F.3d --- (7th Cir. Mar. 17, 2016).

5.      The St. Joseph's Plan does not meet the definition of a "Church Plan" under ERISA because St. Joseph's plainly is not a church or a convention or association of churches and because the St. Joseph's Plan was not established by a church or a convention or association of churches. That should be the end of the inquiry under ERISA, resulting in a clear finding that the St. Joseph's Plan is not a Church Plan.  *See Kaplan v. Saint Peter's Healthcare Sys.*, 810 F.3d 175 (3d Cir. 2015); *Stapleton v. Advocate Health Care Network & Subsidiaries*, No. 15-1368, --- F.3d --- 2016 WL 1055784, ---F.3d --- (7th Cir. Mar. 17, 2016).

2

6.      St. Joseph's may claim that it is permitted to establish its own Church Plan under ERISA, even though it is not a church, because it is an organization "controlled by" or "associated with" a church, within the meaning of ERISA. Even if ERISA permitted such non-church entities to establish Church Plans, which it does not, St. Joseph's is not controlled by a church, as the evidence will show. Moreover, St. Joseph's is not associated with a church within the meaning of ERISA because it does not, as ERISA requires, "share common religious bonds and convictions" with a church.

7.      St. Joseph's is a non-profit healthcare conglomerate, not unlike other non-profit healthcare conglomerates with which St. Joseph's competes in its commercial healthcare activities. St. Joseph's is not owned or operated by a church and does not receive funding from a church. No denominational requirement exists for St. Joseph's employees. Indeed, St. Joseph's tells prospective employees that any choice of faith, or lack thereof, is not a factor in the recruiting and hiring of St. Joseph's employees. In choosing to recruit and hire from the population at large, St. Joseph's must also be willing to accept neutral, generally applicable regulations, such as ERISA, imposed to protect those employees' legitimate interests.

8.      If St. Joseph's, a non-profit healthcare conglomerate, could itself establish a Church Plan, which Plaintiff disputes, the Court would be required to evaluate many levels of evidence to determine whether St. Joseph's shares common "religious bonds and convictions" with a church.

9.      Moreover, if the Court weighed all this evidence and determined that St. Joseph's did share such common religious bonds and convictions with a church, or if for

any other reason the Court determined that the St. Joseph's Plan fell within the scope of the Church Plan exemption, the Church Plan exemption would then be, as applied to St. Joseph's, an unconstitutional accommodation under the Establishment Clause of the First Amendment. St. Joseph's claims, in effect, that the participants in its defined benefit pension plan must be exempted from ERISA protections, and St. Joseph's must be relieved of its ERISA financial obligations, because St. Joseph's claims certain religious beliefs. The Establishment Clause, however, does not allow such an economic preference for St. Joseph's and burden-shifting to St. Joseph's employees. Extension of the Church Plan exemption to St. Joseph's would be unconstitutional under Supreme Court law because it: (A) is not necessary to further the stated purposes of the exemption; (B) harms St. Joseph's workers; (C) puts St. Joseph's competitors at an economic disadvantage; (D) relieves St. Joseph's of no genuine religious burden created by ERISA; and (E) creates more government entanglement with alleged religious beliefs than compliance with ERISA creates.

10.     St. Joseph's claim of Church Plan status for its defined benefit pension plan fails under both ERISA and the First Amendment. Plaintiff seeks an Order requiring St. Joseph's to comply with ERISA and afford the Class all the protections of ERISA with respect to the St. Joseph's Plan, as well as an Order finding that the Church Plan exemption, as claimed by St. Joseph's, is unconstitutional because it violates the Establishment Clause of the First Amendment.

4

## II.     JURISDICTION AND VENUE

11.     **Subject Matter Jurisdiction.**  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA.

12.     **Personal Jurisdiction.**  This Court has personal jurisdiction over all Defendants because ERISA provides for nationwide service of process.  ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2). All of the Defendants are either residents of the United States or subject to service in the United States, and the Court therefore has personal jurisdiction over them. The Court also has personal jurisdiction over them pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) because they would all be subject to a court of general jurisdiction in New Jersey as a result of Defendant St. Joseph's being headquartered in, transacting business in and/or having significant contacts with this District.

13.     **Venue.** Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because (a) the Plan is administered in this District, (b) some or all of the violations of ERISA took place in this District, and/or (c) Defendant St. Joseph's may be found in this District.

14.     Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendant St. Joseph's is headquartered in this District, and systematically and continuously does business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

5

### III.   PARTIES

**A.   Plaintiff Donna Garbaccio**

15.    Plaintiff Donna Garbaccio currently lives in Wyckoff, Bergen County, New Jersey and was employed as a registered nurse at St. Joseph's Hospital and Medical Center in Paterson, New Jersey from June 12, 1978 until 1998. Plaintiff Garbaccio is a vested participant in the St. Joseph's Hospital and Medical Center Pension Plan, because she is or will become eligible for pension benefits under the Plan to be paid at normal retirement age. Additionally, and alternatively, Plaintiff Garbaccio has a colorable claim to benefits under the St. Joseph's Plan and is a participant within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), and is therefore entitled to maintain an action with respect to the St. Joseph's Plan pursuant to ERISA §§ 502(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3), 29 U.S.C. §§ 1132(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3).

**B.   Defendants**

16.    As discussed below, all the Defendants are ERISA fiduciaries.

17.    **Defendant St. Joseph's.** Defendant St. Joseph's Hospital and Medical Center and subsidiaries is a 501(c)(3) non-profit corporation that is headquartered in Paterson, New Jersey, which is located in Passaic County.  St. Joseph's was organized under, and governed by, New Jersey law, with operations throughout New Jersey. St. Joseph's includes St. Joseph's Regional Medical Center and St. Joseph's Children's Hospital, based in Paterson, New Jersey; St. Joseph's Wayne Hospital in Wayne, New Jersey; St. Vincent's Healthcare and Rehab Center in Cedar Grove, New Jersey; and more than three dozen satellite sites across New Jersey. Defendant St. Joseph's is the

6

employer responsible for maintaining the St. Joseph's Plan and is, therefore, the plan sponsor of the St. Joseph's Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. §1002(16)(B).

18.     **Defendant St. Joseph's Healthcare System, Inc.** Defendant St. Joseph's Healthcare System, Inc. ("SJHS") is a 501(c)(3) not-for-profit holding corporation headquartered in Paterson, Passaic County, New Jersey, that is organized under, and governed by, New Jersey law. SJHS is the sole parent of Defendant St. Joseph's Hospital and Medical Center and subsidiaries. SJHS's other affiliated members include St. Joseph's Hospital and Medical Center Foundation, Inc. and St. Joseph's Wayne Hospital Foundation, Inc., which raise funds for St. Joseph's Regional Medical Center and Wayne Hospital; 200 Hospital Plaza Corporation, a non-profit corporation whose purpose is to further the operations of the Medical Center; SJHS Insurance Limited, a wholly owned captive insurance company domiciled in Bermuda that provides the System with general liability and professional medical liability insurance; and VHS Management, Inc., a New Jersey not-for-profit corporation that is the holding company of Visiting Health Services of New Jersey, Inc., a not-for-profit home health agency.

19.     **John and Jane Does 1-20, Members of the Committee that Administers the St. Joseph's Hospital and Medical Center Pension Plan (the "Pension Committee Defendants")**. Defendants John and Jane Does 1-20 are individuals who, through discovery, are found to be members of the committee that administers the St. Joseph's Plan. Upon information and belief, this committee went by the name "Pension Committee" in 1995 and continues to do so today. Also upon information and belief, the

7

Pension Committee Defendants provide fiduciary oversight for St. Joseph's employee benefit programs and retirement plans, including for the St. Joseph's Plan. The Pension Committee Defendants' responsibilities include monitoring of the Plan, as well as participant communication. These individuals will be added by name as Defendants in this action upon motion by Plaintiff at an appropriate time.

20.     **Defendants John and Jane Does 21-40, Members of the Executive Finance Committee of the Board of Trustees (the "Finance Committee Defendants").** Defendants John and Jane Does 21-40 are individuals who, through discovery, are found to be members of the Executive Finance Committee of the Board of Trustees. The Finance Committee Defendants provide fiduciary oversight for St. Joseph's employee benefit programs and retirement plans, including for the St. Joseph's Plan. The Finance Committee Defendants' responsibilities include overseeing the St. Joseph's Plan's funds and investments. These individuals will be added by name as Defendants in this action upon motion by Plaintiff at an appropriate time.

21.     **Defendants John and Jane Does 41-60.** Defendants John and Jane Does 41-60 are individuals who, through discovery, are found to have fiduciary responsibilities with respect to the St. Joseph's Plan and are fiduciaries within the meaning of ERISA. These individuals will be added by name as Defendants in this action upon motion by Plaintiff at an appropriate time.

22.     John and Jane Does 1-20, members of the Committee that Administers the St. Joseph's Plan; John and Jane Does 21-40, members of the Executive Finance

Committee of the Board of Trustees; and John and Jane Does 41-60 are collectively referred to herein as the "Individual Defendants."

## IV.    THE BACKGROUND OF THE CHURCH PLAN EXEMPTION

### A.    The Adoption of ERISA

23.    Following years of study and debate, and broad bipartisan support, Congress adopted ERISA in 1974, and the statute was signed into law by President Ford on Labor Day of that year. Among the factors that led to the enactment of ERISA were the widely publicized failures of certain defined benefit pension plans, especially the plan for employees of Studebaker Corporation, an automobile manufacturing company, which defaulted on its pension obligations in 1965. *See generally John Langbein, et al.,* PENSION AND EMPLOYEE BENEFIT 78-83 (2010).

24.    As originally adopted in 1974, and today, ERISA protects the retirement savings of pension plan participants in a variety of ways. As to participants in traditional defined benefit pension plans, such as the Plan at issue here, ERISA mandates, among other things, that such plans be currently funded and actuarially sound, that participants' accruing benefits vest pursuant to certain defined schedules, that the administrators of the plan report certain information to participants and to government regulators, that the fiduciary duties of prudence, diversification, loyalty, and so on apply to those who manage the plans, and that the benefits promised by the plans be guaranteed, up to certain limits, by the Pension Benefit Guaranty Corporation ("PBGC"). *See, e.g.,* ERISA §§ 303, 203, 101-106, 404-406, 409, 4007, 4022, 29 U.S.C. §§ 1083, 1053, 1021-1026, 1104-1106, 1109, 1307, and 1322.

9

25.     ERISA centers on pension plans, particularly defined benefit pension plans, as is reflected in the very title of the Act, which addresses "retirement income security." However, ERISA also subjects to federal regulation defined contribution pension plans (such as 401(k) plans) and welfare plans, which provide health care, disability, severance and related non- retirement benefits.  ERISA §§ 3(34) and (1), 29 U.S.C. §§ 1002(34) and (1).

**B.     The Scope of the Church Plan Exemption in 1974**

26.     As adopted in 1974, ERISA provided an exemption from compliance for certain plans, in particular governmental plans and church plans.  Plans that met the statutory definitions were exempt from all of ERISA's substantive protections for participants.  ERISA § 4(b)(2), 29 U.S.C. § 1003(b)(2) (exemption from Title I of ERISA); ERISA § 4021(b)(3), 29 U.S.C. § 1321(b)(3) (exemption from Title IV of ERISA).

27.     ERISA defined a "Church Plan" as a plan "established and maintained for its employees by a church or by a convention or associations of churches."[1]

28.     Under the 1974 legislation, although a Church Plan was required to be established and maintained by a church, it could also include employees of certain pre-existing agencies of such church, but only until 1982. ERISA § 3(33)(C) (1974), 29 U.S.C. § 1002(33)(C) (1974) (current version as amended at 29 U.S.C. § 1002(33) (West

---

[1] ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A).  ERISA is codified in both the labor and tax provisions of the United States Code, titles 29 and 26 respectively.  Many ERISA provisions appear in both titles. For example, the essentially identical definition of Church Plan in the Internal Revenue Code ("IRC") is found at 26 U.S.C. § 414(e).

2013)). Thus, under the 1974 legislation, a pension plan that was not established and maintained by a church could not be a Church Plan.  *Id.*

**C.   The Changes to the Church Plan Exemption in 1980**

29.   Church groups had two major concerns about the definition of "Church Plan" in ERISA as adopted in 1974. The first, and far more important, concern was that Church Plans after 1982 could not include the lay employees of agencies of a church. The second concern that arose in the church community after 1974 was more technical. Under the 1974 statute, all Church Plans, single-employer or multiemployer, had to be "established and maintained" by a church or a convention/association of churches. This ignored the role of the churches' financial services organizations in the day-to-day management of the pension plans. In other words, although Church Plans were "established" by a church, in practice they were often "maintained" and/or "administered" by a separate financial services organization of the church, usually incorporated and typically called a church "pension board."

30.   These two concerns ultimately were addressed when ERISA was amended in 1980 in various respects, including a change in the definition of "Church Plan." Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), P.L. No. 96-364. The amended definition is current law.

31.   As to the first concern (regarding lay employees of agencies of a church), Congress included a new definition of "employee" in subsection (C)(ii)(II) of § 3(33) of ERISA. 29 U.S.C. § 1002(33)(C)(ii)(II) (1980) (current version at 29 U.S.C. § 1002(33)(C)(ii)(II) (West 2013)). As amended, an "employee" of a church or a

11

convention/association of churches includes an employee of an organization "which is controlled by or associated with a church or a convention or association of churches." *Id.* The phrase "associated with" is then defined in ERISA§ 3(33)(C)(iv) to include only those organizations that "share[] common religious bonds and convictions with that church or convention or association of churches." 29 U.S.C. § 1002(33)(C)(iv) (1980) (current version at 29 U.S.C. § 1002(33)(C)(iv) (West 2013)). Although this new definition of "employee" permitted a "Church Plan" to include among its participants employees of organizations controlled by or associated with the church, convention, or association of churches, it remains the case that a plan covering such "employees" cannot qualify as a "Church Plan" unless it was "established by" the church, convention, or association of churches. ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A) (West 2013).

32.     As to the second concern (regarding plans "maintained by" a separate church pension board), the 1980 amendments spoke to the issue as follows:

> A plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches includes a plan maintained by an organization, whether a civil law corporation or otherwise, *the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits*, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.

ERISA § 3(33)(C)(i) (1980), 29 U.S.C. § 1002(33)(C)(i) (1980) (emphasis added) (current version at 29 U.S.C. § 1002(33)(C)(i) (West 2013)). Accordingly, under this provision, a plan "established" by a church or by a convention or association of churches could retain its "Church Plan" status even if the plan was "maintained by" a distinct

organization, so long as (1) "the principal purpose or function of [the organization] is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits" and (2) the organization is "controlled by or associated with" the church or convention or association of churches.  *Id.*

33.     This church "pension board" clarification, however, has no bearing on plans that were not "established" by a church or by a convention or association of churches. Thus, a plan "established" by an organization "controlled by or associated with" a church is not a "Church Plan" because it was not "established" by a church or by a convention or association of churches.  *See Stapleton*, 2016 WL 1055784, at *11 ("[T]he plain language of (33)(C) merely adds an alternative meaning to one of the subsection (33)(A)'s two elements—"maintain" element—but does not change the fact that a plan must still be established by a church."); *Kaplan*, 810 F.3d at 183 ("The plain terms of ERISA only make these exemptions available to plans established in the first instance by churches.").

34.     In the alternative, this "pension board" clarification has no bearing on plans that were not "maintained" by a church pension board. Thus, even if a plan were "established" by a church, and even if it were "maintained by" an organization "controlled by or associated with" a church, such as a school, hospital, or publishing company, it still would not be a "Church Plan" if the principal purpose of the organization was other than the administration or funding of the plan. In such plans, the plan is "maintained" by the school, hospital or publishing company, and usually through the human resources department of such entity. It is not maintained by a church pension

13

board: No "organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits" maintains the plan. *Compare with* ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i) (1980) (current version at 29 U.S.C. § 1002(33)(C)(i) (West 2013)).

35.     The requirements for Church Plan status under ERISA, both as originally adopted in 1974 and as amended in 1980, are, as explained above, very clear. And there is no tension between the legislative history of the 1980 amendment and the amendment itself: the Congress enacted exactly what it wanted to enact. Fundamental to the scheme, both as originally adopted and as fine-tuned in 1980, was that neither an "affiliate" of a church (using the 1974 language) nor "an organization controlled by or associated with" a church (using the 1980 language) could itself establish a Church Plan. Its employees could be *included* in a Church Plan, but if it sponsored its own plan, that was not a Church Plan. With respect to "pension boards," the 1980 legislation simply clarified the long standing practice that churches could use their own financial organizations to manage their Church Plans.

36.     Unfortunately, in 1983, in response to a request for a private ruling, the Internal Revenue Service ("IRS") issued a short General Counsel Memorandum that misunderstood the statutory framework. The author incorrectly relied on the "pension board" clarification to conclude that a non-church entity could sponsor its own Church Plan as long as the plan was managed by some "organization" that was controlled by or associated with a Church. This, of course, is not what the statute says, nor what Congress

intended. In any event, this mistake was then repeated, often in verbatim language, in subsequent IRS determinations and, after 1990, in Department of Labor ("DOL") determinations. Under the relevant law, these private rulings may only be relied upon by the parties thereto, within the narrow confines of the specific facts then disclosed to the agencies, and are not binding on this Court in any event. Moreover, the IRS and DOL interpretations of the statutory framework, as expressed in these private rulings, are not entitled to judicial deference because the rulings are conclusory, inconsistent, and lack meaningful analysis. *See Stapleton*, 2016 WL 1055784, at *12 ("[T]he IRS letter rulings are not persuasive and we owe them no deference.").

## V.    ST. JOSEPH'S

### A.    St. Joseph's Operations

37.    St. Joseph's is a 501(c)(3) non-profit corporation organized under, and governed by, New Jersey law, that is headquartered in Paterson, New Jersey. It owns two acute care hospitals and numerous subsidiaries. It bills itself as "a multifaceted integrated healthcare organization that provides a comprehensive spectrum of sophisticated services designed to heal the minds, bodies and spirits of those in need" that is "recognized as one of New Jersey's – and the New York metropolitan area's – most respected healthcare providers."

38.    St. Joseph's operates two hospital facilities: St. Joseph's Hospital and Medical Center d/b/a St. Joseph's Regional Medical Center ("Medical Center"), and St. Joseph's Wayne Hospital, Inc. ("Wayne Hospital"). The Medical Center was founded in 1867 and is located in Paterson, New Jersey. It is an acute-care hospital with 651 licensed

beds and 30 newborn bassinets and provides a full range of health care services. Wayne
Hospital is an acute-care hospital located in Wayne, New Jersey that has 229 licensed
beds and provides comprehensive medical surgical care and emergency and diagnostic
services. The Medical Center and Wayne Hospital merged effective January 1, 2010.

39.     In addition to two acute-care hospitals, St. Joseph's wholly owns numerous
subsidiaries, including St. Vincent's Nursing Home, a 151-bed skilled nursing facility; St.
Joseph's Hospital Housing Corp. and its subsidiaries Genesis Property Development
Holding, LLC and Genesis Property Development, LLC, which provide property
management services for nonhospital-related real estate holdings; St. Joseph's
Healthcare, Inc., St. Joseph's Emergency Physicians, Inc., St. Joseph's Faculty
Physicians, Inc., and St. Joseph's Physicians, Inc., which manage the hospitals' faculty
staff billing services; and Harbor House, Inc. and subsidiaries, which provide housing
and services to individuals with mental illnesses.

40.     St. Joseph's is also the majority member of the following consolidated
subsidiaries: St. Joseph's Regional Cardiology, LLC and St. Joseph's Wayne Cardiology,
LLC, each of which operate a cardiac catheterization laboratory; Blue Moon Properties,
LLC, which provides radiology management services; St. Joseph's Ambulatory Surgical
Associates, LLC, which invests in ambulatory surgical centers; and St. Joseph's Surgery
Management, LLC, which was established to manage the surgical services at the
hospitals.

41.     St. Joseph's is itself a wholly owned subsidiary of its parent, SJHS. SJHS is
a not-for-profit holding corporation sponsored by the Sisters of Charity of Saint

16

Elizabeth. SJHS's affiliated members include, in addition to St. Joseph's, two public charities (St. Joseph's Hospital and Medical Center Foundation, Inc. and St. Joseph's Wayne Hospital Foundation, Inc.), a facility management company (200 Hospital Plaza Corporation), a captive insurance company domiciled in Bermuda (SJHS Insurance Limited), and a non-profit home health agency (VHS Management, Inc. and subsidiary).

42.     According to its website, with more than 1,300 medical staff and nearly 5,100 employees, SJHS is the largest employer in Passaic County.

43.     The principle purpose or function of St. Joseph's is not the administration or funding of a plan or program for the provision of retirement or welfare benefits, or both, for the employees of a church or a convention or association of churches.

44.     As of its 2014 fiscal year end, St. Joseph's had approximately $ 738 million in assets and annual operating revenues of approximately $ 746 million.

45.     St. Joseph's and its affiliates employ more than 5,000 people.

46.     The executive leadership of St. Joseph's is comprised of lay people, and Executive Officers of St. Joseph's receive compensation in line with executive officers of other hospital systems.  As of 2014, SJHS's President and CEO received reportable compensation of $2.28 million.

47.     Like other large non-profit healthcare systems, St. Joseph's relies upon revenue bonds to raise money. St. Joseph's Series 2008 Debt Issue was for approximately $ 248.9 million and offered through the New Jersey Healthcare Facilities Financing Authority. The proceeds from the sale of the bonds were to be used by SJHS and applied

to finance, refinance, and reimburse the costs of certain of St. Joseph's health facilities and pay certain costs related to the issuance of the bonds.

48.    St. Joseph's also has significant sums invested in, among other things, fixed-income securities, equity securities, and alternative investments such as private equity limited partnership investments, invested through limited partnerships or limited access-type vehicles.

49.    St. Joseph's parent corporation SJHS holds itself out to be a healthcare corporation on its website, available at: https://www.stjosephshealth.org/.

50.    St. Joseph's is not a church.

51.    St. Joseph's is not a convention or association of churches.

52.    St. Joseph's is not listed in the Official Catholic Directory as a church.

53.    St. Joseph's is not owned by a church.

54.    St. Joseph's does not receive funding from a church.

55.    St. Joseph's does not claim that the a church has any liability for St. Joseph's debts or obligations.

56.    The governance of St. Joseph's, including the management of St. Joseph's affairs, is vested in St. Joseph's Board of Directors, not a church.

57.    St. Joseph's specifically chooses not to impose any denominational requirement on its employees.

58.    St. Joseph's has no denominational requirement for its patients and/or clients.

59.     St. Joseph's is required and has elected to comply with a broad array of elaborate state and federal regulations and reporting requirements, including health and safety, Medicare and Medicaid, fraud and abuse, tax, anti-trust, environmental and labor laws, among others.

60.     In addition, St. Joseph's purports to disclose, and not keep confidential, its own highly complex financial records.  St. Joseph's makes public its consolidated financial statements, which describe St. Joseph's representations as to its own highly complex operations and financial affairs.  St. Joseph's financial information is regularly disclosed to the rating agencies and the public when tax-exempt revenue bonds are issued.

## B.     The St. Joseph's Plan

61.     The St. Joseph's Plan is a non-contributory defined benefit pension plan that provides retirement benefits for substantially all of St. Joseph's employees.

62.     The St. Joseph's Plan was initially established as an ERISA-covered plan.

63.     Today, St. Joseph's operates the St. Joseph's Plan as a Church Plan.

64.     According to the 2014 consolidated financial statements for SJHS, the St. Joseph's Plan was underfunded by approximately $183 million as of December 31, 2014.

65.     Upon information and belief, the St. Joseph's Plan is administered by St. Joseph's Hospital and Medical Center and/or a committee appointed to act on its behalf.

66.     St. Joseph's maintains the St. Joseph's Plan.

67.     St. Joseph's has the power to continue the St. Joseph's Plan.

68.     St. Joseph's, as the plan sponsor, may amend the St. Joseph's Plan.

69.     St. Joseph's, as the plan sponsor, may terminate the St. Joseph's Plan.

70.     No church has the power to continue, amend, or terminate the St. Joseph's Plan.

### 1.     The St. Joseph's Plan Meets the Definition of an ERISA Defined Benefit Plan

71.     The St. Joseph's Plan is a plan, fund, or program that was established or maintained by St. Joseph's and which, by its express terms and surrounding circumstances, provides retirement income to employees and/or results in the deferral of income by employees to the termination of their employment or beyond.

72.     The St. Joseph's Plan meets the definition of "employee pension benefit plans" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).

73.     The St. Joseph's Plan does not provide for individual accounts for each participant and does not provide benefits based solely upon the amount contributed to a participants' account. As such, the St. Joseph's Plan is a defined benefit plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35), and is not an individual account plans or a "defined contribution plan" within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).

### 2.     The Defendants Meet the Definition of ERISA Fiduciaries

### a.     Nature of Fiduciary Status

74.     Every ERISA plan must have one or more "named fiduciaries." ERISA § 402(a) (1), 29 U.S.C. § 1102(a)(1). The person named as the "administrator" in the

plan instrument is automatically a fiduciary and, in the absence of such a designation, the sponsor is the administrator.  ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

75.    ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who in fact perform fiduciary functions.  Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

76.    Each of the Defendants was a fiduciary with respect to the Plans and owed fiduciary duties to the Plans and their participants and beneficiaries under ERISA in the manner and to the extent set forth in the Plan's documents and/or through their conduct.

77.    As fiduciaries, Defendants were required by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), to manage and administer the Plan and the Plan's investments solely in the interest of the Plan's participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

78.     ERISA permits fiduciary functions to be delegated to insiders without an automatic violation of the rules against prohibited transactions, ERISA § 408(c)(3), 29 U.S.C. § 1108(c)(3), but insider fiduciaries, like external fiduciaries, must act solely in the interest of participants and beneficiaries, not in the interest of the plan sponsor.

### b.     Defendants Are Each ERISA Fiduciaries

79.     **Defendant St. Joseph's.**  St. Joseph's is the employer responsible for maintaining the St. Joseph's Plan and is, therefore, the plan sponsor of the St. Joseph's Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).  Upon information and belief, at all relevant times, the terms of the instrument or instruments under which the St. Joseph's Plan is operated do not specifically designate any person as a Plan Administrator sufficient to meet the requirements of ERISA § 402, 29 U.S.C. §1102. In the absence of a Plan Administrator specifically designated in or pursuant to any instrument governing the Plan, the Plan Sponsor of the St. Joseph's Plan under ERISA § 3(16)(A)(ii), 29 U.S.C. § 1002 (16)(A)(ii), is the Plan Administrator.

80.     As St. Joseph's is and has been the Plan Sponsor of the St. Joseph's Plan, St. Joseph's was also the Plan Administrator of the Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).  As such, St. Joseph's also is and has been a fiduciary with respect to the Plan within the meaning of ERISA § 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii), because the Plan Administrator, by the very nature of the position, has discretionary authority or responsibility in the administration of the Plan.

81.     Upon information and belief, St. Joseph's responsibilities include fiduciary oversight of the St. Joseph's Plan.  Upon information and belief, St. Joseph's, by and

22

through its Board of Directors, had the responsibility to appoint, and hence to monitor and remove, the members of the committee that is responsible for administration of the Plan and other fiduciaries of the Plan.

82.     St. Joseph's is a fiduciary with respect to the St. Joseph's Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercises discretionary authority or discretionary control respecting management of the St. Joseph's Plan, exercises authority and control respecting management or disposition of the St. Joseph's Plan's assets, and/or has discretionary authority or discretionary responsibility in the administration of the St. Joseph's Plan.

83.     **Defendant St. Joseph's Healthcare System, Inc.** Upon information and belief, Defendant St. Joseph's Healthcare System, Inc. ("SJHS")'s responsibilities include fiduciary oversight of the St. Joseph's Plan, including managing and exerting discretionary authority or control over the assets of the St. Joseph's Plan. SJHS is a fiduciary with respect to the St. Joseph's Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because, as the parent corporation of St. Joseph's, it exercises discretionary authority or discretionary control respecting management of the St. Joseph's Plan, exercises authority and control respecting management or disposition of the St. Joseph's Plan's assets, and/or has discretionary authority or discretionary responsibility in the administration of the St. Joseph's Plan.

84.     **John and Jane Does 1-20, the Pension Committee Defendants.** Upon information and belief, the Pension Committee Defendants (John and Jane Does 1-20) are authorized to take action with respect to plan administration, including monitoring

employee benefit programs and the St. Joseph's Plan. Upon information and belief, the responsibilities of the Pension Committee Defendants include fiduciary oversight of the St. Joseph's Plan.

85. **John and Jane Does 21-40, the Finance Committee Defendants.** Upon information and belief, the Pension Committee Defendants (John and Jane Does 21-40) are authorized to manage the funds and investments of the St. Joseph's Plan. Upon information and belief, the responsibilities of the Finance Committee Defendants include fiduciary oversight of the St. Joseph's Plan.

86. **John and Jane Does 41-60.** John and Jane Does 21-40 are individuals who, through discovery, are found to have fiduciary responsibilities with respect to the St. Joseph's Plan.

87. The Pension Committee Defendants (John and Jane Does 1-20), the Finance Committee Defendants (John and Jane Does 21-40), and John and Jane Does 41-60 are fiduciaries with respect to the St. Joseph's Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because they exercise discretionary authority or discretionary control respecting management of the St. Joseph's Plan, exercise authority and control respecting management or disposition of the St. Joseph's Plan's assets, and/or have discretionary authority or discretionary responsibility in the administration of the St. Joseph's Plan.

88. Plaintiff reserves the right to amend this Complaint to name other or additional Defendants once she has had the opportunity to conduct discovery on these issues.

24

### 3.    The St. Joseph's Plan Is Not A Church Plan

89.    St. Joseph's claims that the St. Joseph's Plan is a Church Plan under ERISA § 3(33), 29 U.S.C. § 1002(33), and the analogous section of the IRC, and therefore exempt from ERISA's coverage under ERISA § 4(b)(2), 29 U.S.C. § 1003(b)(2).

#### a.    Only Two Types of Plans May Qualify as Church Plans and the St. Joseph's Plan Is Neither

90.    Under § 3(33) of ERISA, 29 U.S.C. § 1002(33), only the following two types of plans may qualify as Church Plans:

- First, under § 3(33)(A) of ERISA, 29 U.S.C. § 1002(33)(A), a plan *established and maintained* by a church or by a convention or association of churches, can qualify under certain circumstances and subject to the restrictions of §3(33)(B) of ERISA, 29 U.S.C. § 1002(33)(B); and

- Second, under § 3(33)(C)(i) of ERISA, 29 U.S.C. § 1002(33)(C)(i), a plan *established* by a church or by a convention or association of churches that is *maintained* by an organization, *the principal purpose or function of which* is the administration or funding of a retirement plan, if such organization is controlled by or associated with a church or convention or association of churches, can qualify under certain circumstances and subject to the restrictions of § 3(33)(B) of ERISA, 29 U.S.C. § 1002(33)(B).

Both types of plans must be "established" by a church or by a convention or association of churches in order to qualify as "Church Plans."

91.    Although other portions of ERISA § 3(33)(C) address, among other matters, who can be *participants* in Church Plans—in other words, which employees can be in Church Plans, etc.—these other portions of ERISA § 3(33)(C) do not add any other type of *plan* that can be a Church Plan.  29 U.S.C. § 1002(33)(C).  The only two types of plans that can qualify as Church Plans are those described in ERISA § 3(33)(A) and in § 3(33)(C)(i).  29 U.S.C. §§ 3(33)(A) and (C)(i).  The St. Joseph's Plan does not qualify

as a Church Plan under either ERISA § 3(33)(A) or § 3(33)(C)(i), 29 U.S.C. §§ 3(33)(A) or (C)(i).

92.     First, under ERISA § 3(33)(A), "[t]he term "church plan" means a plan established and maintained for its employees by a church or by a convention or association of churches which is exempt from tax under § 501 of title 26." ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A).  A church plan "means," and therefore by definition, *must be* "a plan established…by a church or convention or association of churches."

93.     The St. Joseph's Plan at issue here is not a Church Plan as defined in ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A), because the St. Joseph's Plan was established, maintained, administered and/or sponsored by St. Joseph's for its own, or its affiliates' own, employees.  Because neither St. Joseph's nor its affiliates are a church or a convention or association of churches, nor do they claim to be, the St. Joseph's Plan was not "established and maintained by" a church or by a convention or association of churches and was not maintained for employees of any church or convention or association of churches. That is the end of the inquiry under ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A).

94.     Second, under ERISA § 3(33)(C)(i), a Church Plan also includes a plan "established" by a church or by a convention or association of churches that is "maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the

employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches." ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i).

95.    The St. Joseph's Plan is not a Church Plan as defined in ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i), because the St. Joseph's Plan was not "established" by a church or by a convention or association of churches. The St. Joseph's Plan also does not qualify as a "Church Plan" under § 3(33)(C)(i) because it is not maintained by any entity whose principal purpose or function is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both. This ends any argument that the St. Joseph's Plan could be a Church Plan under ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i).

96.    In the alternative, to the extent that St. Joseph's claims that the St. Joseph's Plan qualifies as a "Church Plan" under § 3(33)(C)(i) because it is "maintained" by an entity within St. Joseph's, other than St. Joseph's, whose principal purpose or function is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, the claim fails because the only entity with the power to "maintain" the St. Joseph's Plan, which includes the power to continue and/or terminate the Plan, is St. Joseph's. The claim also fails because if all that is required for a plan to qualify as a church plan is that it meet section C's requirement that it be maintained by a church-associated organization, there would be no purpose for section A, which defines a church plan as one established and maintained by a church. This ends any argument that the St.

Joseph's Plan could be a Church Plan under ERISA § 3(33)(C)(i), 29 U.S.C.

§ 1002(33)(C)(i), because it is maintained by an entity other than St. Joseph's.

97.     However, even if the St. Joseph's Plan had been "established" by a church

and even if the principal purpose or function of St. Joseph's was the administration or

funding of the St. Joseph's Plan (instead of running a hospital conglomerate), the St.

Joseph's Plan still would not qualify as a Church Plan under ERISA § 3(33)(C)(i), 29

U.S.C. § 1002(33)(C)(i), because the principal purpose of the Plan is not to provide

retirement or welfare benefits to *employees of a church or convention or association of*

*churches*. For example, the thousands of participants in the St. Joseph's Plan work for St.

Joseph's, a non-profit healthcare system.  St. Joseph's is not a church or convention or

association of churches and its employees are not employees of a church or convention or

association of churches within the meaning of ERISA.

98.     Under ERISA § 3(33)(C)(ii), 29 U.S.C. § 1002(33)(C)(ii), however, an

employee of a tax exempt organization that is controlled by or associated with a church

or a convention or association of churches also may be considered an employee of a

church.  But this part of the definition merely explains which employees a church plan

may cover *once a valid church plan is established*.  The St. Joseph's Plan also fails this

part of the definition, because St. Joseph's is not controlled by or associated with a

church or convention or association of churches within the meaning of ERISA.

99.     St. Joseph's is a non-profit corporation under New Jersey law.

100.    St. Joseph's is governed by its Board of Directors.

28

101.   St. Joseph's Board of Directors must act in the best interests of St. Joseph's at all times.

102.   St. Joseph's Board of Directors owes fiduciary duties to the non-profit corporation.

103.   St. Joseph's is not controlled by a church.

104.   St. Joseph's is not controlled by a convention or association of churches.

105.   St. Joseph's is not operated by a church.

106.   In addition, St. Joseph's is not "associated with" a church or convention or association of churches within the meaning of ERISA. Under ERISA § 3(33)(C)(iv), 29 U.S.C. § 1002(33)(C)(iv), an organization "is associated with a church or a convention or association of churches if it shares common religious bonds and convictions with that church or convention or association of churches."  St. Joseph's does not share common religious bonds and convictions with a church or association of churches.

107.   For example, St. Joseph's tells prospective employees that religious affiliation is not a factor in the recruiting and hiring of St. Joseph's employees.  In choosing to recruit and hire from the population at large, St. Joseph's must also be willing to accept generally applicable, neutral regulations, such as ERISA, which protect those employees' legitimate interests.

108.   The St. Joseph's Plan further fails to satisfy the requirements of ERISA § 3(33)(C)(i) because this section requires the organization that maintains the plans to be "controlled by or associated with" a church or convention or association of churches within the meaning of ERISA.  29 U.S.C. § 1002(33)(C)(i).  Thus, even if (1) a church

29

had "established" the St. Joseph's Plan (which it did not), (2) the principal purpose or function of St. Joseph's was the administration or funding of the St. Joseph's Plan (instead of running a hospital conglomerate), and (3) St. Joseph's employees were employees of a church or convention or association of churches (which they are not), the St. Joseph's Plan still would not qualify as a Church Plan under ERISA § 3(33)(C)(i) because—for the reasons outlined above—St. Joseph's is not *controlled by or associated with* a church or convention or association of churches within the meaning of ERISA. *See* 29 U.S.C. § 1002(33)(C)(i).

109.    Finally, even if St. Joseph's were "controlled by or associated with" a church, and thus its employees were deemed "employees" of a church under ERISA § 3(33)(C)(ii)(2), and even if the St. Joseph's Plan was "maintained by" either a church or "pension board" satisfying the requirements of ERISA § 3(33)(C)(i), the St. Joseph's Plan still would not be a "Church Plan" because all "Church Plans" must be "established" by a church or by a convention or association of churches. 29 U.S.C. §§ 1002(33)(A), (C)(i).  Although a church may be deemed an "employer" of the employees of an organization that it "controls" or with which it is "associated," *see* ERISA § 3(33)(C)(iii), 29 U.S.C. § 1002(33)(C)(iii), nothing in ERISA provides that the church may be deemed to have "established" a retirement plan that was in fact established by the "controlled" or "associated" organization.  Accordingly, because a church did not establish the St. Joseph's Plan, the Plan cannot be a "Church Plan" within the meaning of ERISA.

**b.** **Even if the St. Joseph's Plan Could Otherwise Qualify as a Church Plan under ERISA §§ 3(33)(A) or (C)(i), it is Excluded From Church Plan Status under ERISA § 3(33)(B)(ii)**

110.    Under ERISA § 3(33)(B)(ii), 29 U.S.C. § 1002(33)(B)(ii), a plan is specifically excluded from Church Plan status if less than substantially all of the plan participants are members of the clergy or employed by an organization controlled by or associated with a church or convention or association of churches.  In this case, upon information and belief there are at least 5,000 participants in the St. Joseph's Plan, and very nearly all of them are non-clergy healthcare workers.

111.    If the approximately 5,000 participants in the St. Joseph's Plan do not work for an organization that is controlled by or associated with a church or convention or association of churches, then even if the St. Joseph's Plan could otherwise qualify as a Church Plan under ERISA §§ 3(33)(A) or (C)(i), it still would be foreclosed from Church Plan status under § 3(33)(B)(ii), 29 U.S.C. § 1002(33)(B)(ii).

112.    As set forth above, St. Joseph's is not controlled by a church, or any convention or association of churches, nor does it share common religious bonds and convictions with a church, or any convention or association of churches, within the meaning of ERISA § 3(33)(C)(iv).

**c.** **Even if the St. Joseph's Plan Could Otherwise Qualify as a Church Plan under ERISA, the Church Plan Exemption, as Claimed By St. Joseph's, Violates the Establishment Clause of the First Amendment of the Constitution, and is Therefore Void and Ineffective**

113.    The Church Plan exemption is an accommodation for *churches* that establish and maintain pension plans, and it allows such plans to be exempt from ERISA.

114.    The Establishment Clause guards against the establishment of religion by the government.  The government "establishes religion" when, among other activities, it privileges those with religious beliefs (*e.g.*, exempts them from neutral regulations) at the expense of nonadherents and/or while imposing legal and other burdens on nonmembers. Extension of the Church Plan exemption to St. Joseph's, a nonprofit hospital corporation, privileges St. Joseph's for its claimed faith at the expense of its employees, who are told that their faith is not relevant to their employment, yet who are then denied the benefit of insured, funded pensions, as well as many other important ERISA protections.  Similarly, St. Joseph's, a nonprofit hospital corporation, has a privileged economic advantage over its competitors in the commercial arena it has chosen, based solely on St. Joseph's claimed religious beliefs.  This too is prohibited by the Establishment Clause.  Simply put, when government provides a regulatory exemption "exclusively to religious organizations that is not required by the Free Exercise Clause and that . . . burdens nonbeneficiaries," it has endorsed religion in violation of the Establishment Clause.  *See, e.g., Tex. Monthly, Inc. v. Bullock*, 489 U.S. 1, 15, 18 n.8 (1989) (plurality opinion).

115.    As set forth in more detail below in Count IX, the extension of the Church Plan accommodation to St. Joseph's, a nonprofit healthcare corporation, violates the Establishment Clause because it is not necessary to further the stated purposes of the exemption, harms St. Joseph's workers, puts St. Joseph's competitors at an economic disadvantage, relieves St. Joseph's of no genuine religious burden created by ERISA, and creates more government entanglement with alleged religious beliefs than compliance

with ERISA creates. Accordingly, the Church Plan exemption, as claimed by St. Joseph's, is void and ineffective.

## VI.    CLASS ALLEGATIONS

116.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and the following class of persons similarly situated:  All participants or beneficiaries of the St. Joseph's Hospital and Medical Center Pension Plan.

117.    Excluded from the Class are any high-level executives at St. Joseph's or any employees who have responsibility or involvement in the administration of the Plan, or who are subsequently determined to be fiduciaries of the St. Joseph's Plan, including the Individual Defendants.

### A.    Numerosity

118.    The exact number of Class members is unknown to Plaintiff at this time, but may be readily determined from records maintained by St. Joseph's. St. Joseph's parent corporation, SPHS, through its subsidiaries, currently employs more than 5,000 individuals.  Upon information and belief, many, if not all, of those persons are likely members of the Class, and thus the Class is so numerous that joinder of all members is impracticable.

### B.    Commonality

119.    The issues regarding liability in this case present common questions of law and fact, with answers that are common to all members of the Class, including (1) whether the Plan is exempt from ERISA as a Church Plan, and, if not, (2) whether the

fiduciaries of the Plan have failed to administer and failed to enforce the funding obligations of the Plan in accordance with ERISA.

120.    The issues regarding the relief are also common to the members of the Class as the relief will consist of (1) a declaration that the Plan is an ERISA covered plan; (2) an order requiring that the Plan comply with the administration and enforce the funding obligations of the Plan in accordance with ERISA; and (3) an order requiring St. Joseph's to pay civil penalties to the Class, in the same statutory daily amount for each member of the Class.

**C.    Typicality**

121.    Plaintiff's claims are typical of the claims of the other members of the Class because her claims arise from the same event, practice and/or course of conduct, namely Defendants' failure to maintain the Plan in accordance with ERISA.  Plaintiff's claims are also typical because all Class members are similarly affected by Defendants' wrongful conduct.

122.    Plaintiff's claims are also typical of the claims of the other members of the Class because, to the extent Plaintiff seeks equitable relief, it will affect all Class members equally.  Specifically, the equitable relief sought consists primarily of (i) a declaration that the St. Joseph's Plan is not a Church Plan; and (ii) a declaration that the St. Joseph's Plan is an ERISA covered plan that must comply with the administration and funding requirements of ERISA. In addition, to the extent Plaintiff seeks monetary relief, it is for civil fines to the Class in the same statutory daily amount for each member of the Class.

123.   St. Joseph's does not have any defenses unique to Plaintiff's claims that would make Plaintiff's claims atypical of the remainder of the Class.

**D.     Adequacy**

124.   Plaintiff will fairly and adequately represent and protect the interests of all members of the Class.

125.   Plaintiff does not have any interests antagonistic to or in conflict with the interests of the Class.

126.   Defendant St. Joseph's and the Individual Defendants have no unique defenses against the Plaintiff that would interfere with Plaintiff's representation of the Class.

127.   Plaintiff has engaged counsel with extensive experience prosecuting class actions in general and ERISA class actions in particular.

**E.     Rule 23(b)(1) Requirements**

128.   The requirements of Rule 23(b)(1)(A) are satisfied because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.

129.   The requirements of Rule 23(b)(1)(B) are satisfied because adjudications of these claims by individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede the ability of other members of the Class to protect their interests.

**F.      Rule 23(b)(2) Requirements**

130.    Class action status is also warranted under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

**G.      Rule 23(b)(3) Requirements**

131.    If the Class is not certified under Rule 23(b)(1) or (b)(2), then certification under (b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members. The common issues of law or fact that predominate over any questions affecting only individual members include: (1) whether the Plan is exempt from ERISA as a Church Plan, and, if not, (2) whether the fiduciaries of the Plan have failed to administer and fund the Plan in accordance with ERISA, and (3) whether the Church Plan exemption, as claimed by St. Joseph's, violates the Establishment Clause of the First Amendment.  A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

A.      Individual Class members do not have an interest in controlling the prosecution of these claims in individual actions rather than a class action because the equitable relief sought by any Class member will either inure to the benefit of the Plan or affect each class member equally;

B.     Individual Class members also do not have an interest in controlling the prosecution of these claims because the monetary relief that they could seek in any individual action is identical to the relief that is being sought on their behalf herein;

C.     This litigation is properly concentrated in this forum, which is where Defendant St. Joseph's is headquartered and transacts business and where Plaintiff lives; and

D.     There are no difficulties managing this case as a class action.

## VII.   CAUSES OF ACTION

### COUNT I
### (Claim for Equitable Relief Pursuant to ERISA §§ 502(a)(2) and 502(a)(3) Against All Defendants)

132.    Plaintiff repeats and re-alleges the allegations contained in all foregoing paragraphs herein.

133.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to obtain "appropriate equitable relief ... to enforce any provisions of this title."  Pursuant to this provision, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiff seeks declaratory relief that the St. Joseph's Plan is not a Church Plan within the meaning of ERISA § 3(33), 29 U.S.C. § 1002(33), and thus is subject to the provisions of Title I and Title IV of ERISA.

134.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), also authorizes a participant or beneficiary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or

37

the terms of the plan." Pursuant to these provisions, Plaintiff seeks orders directing the St. Joseph's Plan's sponsor and administrator to bring the St. Joseph's Plan into compliance with ERISA.

135. ERISA § 502(a)(2), 29 U.S.C. § 1132(2), authorizes a participant or beneficiary to bring a civil action for appropriate relief under 29 U.S.C. § 1109(a), against a fiduciary "who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries" and the fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate." Because the operation of the Plan as a non-ERISA plan was a breach of Defendants' fiduciary duties, the Defendants breached their fiduciary duties and Plaintiff also seeks Plan-wide equitable and remedial relief under ERISA § 502(a)(2).

136. As the St. Joseph's Plan is not a Church Plan within the meaning of ERISA § 3(33), 29 U.S.C. § 1002(33), and meets the definition of a pension plan under ERISA § 3(2), 29 U.S.C. § 1002(2), the St. Joseph's Plan should be declared to be an ERISA-covered pension plan, and the St. Joseph's Plan's sponsor and administrator should be ordered to bring the St. Joseph's Plan into compliance with ERISA, including by remedying the violations set forth below.

## COUNT II
### (Claim for Violation of Reporting and Disclosure Provisions Against Defendant St. Joseph's)

137.   Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if fully set forth herein.

### 1.   Summary Plan Descriptions

138.   St. Joseph's has failed to provide and continues to fail to provide Plaintiff or any member of the Class with Summary Plan Descriptions with respect to the St. Joseph's Plan that meet the requirements of ERISA § 102, 29 U.S.C. § 1022, and the regulations promulgated thereunder.

139.   Because St. Joseph's has been the Plan Administrator of the Plan at all relevant times, it violated ERISA § 104, 29 U.S.C. § 1024, by failing to provide Plaintiff and members of the Class with adequate Summary Plan Descriptions.

### 2.   Annual Reports

140.   St. Joseph's has failed to file annual reports and continues to fail to file annual reports with respect to the St. Joseph's Plan with the Secretary of Labor in compliance with ERISA §  103, 29 U.S.C. § 1023, nor has it filed a Form 5500 and associated schedules and attachments, which the Secretary has approved as an alternative method of compliance with ERISA § 103, 29 U.S.C. § 1023.

141.   Because St. Joseph's has been the Plan Administrator of the St. Joseph's Plan at all relevant times, St. Joseph's has violated ERISA § 104(a), 29 U.S.C. § 1024(a), by failing to file annual reports with respect to the St. Joseph's Plan with the Secretary of Labor in compliance with ERISA § 103, 29 U.S.C. § 1023, or Form 5500s and associated

schedules and attachments, which the Secretary has approved as an alternate method of compliance with ERISA § 103, 29 U.S.C. § 1023.

### 3.    Summary Annual Reports

142.    St. Joseph's has failed to furnish and continues to fail to furnish Plaintiff or any member of the Class with a Summary Annual Report with respect to the St. Joseph's Plan in compliance with ERISA § 104(b)(3) and regulations promulgated thereunder.  29 U.S.C. § 1024(b)(3).

143.    Because St. Joseph's has been the Plan Administrator of the St. Joseph's Plan at all relevant times, St. Joseph's has violated ERISA § 104(b)(3), 29 U.S.C. § 1024(b)(3), by failing to furnish Plaintiff or any member of the Class with a Summary Annual Report with respect to the St. Joseph's Plan in compliance with ERISA § 104(b)(3) and the regulations promulgated thereunder.  29 U.S.C. § 1024(b)(3).

### 4.    Notification of Failure to Meet Minimum Funding

144.    St. Joseph's has failed to furnish and continues to fail to furnish Plaintiff or any member of the Class with a Notice with respect to the St. Joseph's Plan pursuant to ERISA § 101(d)(1), 29 U.S.C. § 1021(d)(1), informing them that St. Joseph's had failed to make payments required to comply with ERISA § 302, 29 U.S.C. § 1082, with respect to the St. Joseph's Plan.

145.    Defendant St. Joseph's is the employer that established and/or maintains the St. Joseph's Plan.

146.    Defendant St. Joseph's has failed to fund and continues to fail to fund the St. Joseph's Plan in accordance with ERISA § 302, 29 U.S.C. § 1082.

147.    As the employer maintaining the St. Joseph's Plan, Defendant St. Joseph's has violated ERISA § 302, 29 U.S.C. § 1082, by failing to fund the St. Joseph's Plan.  St. Joseph's is liable for its own violations of ERISA § 101(d)(1), 29 U.S.C. § 1021(d)(1), and as such may be required by the Court to pay Plaintiff and each class member up to $110 per day (as permitted by 29 C.F.R. § 2575.502(c)(3)) for each day that Defendant has failed to provide Plaintiff and each Class member with the notice required by ERISA § 101(d)(1), 29 U.S.C. § 1021(d)(1).

### 5.    Funding Notices

148.    St. Joseph's has failed to furnish and continues to fail to furnish Plaintiff or any member of the Class with a Funding Notice with respect to the St. Joseph's Plan pursuant to ERISA § 101(f), 29 U.S.C. § 1021(f).

149.    Because St. Joseph's has been the Plan Administrator of the St. Joseph's Plan at all relevant times, it has violated ERISA § 101(f) by failing to provide each participant and beneficiary of the St. Joseph's Plan with the Funding Notice required by ERISA §  101(f), and as such may be required by the Court to pay Plaintiff and each Class member up to $110 per day (as permitted by ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), amended by 29 C.F.R. § 2575.502c-1) for each day that Defendant has failed to provide Plaintiff and each Class member with the notice required by ERISA §  101(f).  29 U.S.C. § 1021(f).

### 6.    Pension Benefit Statements

150.   St. Joseph's has failed to furnish and continues to fail to furnish Plaintiff or any member of the Class with  Pension Benefit Statements, with respect to the St. Joseph's Plan, pursuant to ERISA § 105(a)(1), 29 U.S.C. § 1025(a)(1).

151.   Because St. Joseph's has been the Plan Administrator of the St. Joseph's Plan at all relevant times, it has violated ERISA § 105(a)(1) and as such may be required by the Court to pay Plaintiff and each Class member up to $110 per day (as permitted by ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), amended by 29 C.F.R. § 2575.502c-1) for each day that Defendant has failed to provide Plaintiff and each Class member with the Pension Benefit Statements required by ERISA § 105(a)(1), 29 U.S.C. § 1025(a)(1).

## COUNT III
**(Claim for Failure to Provide Minimum Funding Against Defendant St. Joseph's)**

152.   Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if fully set forth herein.

153.   ERISA § 302, 29 U.S.C. § 1082, establishes minimum funding standards for defined benefit plans that require employers to make minimum contributions to their plans so that each plan will have assets available to fund plan benefits if the employer maintaining the plan is unable to pay benefits out of its general assets.

154.   St. Joseph's was responsible for making the contributions that should have been made pursuant to ERISA § 302, 29 U.S.C. § 1082, at a level commensurate with that which would be required under ERISA.

155.   At all relevant times, St. Joseph's has failed to make contributions in satisfaction of the minimum funding standards of ERISA § 302, 29 U.S.C. § 1082.

156.    By failing to make the required contributions to the St. Joseph's Plan, either in whole or in partial satisfaction of the minimum funding requirements established by ERISA § 302, Defendant St. Joseph's has violated ERISA § 302, 29 U.S.C. § 1082.

**COUNT IV**
**(Claim for Failure to Establish the Plan Pursuant to Written Instruments Meeting the Requirements of ERISA § 402 Against Defendant St. Joseph's)**

157.    Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if fully set forth herein.

158.    ERISA § 402, 29 U.S.C. § 1102, provides that every plan will be established pursuant to a written instrument which will provide, among other things, "for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan" and will "provide a procedure for establishing and carrying out a funding policy and method constituent with the objectives of the plan and the requirements of [Title I of ERISA]."

159.    Upon information and belief, although the benefits provided by the St. Joseph's Plan were described to the employees and retirees of St. Joseph's (and/or its affiliates and subsidiaries) in various written communications, the St. Joseph's Plan has not been established pursuant to a written instrument meeting the requirements of ERISA § 402, 29 U.S.C. § 1102.

160.    Defendant St. Joseph's violated § 402 by failing to promulgate written instruments in compliance with ERISA § 402 to govern the St. Joseph's Plan's operations and administration.  29 U.S.C. § 1102.

## COUNT V
### (Claim for Failure to Establish a Trust Meeting the Requirements of ERISA § 403 Against Defendant St. Joseph's)

161.    Plaintiff incorporates and re-alleges by reference to the foregoing paragraphs as if fully set forth herein.

162.    ERISA §  403, 29 U.S.C. § 1103, provides, subject to certain exceptions not applicable here, that all assets of an employee benefit plan shall be held in trust by one or more trustees, that the trustees shall be either named in the trust instrument or in the plan instrument described in § 402(a), 29 U.S.C. § 1102(a), or appointed by a person who is a named fiduciary.

163.    Although the St. Joseph's Plan's assets have been held in trust, the trust has not and is not now meeting the requirements of ERISA § 403, 29 U.S.C. § 1103.

164.    Defendant St. Joseph's violated and continues to violate § 403 by failing to put the St. Joseph's Plan's assets in trust in compliance with ERISA § 403, 29 U.S.C. § 1103.

## COUNT VI
### (Claim for Clarification of Future Benefits Under ERISA §§ 502(a)(1)(B) and 502(a)(3) Against Defendant St. Joseph's)

165.    Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if fully set forth herein.

166.    ERISA § 502(a)(1)(B), 29 U.S.C. § 1102(a)(1)(B), provides, in part, that a participant or beneficiary may bring a civil action to "clarify his rights to future benefits under the terms of the plan."

167.    Plaintiff and members of the class have not been provided ERISA-compliant benefit statements.

168.    Pursuant to ERISA § 502(a)(1)(B), (3), 29 U.S.C. §§ 1132(a)(1)(B), (3), once the Plan is made compliant with ERISA, Plaintiff seeks to clarify her rights under the terms of the Plan and to require Defendant St. Joseph's to provide Plaintiff and the Class ERISA-compliant benefit statements.

### COUNT VII
**(Claim for Civil Money Penalty Pursuant to ERISA § 502(a)(1)(A) Against Defendant St. Joseph's)**

169.    Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if fully set forth herein.

170.    ERISA §  502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), provides that a participant may bring a civil action for the relief provided in ERISA § 502(c), 29 U.S.C. § 1132(c).

171.    ERISA §  502(c)(3), 29 U.S.C. § 1132(c)(3), as provided in 29 C.F.R. § 2575.502c-3, provides that an employer maintaining a plan who fails to meet the notice requirement of ERISA §  101(d), 29 U.S.C. § 1021(d), with respect to any participant and beneficiary may be liable for up to $110 per day from the date of such failure.

172.    ERISA § 502(c)(3), 29 U.S.C. § 1132(c)(3), as provided in 29 C.F.R. § 2575.502c-3, provides that an administrator of a defined benefit pension plan who fails to meet the notice requirement of ERISA § 101(f), 29 U.S.C. § 1021(f), with respect to any participant and beneficiary may be liable for up to $110 per day from the date of such failure.

173.   ERISA § 502(c)(3), 29 U.S.C. § 1132(c)(3), as provided in 29 C.F.R. § 2575.502c-3, provides that an administrator of a defined benefit pension plan who fails to provide a Pension Benefit Statement at least once every three years to a participant with a nonforfeitable accrued benefit who is employed by the employer maintaining the plan at the time the statement is to be furnished as required by ERISA § 105(a), 29 U.S.C. § 1025(a), may be liable for up to $110 per day from the date of such failure.

174.   Because Defendant St. Joseph's, as the employer, has failed to give the notices required by ERISA § 101(d), 29 U.S.C. § 1021(d), as set forth in Count II Subpart 4, Defendant St. Joseph's is liable to Plaintiff and each member of the Class in an amount up to $110 per day from the date of such failures until such time that notices are given and the statement is provided, as the Court, in its discretion, may order.

175.   Because St. Joseph's, as Plan Administrator of the Plan, has failed to give the notices required by ERISA §  101(f), 29 U.S.C. § 1021 (f), and the Pension Benefit Statements required by ERISA §  105(a), 29 U.S.C. § 1025(a), as set forth in Count II Subparts 5 and 6, St. Joseph's is liable to the Plaintiff and each member of the Class in an amount up to $110 per day from the date of such failures until such time that notices are given and the statement is provided, as the Court, in its discretion, may order.

## COUNT VIII
### (Claim for Breach of Fiduciary Duty Against All Defendants)

176.   Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if fully set forth herein.

177.    Plaintiff brings this Count VIII for breach of fiduciary duty pursuant to ERISA §  502(a)(2), 29 U.S.C. § 1132(a)(2).

**1.    Breach of the Duty of Prudence and Loyalty**

178.    This sub-Count alleges fiduciary breach against all Defendants.

179.    ERISA §  404(a)(1), 29 U.S.C. § 1104(a)(1), provides in pertinent part that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –

(a)    for the exclusive purpose of:

    (i)    providing benefits to participants and beneficiaries; and

    (ii)    defraying reasonable expenses of administering the plan;

(b)    with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims…[and]

(c)    in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this [Title I of ERISA] and Title IV.

180.    As fiduciaries with respect to the St. Joseph's Plan, Defendants had the authority to enforce each provision of ERISA alleged to have been violated in the foregoing paragraphs pursuant to ERISA §  502(a)(3), 29 U.S.C. § 1132(a)(3).  Having the authority to enforce the provisions of ERISA at those respective times, ERISA §§ 404(a)(1)(A)-(D), 29 U.S.C. §§ 1104(a)(1)(A)-(D), imposed on Defendants the respective duty to enforce those provisions in the interest of the participants and

beneficiaries of the St. Joseph's Plan during the times that each was a fiduciary of the St. Joseph's Plan.

181.   Defendants have never enforced any of the provisions of ERISA set forth in Counts I-V with respect to the St. Joseph's Plan.

182.   By failing to enforce the provisions of ERISA set forth in Counts I-V, Defendants breached the fiduciary duties that they owed to Plaintiff and the Class.

183.   The failure of Defendants to enforce the funding obligations owed to the Plan has resulted in a loss to the St. Joseph's Plan equal to the foregone funding and earnings thereon, and profited Defendant St. Joseph's by providing it the use of the money owed to the St. Joseph's Plan for its general business purposes.

### 2.   Prohibited Transactions

184.   This sub-Count alleges violations on behalf of all Defendants.

185.   ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits a fiduciary with respect to a plan from directly or indirectly causing a plan to extend credit to a party in interest, as defined in ERISA § 3(14), 29 U.S.C. § 1002(14), if he or she knows or should know that such transaction constitutes an extension of credit to a party in interest.

186.   ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits a fiduciary with respect to a plan from directly or indirectly causing a plan to use assets for the benefit of a party in interest if he or she knows or should know that such transaction constitutes a use of plan assets for the benefit of a party in interest.

187.   ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), prohibits the use of plan assets by a fiduciary with respect to a plan for his or her own interest or for his or her own account.

188.   As fiduciaries with respect to the Plan and, with respect to St. Joseph's, as an employer of employees covered by the Plan, the Defendants at all relevant times were parties in interest with respect to the St. Joseph's Plan pursuant to ERISA §§ 3(14)(A) and (C), 29 U.S.C. §§ 1002(14)(A) and (C).

189.   By failing to enforce the funding obligations created by ERISA and owed to the Plan, Defendants extended credit from the St. Joseph's Plan to St. Joseph's in violation of ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), when Defendants knew or should have known that their failure to enforce the funding obligation constituted such an extension of credit.

190.   By failing to enforce the funding obligations created by ERISA and owed to the St. Joseph's Plan, Defendants used the St. Joseph's Plan's assets for St. Joseph's own benefit, when Defendants knew or should have known that their failure to enforce the funding obligations constituted such a use of the St. Joseph's Plan's assets, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

191.   By failing to enforce the funding obligations created by ERISA and owed to the St. Joseph's Plan, Defendants used the St. Joseph's Plan's assets in St. Joseph's interest in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

192.   The failure of Defendants to enforce the funding obligations owed to the St. Joseph's Plan has resulted in a loss to the St. Joseph's Plan equal to the foregone funding and earnings thereon.

193.   The failure of Defendants to enforce the funding obligations owed to the St. Joseph's Plan has profited Defendant St. Joseph's by providing it the use of money owed to the St. Joseph's Plan for its general business purposes.

### 3.   Failure to Monitor Fiduciaries

194.   This sub-Count alleges fiduciary breach against Defendant St. Joseph's.

195.   As alleged above, during the Class Period, Defendant St. Joseph's was a named fiduciary pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or a de facto fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both. Thus, it was bound by the duties of loyalty, exclusive purpose, and prudence.

196.   The scope of the fiduciary responsibilities of St. Joseph's included the responsibility to appoint, and remove, and thus, monitor the performance of other fiduciaries.

197.   Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries perform their fiduciary obligations, including those with respect to the investment and holding of plan assets, and must take prompt and effective action to protect the plan and participants when they are not.

198.   The monitoring duty further requires that appointing fiduciaries have procedures in place so that they may review and evaluate, on an ongoing basis, whether the "hands-on" fiduciaries are doing an adequate job (for example, by requiring periodic

reports on their work and the plan's performance, and by ensuring that they have a prudent process for obtaining the information and resources they need). In the absence of a sensible process for monitoring their appointees, the appointing fiduciaries would have no basis for prudently concluding that their appointees were faithfully and effectively performing their obligations to plan participants or for deciding whether to retain or remove them.

199.    Furthermore, a monitoring fiduciary must provide the monitored fiduciaries with the complete and accurate information in their possession that they know or reasonably should know that the monitored fiduciaries must have in order to prudently manage the plan and the plan assets, or that may have an extreme impact on the plan and the fiduciaries' investment decisions regarding the plan.

200.    Defendant St. Joseph's breached its fiduciary monitoring duties by, among other things: (a) failing to appoint persons who would run the Plan as an ERISA plan; (b) failing to ensure that the monitored fiduciaries appreciated the true extent of not running the Plan as an ERISA Plan; (c) to the extent any appointee lacked such information, failing to provide complete and accurate information to all of their appointees such that they could make sufficiently informed fiduciary decisions with respect to the Plan; and (d) failing to remove appointees whose performance was inadequate in that they continued to run the Plan as a non-ERISA Plan, and who breached their fiduciary duties under ERISA.

201.    The failure of Defendants to enforce the funding obligations owed to the Plan has resulted in a loss to the St. Joseph's Plan equal to the foregone funding and

earnings thereon, and profited Defendant St. Joseph's by providing it the use of money owed to the St. Joseph's Plan for its general business purposes.

### 4. Co-Fiduciary Liability

202. This sub-Count alleges co-fiduciary liability against all Defendants.

203. As alleged above, all Defendants were named fiduciaries pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or de facto fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both. Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence.

204. ERISA § 405(a), 29 U.S.C. § 1105, imposes liability on a fiduciary, in addition to any liability which he may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if he knows of a breach and fails to remedy it, knowingly participates in a breach, or enables a breach. Defendants breached all three provisions.

205. **Knowledge of a Breach and Failure to Remedy.** ERISA § 405(a)(3), 29 U.S.C. § 1105, imposes co-fiduciary liability on a fiduciary for a fiduciary breach by another fiduciary if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach. Each of the Defendants knew of the breaches by the other fiduciaries and made no efforts, much less reasonable ones, to remedy those breaches.

206. Because Defendants knew that the Plan was not being run as an ERISA Plan, Defendants knew that the other Defendants were breaching their duties by not

complying with ERISA.  Yet, they failed to undertake any effort to remedy these breaches.

207.   **Knowing Participation in a Breach.**  ERISA § 405(a)(1), 29 U.S.C. § 1105(1), imposes liability on a fiduciary for a breach of fiduciary responsibility by another fiduciary with respect to the same plan if he knowingly participates in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach.  St. Joseph's knowingly participated in the fiduciary breaches of the other Defendants in that it benefited from the Plan not being run as an ERISA Plan.

208.   **Enabling a Breach.**  ERISA § 405(a)(2), 29 U.S.C. § 1105(2), imposes liability on a fiduciary if, by failing to comply with ERISA § 404(a)(1), 29 U.S.C. §1104(a)(1), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled another fiduciary to commit a breach.

209.   The failure of Defendant St. Joseph's to monitor the Individual Defendants enabled those Individual Defendants to breach their duties.

210.   As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan is currently underfunded, meaning that the Plan does not have sufficient assets to pay all accrued benefits they have promised to their participants and beneficiaries and is legally obligated to pay under ERISA.

211.   The failure of Defendants to enforce the funding obligations owed to the Plan has resulted in a loss to the St. Joseph's Plan equal to the foregone funding and

earnings thereon, and profited Defendant St. Joseph's by providing it the use of money owed to the St. Joseph's Plan for its general business purposes.

**COUNT IX**
**(Claim for Declaratory Relief That the Church Plan Exemption Violates the Establishment Clause of the First Amendment of the Constitution, and Is Therefore Void and Ineffective)**

212.    Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if fully set forth herein.

213.    The ERISA Church Plan exemption is an accommodation that exempts churches and associations of churches, under certain circumstances, from compliance with ERISA.

214.    The ERISA Church Plan exemption, as claimed by St. Joseph's, is an attempt to extend the accommodation beyond churches and associations of churches, to St. Joseph's—a non-profit hospital conglomerate that has chosen to compete with commercial businesses, including other non-profits as well as for-profits, by entering the economic arena and trafficking in the marketplace.  Extension of the Church Plan exemption to St. Joseph's violates the Establishment Clause because it (A) is not necessary to further the stated purposes of the exemption, (B) harms St. Joseph's workers, (C) puts St. Joseph's competitors at an economic disadvantage, (D) relieves St. Joseph's of no genuine religious burden created by ERISA, and (E) creates more government entanglement with alleged religious beliefs than compliance with ERISA creates.

A.    **Not Necessary to Further Stated Purpose.**  Congress enacted the Church Plan exemption to avoid "examination of books and records . . . an unjustified invasion of the confidential relationship with regard to churches and their religious activities."[2] This purpose has no application to St. Joseph's, which is neither run by nor intimately connected to any church financially.  And, unlike a church, St. Joseph's has *no confidential books and records* to shield from government scrutiny.  St. Joseph's already purports to disclose all material financial records and relationships when it seeks Medicare and Medicaid reimbursements and issues tax exempt bonds.

B.    **Harms Workers.**  Employers, including St. Joseph's, are not legally required to provide pensions; instead, they choose to provide pensions in order to reap tax rewards and attract and retain employees in a competitive labor market. St. Joseph's tells prospective employees that any choice of faith, or lack thereof, is not a factor in the recruiting and hiring of St. Joseph's employees.  Thus, as a practical matter, and by St. Joseph's own design, its pension plan participants include people of a vast number of divergent faiths, as well as those who belong to no faith.  In choosing to recruit and hire from the public at large, St. Joseph's must be willing to accept neutral regulations, such as ERISA, imposed to protect those employees' legitimate interests.  To be constitutional, an accommodation such as the Church Plan exemption must not impose burdens on non-adherents without due consideration of their interests.  The Church Plan exemption, as claimed by St. Joseph's, places its tens of thousands of longtime employees' justified reliance on their pension benefits at great risk, including because the Plan is uninsured

---

[2] S. Rep. No. 93-383 (1972), reprinted in 1974 U.S.C.C.A.N. 4889, 4965.

and, on information and belief underfunded.  In addition, St. Joseph's fails to provide the multitude of other ERISA protections designed to safeguard its employees' pensions. The Church Plan exemption, as claimed by St. Joseph's, provides no consideration of the harm that it causes to St. Joseph's employees.

C.      **Puts St. Joseph's Competitors at an Economic Disadvantage.**  St. Joseph's commercial rivals face material disadvantages in their competition with St. Joseph's because the rivals must use their current assets to fully fund, insure (through premiums to the PBGC), and administer their pension plans, as well as providing other ERISA protections.  In claiming that the St. Joseph's Plan is an exempt Church Plan, St. Joseph's enjoys a material competitive advantage because it is able to divert significant cash, which otherwise would be required to fund, insure (through premiums to the PBGC), and administer the St. Joseph's Plan, to its competitive growth strategy.  To be constitutional, an accommodation such as the Church Plan exemption must take adequate account of harm to nonbeneficiaries.  The Church Plan exemption, as applied by St. Joseph's, provides no consideration of the disadvantage it creates for St. Joseph's competitors.

D.      **Relieves No Genuine Religious Burden Imposed by ERISA.**   An exemption exclusively for religion must alleviate a significant, *state-imposed* interference with religious exercise.   The Church Plan exemption, as claimed by St. Joseph's, responds to no genuine burden created by ERISA on any of St. Joseph's religious practices.  ERISA is materially indistinguishable from the array of neutral Congressional

enactments that do not significantly burden religious exercise when applied to commercial activities.

E.     **Creates Government Entanglement with Alleged Religious Beliefs.**  A St. Joseph's exemption requires courts and agencies to examine unilateral religious "convictions" of a non-church entity and determine if they are "shared" with a church, in the absence of any actual church responsible for the pensions.  This *creates* entanglement between government and putative religious beliefs.  ERISA compliance, on the other hand, requires zero entanglement with religion for St. Joseph's because ERISA is a neutral statute that regulates pension protections and St. Joseph's has no relevant confidential books, records or relationships.  Thus, an extension of the Church Plan exemption to St. Joseph's produces state entanglement with alleged religious beliefs while compliance with ERISA creates no meaningful state entanglement with alleged religious beliefs.

215.   Plaintiff seeks a declaration by the Court that the Church Plan exemption, as claimed by St. Joseph's, is an unconstitutional accommodation under the Establishment Clause of the First Amendment, and is therefore void and ineffective.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against the Defendants on all claims and requests that the Court award the following relief:

A.     Declaring that the St. Joseph's Plan is an employee pension benefit plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), is a defined benefit pension

plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35), and is not a Church

Plan within the definition of ERISA § 3(33), 29 U.S.C. § 1002(33).

  B.  Ordering St. Joseph's to reform the St. Joseph's Plan to bring it into

compliance with ERISA and to have the St. Joseph's Plan comply with ERISA, including

as follows:

    1.  Revising the Plan's documents to reflect that the Plan is a defined

benefit plan regulated by ERISA;

    2.  Requiring St. Joseph's to fund the St. Joseph's Plan in accordance

with ERISA's funding requirements, disclose required information to the St. Joseph's

Plan's participants and beneficiaries, and otherwise comply with all other reporting,

vesting, and funding requirements of Parts 1, 2 and 3 of Title I of ERISA, 29 U.S.C.

§§ 1021-31, 1051-61, 1081-85;

    3.  Reforming the St. Joseph's Plan to comply with ERISA's vesting

and accrual requirements and providing benefits in the form of a qualified joint and

survivor annuity;

    4.  Requiring the adoption of instruments governing the St. Joseph's

Plan that comply with ERISA § 402, 29 U.S.C. § 1102;

    5.  Requiring St. Joseph's to comply with ERISA reporting and

disclosure requirements, including by filing Form 5500 reports, distributing ERISA-

compliant Summary Plan Descriptions, Summary Annual Reports, and ERISA-compliant

Participant Benefit Statements, and providing Notices of the St. Joseph's Plan's funding

status and deficiencies;

6.      Requiring clarification of rights to future benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1102(a)(1)(B);

7.      Requiring the establishment of a trust in compliance with ERISA § 403, 29 U.S.C. § 1103;

8.      Requiring Defendants, as fiduciaries of the Plan, to make the St. Joseph's Plan whole for any losses and disgorge any profits St. Joseph's accumulated as a result of fiduciary breaches;

9.      Appointing an Independent Fiduciary to hold the St. Joseph's Plan's assets in trust, to manage and administer the St. Joseph's Plan and its assets, and to enforce the terms of ERISA;

10.     Requiring St. Joseph's to pay civil monetary penalties of up to $110 per day to Plaintiff and each Class member for each day it failed to inform Plaintiff and each Class member of its failure to properly fund the Plan;

11.     Requiring St. Joseph's to pay civil monetary penalties of up to $110 per day to Plaintiff and each Class member for each day it failed to provide Plaintiff and each Class member with a Funding Notice;

12.     Requiring St. Joseph's to pay civil monetary penalties of up to $110 per day to Plaintiff and each Class member for each day it failed to provide a benefit statement under ERISA § 105(a)(1)(B), 29 U.S.C. § 1025(a)(1)(B);

13.     Ordering declaratory and injunctive relief as necessary and appropriate, including enjoining the Defendants from further violating the duties,

59

responsibilities, and obligations imposed on them by ERISA with respect to the St. Joseph's Plan;

14.    Declaring, with respect to Count IX, that the Church Plan exemption, as claimed by St. Joseph's, is an unconstitutional accommodation under the Establishment Clause of the First Amendment, and is therefore void and ineffective;

15.    Awarding to Plaintiff attorneys' fees and expenses as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine;

16.    Awarding to Plaintiff taxable costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), 28 U.S.C. § 1920, and other applicable law;

17.    Awarding to Plaintiff pre-judgment interest on any amounts awarded pursuant to law; and

18.    Awarding, declaring or otherwise providing Plaintiff and the Class all relief under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems proper.

RESPECTFULLY SUBMITTED this 13th day of May, 2016.

/s/ Scott Lempert
Scott Lempert, NJBN 035281995
Karen L. Handorf, *pro hac vice to be filed*
Michelle C. Yau, *pro hac vice to be filed*
Kira L. Hettinger, *pro hac vice to be filed*
**COHEN MILSTEIN SELLERS**
 **& TOLL, PLLC**
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC  20005

Tel: (202) 408-4600
Fax: (202) 408-4699
Email: slempert@cohenmilstein.com
khandorf@cohenmilstein.com
myau@cohenmilstein.com
khettnger@cohenmilstein.com

Laura R. Gerber, *pro hac vice to be filed*
Lynn Lincoln Sarko, *pro hac vice to be filed*
Havila C. Unrein, *pro hac vice to be filed*
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384
Email: lgerber@kellerrohrback.com
lsarko@kellerrohrback.com
hunrein@kellerrohrback.com

Ron Kilgard, *pro hac vice to be filed*
**KELLER ROHRBACK L.L.P.**
3101 North Central Avenue, Suite 1400
Phoenix, AZ  85012
Tel.: (602) 248-0088
Fax: (602) 248-2822
Email: rkilgard@kellerrohrback.com

***Attorneys for Plaintiff***