Scott M. Lempert, NJBN 035281995
(A Member of the Bar of this Court)
**Cohen Milstein Sellers & Toll PLLC**
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
Telephone:  (202) 408-4600

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DONNA GARBACCIO, individually and on behalf of all others similarly situated, | ) )  Civil Action ) |
| Plaintiff, | ) No. 2:16-cv-02740(JMV)(JBC) ) |
| v. | ) Honorable John Michael Vazquez ) United States District Judge |
| ST. JOSEPH'S HOSPITAL AND MEDICAL CENTER AND SUBSIDIARIES, *et al.*, | ) ) Honorable James B. Clark ) United States Magistrate Judge ) |
| Defendants. | ) CLASS ACTION ) |

## PLAINTIFFS' MEMORANDUM IN
## SUPPORT OF UNOPPOSED MOTION FOR
## FINAL APPROVAL OF PROPOSED CLASS ACTION
## <u>SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS</u>

# TABLE OF CONTENTS

**Page**

I.  FACTUAL AND PROCEDURAL BACKGROUND ..................................4
    A.    Procedural History.................................................................4
    B.    Settlement Negotiations .......................................................7
    C.    Settlement Terms..................................................................9
        1.    Monetary Consideration...................................9
        2.    Non-Monetary Equitable Consideration....................9
        3.    Class ......................................................11
        4.    Released Claims............................................11
        5.    Notice ....................................................12
        6.    Attorneys' Fees ...........................................13
    D.    Reasons for the Settlement ................................................13
    E.    Preliminary Approval .......................................................15
    F.    Notice to the Class............................................................15

II.  THE SETTLEMENT IS FAIR, REASONABLE AND
    ADEQUATE..............................................................................16
    A.    The First *Girsh* Factor: The Complexity, Expense, and Likely
        Duration of the Litigation.................................................18
    B.    The Second *Girsh* Factor: The Reaction of the Class to the
        Settlement ........................................................................20
    C.    The Third *Girsh* Factor: The Stage of the Proceedings and the
        Amount of Discovery Completed .......................................21
    D.    The Fourth and Fifth *Girsh* Factors: The Risks of Establishing
        Liability and Damages......................................................22
    E.    The Sixth *Girsh* Factor: The Risks of Maintaining the Class
        Action Through the Trial...................................................24
    F.    The Seventh *Girsh* Factor:  The Ability of Defendants to
        Withstand a Greater Judgment .........................................25
    G.    The Eighth and Ninth *Girsh* Factors: The Range of
        Reasonableness of the Settlement Fund in Light of the Best
        Possible Recovery and All the Attendant Risks of Litigation ............26

III.  CERTIFICATION OF THE CLASS IS APPROPRIATE......................28
    A.    The Requirements of Rule 23(a) Are Easily Satisfied........................30
        1.    Numerosity..............................................30
        2.    Commonality............................................30
        3.    Typicality ...............................................32
        4.    Adequacy ...............................................33

B.    The Class Satisfies the Requirements of Rule 23(b)(1) and
      (b)(2) ...................................................................................................34

      1.    Individual Actions Would Create Inconsistent
            Adjudications or be Dispositive of the Interests of Absent
            Members .....................................................................................34

      2.    Defendants Have Acted on Grounds Generally
            Applicable to the Class and the Declaratory and
            Injunctive Relief Plaintiffs Seek is Appropriate for the
            Class as Whole ...........................................................................38

      3.    Plaintiffs' Counsel Satisfy The Requirements of Rule
            23(g) ...........................................................................................39

IV.   **CONCLUSION** ...........................................................................................**40**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Advocate Health Care Network v. Stapleton*,
137 S.Ct. 1652 (2017)...................................................................................14, 23

*Advocate Health Care Network v. Stapleton*,
2017 WL 1135758 (U.S. Mar. 27, 2017)......................................................13, 14

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997)......................................................................................28, 33

*Baby Neal v. Casey*,
43 F.3d 48 (3d Cir. 1994) ...................................................................................31

*Banyai v. Mazur*,
205 F.R.D. 160 (S.D.N.Y. 2002) .......................................................................31

*Barker v. St. Joseph's Healthcare System, Inc.*,
No. 2:16-cv-02748 (D.N.J.) .........................................................................1, 4, 5

*Bell Atl. Corp. v. Bolger*,
2 F.3d 1304 (3d Cir. 1993) .................................................................................23

*Berger v. Xerox Corp. Ret. Income Guarantee Plan*,
338 F.3d 755 (7th Cir. 2003) ..............................................................................38

*Boyd v. Coventry Health Care Inc.*,
299 F.R.D. 451 (D. Md. 2014) ...........................................................................31

*Bredbenner v. Liberty Travel, Inc.*,
No. 09–905, 2011 WL 1344745 (D.N.J. Apr. 8, 2011).........................23, 24, 25

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) .........................................................................18, 24

*Dodge v. Cambrex Corp.*,
No. 03-CV-4896 (PGS), 2007 WL 608365 (D.N.J. Feb. 23, 2007).............32, 33

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010) ...............................................................................17

*Fields v. Biomatrix, Inc.*,
    198 F.R.D. 451 (D.N.J. 2000)....................................................................32, 33

*In re Flat Glass Antitrust Litig.*,
    191 F.R.D. 472 (W.D. Pa. 1999) ......................................................................32

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) .......................................................................*passim*

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) .....................................................................*passim*

*Griffith v. Providence Health & Servs.*,
    No. C14-1720-JCC, 2017 WL 1064392 (W.D. Wash. March 21,
    2017) ...................................................................................................................29

*Hodges v. Bon Secours Health System, Inc., et al.*,
    No. 1:16-cv-1079, ECF No. 117 (D. Md. Dec. 21, 2017)...........................29, 39

*Hoxworth v. Blinder Robinson & Co.*,
    980 F.2d 912 (3d Cir. 1992) ..............................................................................32

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
    191 F.R.D. 457 (E.D. Pa. 2000)....................................................................30, 37

*In re Ins. Brokerage Antitrust Litig.*,
    579 F.3d 241 (3d Cir. 2009) .......................................................................16, 17

*Jenkins v. Raymark Indus. Inc.*,
    782 F.2d 468 (5th Cir. 1986) .............................................................................30

*Johnson v. HBO Film Mmgt., Inc.*,
    265 F.3d 178 (3d Cir. 2001) ..............................................................................31

*Kolar v. Rite Aid Corp.*,
    No. 01-1229, 2003 WL 1257272 (E.D. Pa. Mar. 11, 2003) .........................31, 35

*Lann v. Trinity*,
    No. 8:14-cv-2337, ECF No. 111 (D. Md. May 31, 2017) .....................29, 37, 39

*Mass. Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985) ...................................................................................29, 38

*Medina v. Catholic Health Initiatives*,
  --- F. 3d ----, No. 16-1005, 2017 WL 6459961 (10th Cir. Dec. 19,
  2017) ..........................................................................................14, 15, 19, 23

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,
  MDL No. 1658, No. 05-1151, 2009 WL 331426 (D.N.J. Feb. 10,
  2009) ...................................................................................................................35

*Mulder v. PCS Health Systems, Inc.*,
  216 F.R.D. 307 (D.N.J. 2003)..........................................................................39

*Mulroy v. Nat'l Water Main Cleaning Co. of New Jersey*,
  No. 12-3669, 2014 WL 7051778 (D.N.J. Dec. 12, 2014) ..................................26

*P. Van Hove BVBA v. Universal Travel Grp., Inc.*,
  No. 11-2164, 2017 WL 2734714 (D.N.J. June 26, 2017) ..........................*passim*

*In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) .........................................................................22, 28

*In re Schering Plough Corp. ERISA Litig.*,
  589 F.3d 585 (3rd Cir. 2009) ......................................................................28, 35

*In re Schering-Plough/Merck Merger Litig.*,
  No. 09-1099, 2010 WL 1257722 (D.N.J. Mar. 26, 2010) ..................................25

*In re School Asbestos Litig.*,
  789 F.2d 996 (3d Cir. 1986) .............................................................................30

*Simon v. KPMG LLP*,
  No. 05-3189, 2006 WL 1541048 (D.N.J. June 2, 2006) ..............................31, 32

*Specialty Cabinets and Fixtures, Inc. v. Am. Equitable Life Ins. Co.*,
  140 F.R.D. 474 (S.D. Ga. 1991) ........................................................................37

*Stewart v. Abraham*,
  275 F.3d 220 (3d Cir. 2001) .............................................................................30

*Thomas v. SmithKline Beecham Corp.*,
  201 F.R.D. 386 (E.D. Pa. 2001)....................................................................35, 36

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ................................................................16, 17, 26

*Weisfeld v. Sun Chem. Corp.*,
    210 F.R.D. 136 (D.N.J. 2002)...........................................................................30

*Wetzel v. Liberty Mut. Ins. Co.*,
    508 F.2d 239 (3d Cir. 1975) .............................................................................33

*Yedlowski v. Roka Bioscience, Inc.*,
    No. 14-8020, 2016 WL 6661336 (D.N.J. Nov. 10, 2016)..................................18

## STATUTES

28 U.S.C. § 1715 ...................................................................................................3

29 U.S.C. § 1002(33) ........................................................................................4, 19

29 U.S.C. § 1083(c)(2)(A) ...................................................................................27

29 U.S.C. §§ 1132(a)(2) & (3) .............................................................................38

Class Action Fairness Act .......................................................................................3

ERISA .............................................................................................................*passim*

ERISA § 502(a)(2) ...........................................................................28, 29, 35, 38

ERISA § 502(a)(3) ...............................................................................................38

IRC § 410(d) .......................................................................................................12

## OTHER AUTHORITIES

Fed. R. Civ. P. 23(a)......................................................................................*passim*

Fed. R. Civ. P. 23(b) .....................................................................................*passim*

Fed. R. Civ. P. 23(e).......................................................................1, 4, 16, 17

Fed. R. Civ. P. 23(g) ......................................................................................39, 40

Federal Rule of Civil Procedure 23 .........................................................3, 28, 40

1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 5:5 (3d ed. 2008) ............................................................................................................35

Rule 6(a)(5) ............................................................................................................6

## INTRODUCTION

Plaintiffs Donna Garbaccio, Mary Lynne Barker, Anne Marie Dalio, and Dorothy Flar respectfully move pursuant to Federal Rule of Civil Procedure 23(e) for entry of the accompanying proposed Order and Final Judgment giving (1) final approval to the proposed Class Action Settlement Agreement ("Settlement" or "Settlement Agreement"),[1] which the Court preliminarily approved in its October 5, 2017 Order, ECF No. 108 (the "Preliminary Approval Order"); and (2) granting final certification of the Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1) and/or 23(b)(2).  Defendants do not oppose the relief sought herein.[2]

The Settlement Agreement resolves all claims asserted by Plaintiffs and the members of the Class against all Defendants and provides significant monetary consideration to all Class members in this consolidated class action (the "Litigation").[3] This Settlement is an excellent result for the Class, as it provides for payment of $42.5 million to the Plan, which reduces the Plan's underfunding by half (based on the Plan's underfunding level at the time the term sheet was executed).  Payment of Court approved attorneys' fees, expenses of litigation and

[1] Capitalized terms not otherwise defined in this memorandum shall have the same meaning ascribed to them in the Settlement Agreement, attached hereto as Exhibit 1 ("Ex.").

[2] While Defendants disagree with many of the averments stated in this pleading, they do not oppose the ultimate relief sought herein.

[3] The Court consolidated Plaintiff Garbaccio's action with *Barker v. St. Joseph's Healthcare System, Inc*., No. 2:16-cv-02748 (D.N.J.) (the "*Barker* Action") on July 12, 2016. ECF No. 45.

settlement administration, and special payments to the Named Plaintiffs will not affect this amount contributed by Defendants to the Plan.  In fact, Defendants have already contributed the Settlement's $42.5 million, plus an additional $2.5 million, for a total lump-sum payment of $45 million.  Accordingly, the Plan today is in a vastly improved funded position, providing the Class a substantially more secure retirement benefit plan.

In addition to the substantial monetary consideration, the Settlement also provides equitable consideration to the Class members that are still current participants in the Plan.  For a period of seven years after the Settlement Agreement becomes final, if the Plan's trust fund becomes insufficient to pay benefits as they are due, St. Joseph's will make contributions to the trust fund sufficient to pay participants' accrued benefits as defined by the terms of the Plan as benefits become due.  This means that St. Joseph's will ensure that there are sufficient assets in the Plan's trust fund to pay accrued benefits through that date. The Settlement also includes ERISA-like protections of Class members' benefits for the next seven years, including an anti-cutback provision, the protection of current, accrued benefits in case of a plan merger and enhanced disclosure requirements.  The anti-cutback provision prevents any plan amendment or termination of the Plan from reducing or eliminating benefits already earned by Class members.  The Settlement similarly protects Class members' pension

benefits should the Plan merge with or into another plan, entitling them to the same or greater benefits under the terms of the Plan than they were before the merger. The Settlement's enhanced reporting and disclosure requirements also allow participants to receive important notices and financial information concerning the Plan and their benefits.

The Settlement was reached through negotiations overseen by a respected third-party mediator and subsequent extensive negotiations between counsel for both parties.  The parties have complied with the terms of the Preliminary Order, including mailing notice of the Settlement ("Class Notice") to the Class[4] and mailing the Class Action Fairness Act ("CAFA") notices to the requisite officials.[5] 28 U.S.C. § 1715.

Plaintiffs believe that the Settlement represents an excellent resolution of this complex ERISA class action.  It provides substantial monetary and equitable benefits to the Class while avoiding the considerable risks, uncertainty and delay associated with further litigation.  For this and the other reasons set forth in this memorandum, the Settlement satisfies the requirements of Federal Rule of Civil Procedure 23, is "fair, reasonable and adequate" and fully satisfies all criteria for

---

[4] *See* Affidavit of Kelly Kratz, Principal of Dahl Administration LLC, ¶¶ 4–8 ("Dahl Aff.").

[5] Declaration of Howard Shapiro ¶¶ 3–4 ("Shapiro Decl.").

approval under Rule 23(e).  Plaintiffs therefore request that the Court finally approve the Settlement and enter the Order and Final Judgment.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.   Procedural History

Plaintiff Donna Garbaccio initiated this case on May 13, 2016 by filing a putative class action complaint in this Court against St. Joseph's Hospital and Medical Center ("St. Joseph's")—a large, non-profit healthcare provider—and various other defendants.  ECF No. 1.  The Complaint alleges that St. Joseph's improperly operates its defined benefit plan (the "Plan") as exempt from ERISA under the "Church Plan" exemption.  *See* ECF No. 1 ¶ 4; 29 U.S.C. § 1002(33). The Complaint states that by improperly claiming this exemption, St. Joseph's denies Plan participants the protections of ERISA, including minimum funding requirements, vesting schedules, notices, and disclosures.

Shortly after Plaintiff Garbaccio filed this Complaint, Plaintiffs Barker, Dalio, and Flar ("the *Barker* plaintiffs") filed a similar complaint in the same district alleging the identical cause of action—that St. Joseph's was improperly operating its defined benefit plan as a "Church Plan."[6] *See Barker v. St. Joseph's Healthcare System, Inc.*, No. 2:16-cv-2748 (D.N.J. filed May 16, 2016). Class

---

[6] The *Barker* plaintiffs were represented by two law firms: Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") and Izard Kindall & Raabe, LLP ("Izard Kindall").

Counsel subsequently moved, on behalf of Plaintiff Garbaccio, to consolidate the two cases and appoint Plaintiff Garbaccio as Interim Lead Plaintiff and Cohen Milstein and Keller Rohrback as Interim Co-Lead Counsel.  ECF No. 15.  The issue was briefed in both this action and the *Barker* Action.  The Court consolidated the two cases into the instant action in July 2016 and appointed Cohen Milstein Sellers & Toll, PLLC ("Cohen Milstein") and Keller Rohrback L.L.P. ("Keller Rohrback") as Interim Lead Class Counsel in March 2017.  ECF Nos. 45, 96.

On May 2, 2017, Defendants filed a letter stating that the parties had agreed to mediate the cases and requested that the Court stay the case.  ECF No. 97.  The Court ordered the stay on May 8, 2017, and directed the parties to file a letter if they wished to reopen the matter.  ECF No. 98.

The parties attended a formal mediation on May 24, 2017, with well-respected JAMS mediator Robert Meyer, Esq.  *See* Joint Declaration of Michelle Yau and Lynn Sarko in Support of Final Approval ¶ 21 ("Joint Decl.").  On June 7, 2017, the parties filed a Joint Notice of Settlement with the Court, stating that the parties had executed a term sheet and expected to have a settlement agreement executed by July 6, 2017.  ECF No. 99.  Requiring more time to negotiate final terms of the Settlement, on July 6, 2017, the parties filed a Joint Supplemental Notice Regarding Settlement, stating that they had amended the term sheet to allow

execution of the settlement agreement to occur on or before July 20, 2017, and to allow Plaintiffs to file a motion for preliminary approval by August 3, 2017.  ECF No. 101.

Plaintiffs moved for preliminary approval of the settlement on August 3, 2017.  ECF No. 102.  Pursuant to the Settlement Agreement, Defendants did not oppose this motion.  On September 27, 2017, the Court ordered the parties to file a letter identifying the proposed class administrator, describing that company's qualifications, and to amend the Class Notice to reflect the identity of the administrator (hereinafter referred to as the "Settlement Administrator"). ECF No. 106.  Plaintiffs' counsel filed the requested letter and amended Notice on October 3, 2017.  ECF No. 107. The Court granted Plaintiffs' motion on October 5, 2017. ECF No. 108.[7]  Pursuant to the Preliminary Order, the settlement administrator mailed the Class Notice on November 3, 2017 to approximately 10,798 Class members.  Dahl Aff.¶ 6.

---

[7] On October 31, 2017, Class Counsel filed a letter seeking an amendment to the Court's Preliminary Order to allow more time for an attorney hired by an objector to file any notices of intention to appear at the Final Approval hearing.  ECF No. 109.  This request was necessitated by the Order's deadline providing for such filing on a Sunday, and therefore requiring a Friday filing pursuant to Rule 6(a)(5), reducing the time in which to file.  The Court granted the request, allowing any notices of intention to appear to be filed on or before Monday, February 12, 2018. ECF No. 111. The amendment to the Class Notice was made before the Settlement Administrator distributed the Notice to the preliminarily-approved Class.  Joint Decl. ¶ 33. As of mid-morning January 19, 2018, no objections or notices of intention to appear at the March 6, 2018 hearing have been filed. Joint Decl. ¶ 36.

**B.    Settlement Negotiations**

The parties began settlement negotiations after the Supreme Court had already granted certiorari in three similar consolidated Church Plan cases and oral argument had been completed. Joint Decl. ¶¶ 12, 21. The settlement negotiations were overseen by a third-party JAMS mediator, Robert Meyer, Esq. *Id.* ¶ 21.  Mr. Meyer has substantial experience mediating cases concerning ERISA and retirement plan issues; in particular, he has mediated several "Church Plan" cases litigated by Class Counsel. *Id.*

The parties met for an in-person mediation session in Los Angeles, California on May 24, 2017.  Joint Decl. ¶ 21.  Both parties spoke with Mr. Meyer about their respective positions prior to the mediation. *Id.*  Before mediation, Plaintiffs provided Defendants with a draft term sheet that contained principal terms for any potential settlement. *Id*.  Also in preparation for mediation, Plaintiffs requested and received documents from Defendants to help the parties define their settlement positions, including actuarial reports regarding the Plan's funded status and the assumptions underlying such reports; applicable insurance policies; financial statements for the hospital's non-profit organization; and information regarding the number of participants in the Plan.  Joint Decl. ¶ 20.

Before the mediation, Class Counsel investigated the facts, circumstances, and legal issues associated with the allegations and defenses in the action.  This

investigation included, among other things: (1) inspecting, reviewing, and analyzing documents produced by or otherwise relating to the Defendants, the Plan, and the administration and funding of the Plan, including Defendants' production in advance of mediation for settlement purposes; (2) researching the applicable law with respect to the claims asserted in the case and possible defenses thereto; and (3) researching and analyzing governmental and other publicly-available sources concerning Defendants, the Plan, and the industry.  Joint Decl. ¶ 16.

The parties reached an agreement in principle on May 24, 2017, and executed a term sheet including principal terms that day and signed a supplemental term sheet on June 6, 2017.  Joint Decl. ¶¶ 22–23.  They filed a joint notice of settlement with the Court on June 7, 2017, notifying the Court that the parties had executed a term sheet and expected to execute the comprehensive settlement agreement within thirty days.  ECF No. 99.  The Court re-opened the case at the parties' request.  ECF No. 100.

The parties then began to negotiate heavily the remaining terms of the settlement.  Joint Decl. ¶ 23.  They executed the comprehensive Settlement Agreement on July 20, 2017, after approximately an additional month and a half of negotiations.  *See* Ex. 1.  The Settlement is the result of lengthy and contentious

arm's-length negotiations between the parties, and the process was thorough, adversarial, and professional.  Joint Decl. ¶ 25.

## C.     Settlement Terms

The primary terms of the Settlement Agreement are summarized in the following sections.

### 1.     Monetary Consideration

The Settlement provides substantial monetary consideration—totaling $42.5 million as a monetary contribution to the Plan, benefitting all Class members, and improving the retirement security of Plan participants and beneficiaries. Pursuant to the Settlement Agreement, St. Joseph's was required to contribute this amount of cash to the Plan by September 20, 2017.  Ex. 1 §§ 7.1.1, 7.1.2.  Defendants have already made this contribution to the Plan, *plus an additional $2.5 million*, for a total contribution to the Plan of $45 million.  Joint Decl. ¶ 26.  The negotiated contribution of $42.5 million represents approximately half of the underfunding of the Plan at the time of negotiations.  *Id*.  As a result of the Litigation and this Settlement, the Plan's funding level is improved greatly, and the accrued pension benefits of the Plan's participants are substantially more secure.

### 2.     Non-Monetary Equitable Consideration

Beyond the substantial monetary benefits, the Settlement also provides for important non-monetary equitable consideration for Plan participants.  First, St.

Joseph's guarantees that, for seven years after the date final approval is ordered, the Plan will have sufficient funds to pay participants' accrued benefits as they come due.  And if the Plan falls short at any point, St. Joseph's must make sufficient contributions to the Plan's trust fund to pay those benefits.  Ex. 1 § 8.1. The Settlement Agreement also prohibits cutbacks of any benefits accrued by participants during this seven year period, even in the event of termination or amendment of the Plan.  Ex. 1 § 8.4.  Furthermore, for the next seven years, if the Plan is merged with, or into another plan, participants are entitled to the same or greater benefits as they were entitled to before the merger.  Ex. 1 § 8.2.  Current participants of the Plan will also receive other protections comparable to key ERISA provisions concerning plan administration.  For example, for the next seven years, the Plan is required to furnish participants with enhanced disclosures regarding the Plan, including summary plan descriptions, pension benefit statements, and access to the Plan's claim review procedures.  Ex. 1 §§ 8.5.1–8.5.4. These protections benefit current Plan participants by allowing them greater access to reporting and disclosure information about their retirement benefits and greater security for those retirement benefits.[8]

---

[8] At mediation, Class Counsel were told that Defendants anticipated that on or before December 31, 2018, the Plan would be amended to close participation for new employees and freeze accrued benefits for current participants.  Joint Decl. ¶ 29; *see also* Ex. 1 § 4.2. Pursuant to the Settlement Agreement, the Plan's ERISA-

3.     **Class**

The Settlement contemplates that the Court will certify a non-opt-out class under either Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), or both.  Ex. 1 § 2.2.2.  The Class is defined as "[a]ll present and former participants (vested or non-vested) or beneficiaries of the Plan as of the Effective Date of Settlement."  Ex. 1 § 1.19.

4.     **Released Claims**

Section 3.1 of the Settlement Agreement generally defines the Released Claims as claims under federal or state law brought by Plaintiffs, or claims that could have been asserted by Plaintiffs, arising out of the allegations in the instant action.  Ex. 1 § 3.1.  The Released Claims exclude individual state law claims for benefits pursuant to the Plan's documents, or claims related to any other plan that is merged, adopted, or consolidated into the Plan after the execution date of the term sheet.  In addition, there is a significant carve out from the Released Claims. Namely, the Settlement Agreement provides that Defendants will not be released prospectively in the event of certain future developments in the law or fact, such as: (1) the Internal Revenue Service issuing a written ruling that the Plan does not qualify as a Church Plan; (2) an election is made on behalf of the Plan resulting in

---

like administrative protections will commence when the Plan is so amended.  *See* Ex. 1 § 8.5.

the Plan's coverage by the ERISA provisions specified in IRC § 410(d); (3) a court of law issues a definitive ruling that the Plan is not a Church Plan; (4) the Roman Catholic Church disassociates itself from the Plan's Sponsor; or (5) ERISA is amended eliminating the Church Plan exception. Ex. 1 §§ 3.1.1–3.1.9. Accordingly, this carve out protects Plaintiffs' rights to litigate their prospective Church Plan claims against Defendants should one of these developments occur after the Court grants final approval.

**5.    Notice**

The Preliminary Approval Order, ECF No. 108 (amended in part in ECF No. 111), approved two forms of notice: (1) mailing of the Class Notice, sent to the last known address of members of the Class; and (2) internet publication of the Settlement Agreement and Class Notice on https://www.cohenmilstein.com/saintjosephs-settlement and www.kellersettlements.com.  Class Counsel paid the entire cost for the notice program as a settlement expense because the cost did not exceed $50,000.[9] Ex. 1 § 2.2.3; Dahl Aff. ¶ 10.

---

[9] Plaintiffs include costs for the notice program in their petition for attorneys' fees and expenses, filed simultaneously herewith.  As stated, *supra*, Plaintiffs' petition for fees and expenses does not reduce the $42.5 million cash contribution to the Plan provided by this Settlement.

### 6.      Attorneys' Fees

Through a separate fee petition, Class Counsel seeks approval of attorneys'

fees, expenses and class representative incentive awards for all four Named

Plaintiffs (Donna Garbaccio, Mary Lynne Barker, Anne Marie Dalio, and Dorothy

Flar), in an amount not to exceed $2.5 million.  The Class Notice details the

amount of attorneys' fees requested and explains that the attorneys' fees were

separately negotiated between the parties and constitute separate consideration

from the $42.5 million contribution to the Plan, and will not reduce the Class's

recovery or affect the Class Settlement Amount.  Ex. 1 §§ 7.1.3–7.1.4.

### D.      Reasons for the Settlement

When entering into settlement negotiations, Plaintiffs were cognizant of the

risks associated with continued litigation, including the strengths and weaknesses

of their claims.  This understanding is based on: (1) investigation and research; (2)

the potential range of recovery; (3) the substantial complexity, expense, and

duration of litigation necessary to prosecute this action through appeals, or trial, or

post-trial motions, and the significant uncertainties in predicting the outcome of

this complex litigation; (4) Defendants' determination to fight and contest every

aspect of this case; and (5) the Supreme Court oral arguments in *Advocate*, which

was prepared and argued by Class Counsel approximately two months before the

parties met for mediation.  *See Advocate Health Care Network v. Stapleton*, 2017 WL 1135758 (U.S. Mar. 27, 2017) (Oral Argument).

*Advocate* involved three consolidated Church Plan cases where the United States Courts of Appeals for the Third, Seventh and Ninth Circuits determined that to qualify as a "Church Plan" under the ERISA Church Plan exemption, a retirement plan needed to be established by a church.  *Advocate* reversed those holdings, finding that a retirement plan may still be able to otherwise satisfy the exemption if it is established by an entity other than a church.  *Advocate Health Care Network v. Stapleton*, 137 S.Ct. 1652, 1663 (2017).  The instant "Church Plan" case entered settlement negotiations *after* the oral argument in *Advocate*, when the landscape of these cases was particularly uncertain.  The parties executed an initial term sheet with principal settlement terms immediately *before* the Supreme Court issued the final decision.  Joint Decl. ¶¶ 21–22.  During negotiations, both sides were aware of the risks of either outcome and approached the negotiations in that context.

Additionally, after the Supreme Court decided *Advocate*, rejecting the argument that a Church Plan needed to be established by a church, and after this Settlement Agreement was executed, the Tenth Circuit Court of Appeals decided *Medina v. Catholic Health Initiatives*, --- F. 3d ----, No. 16-1005, 2017 WL 6459961 (10th Cir. Dec. 19, 2017), a different "Church Plan" case where the Tenth

Circuit rejected several other theories of ERISA liability. *Medina* is not binding on this Court in this case, and Plaintiffs believe *Medina* was wrongly decided; however, it does illustrate the litigation risk addressed by this Settlement.

In view of all of these factors, Class Counsel has concluded that the Settlement is fair, reasonable, and adequate, and that it should be approved. Moreover, as of mid-morning January 19, 2018, Class Counsel has not received any objections to the proposed Settlement.

**E.      Preliminary Approval**

Class Counsel filed an unopposed motion for preliminary approval on August 3, 2017.  ECF No. 102.  The Court preliminarily approved the Settlement on October 5, 2017, issuing the Preliminary Approval Order.  ECF No. 108.  In the Preliminary Order, the Court found that the proposed Class met all the requirements of Rules 23(a) and (b), and preliminarily certified the Class defined above pursuant to Rules 23(b)(1) and (b)(2) and 23(e).  *Id.* ¶¶ 1–2.  The Court also preliminarily appointed Donna Garbaccio, Mary Lynne Barker, Anne Marie Dalio, and Dorothy Flar (Named Plaintiffs) as Class Representatives for the Class, and Cohen Milstein and Keller Rohrback as Class Counsel.  *Id.* ¶ 2.

**F.      Notice to the Class**

In the Preliminary Approval Order, the Court approved the form of the proposed Class Notice and set deadlines for mailing it and publishing it online on

the designated settlement websites.  ECF No. 108 ¶ 5.  In accordance with the

Court's Order, the Court-approved Class Notice was mailed on November 3, 2017.

Joint Decl. ¶ 34; Dahl Aff. ¶ 6.  The Dahl Affidavit demonstrates compliance with

the Court's Order for Class Notice and attests to the mailing of the Class Notice to

10,798 individual members of the Class.  The Class Notice established February 6,

2018 as the deadline for objecting to the proposed Settlement and Plaintiffs'

motion for attorneys' fees and other relief.  Dahl Aff. ¶ 6.

Before November 5, 2017, as required by the Preliminary Order, Class

Counsel posted the Complaint, Settlement Agreement, Class Notice, Preliminary

Approval Motion, and the Preliminary Order on the Class Settlement websites,

https://www.cohenmilstein.com/saintjosephs-settlement and

www.kellersettlements.com.  Joint Decl. ¶ 34.  Class Counsel also provided a toll-

free number for Class members to call with questions about the Settlement.  ECF

No. 104-3.  As of January 19, 2018, the settlement website has 151 recorded visitor

sessions and Class Counsel has responded to 56 email and phone inquiries.

## II.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

"A class action may not be settled under Rule 23(e) without a determination

by the district court that the proposed settlement is 'fair, reasonable and

adequate.'"  *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 534 (3d Cir.

2004); *see also In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir.

2009); Fed. R. Civ. P. 23(e)(2).  The Third Circuit has emphasized that in passing on the adequacy of a settlement under Rule 23(e), "the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) ("*GM Trucks*").  Approval of a proposed settlement lies in this Court's sound discretion.  *See In re Warfarin,* 391 F.3d at 535; *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 256; *Girsh v. Jepson,* 521 F.2d 153, 156 (3d Cir. 1975).  Additionally, this Circuit has "a strong presumption in favor of voluntary settlement agreements" and a "strong judicial policy in favor of class action settlement." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594–95 (3d Cir. 2010); *P. Van Hove BVBA v. Universal Travel Grp., Inc.*, No. 11-2164, 2017 WL 2734714, at *6 (D.N.J. June 26, 2017) ("*BVBA*") (Vazquez, J.) ("[T]he law encourages and favors settlement of civil actions in federal courts, particularly in complex class actions") (citing *GM Trucks,* 55 F.3d at 785).

The Third Circuit has identified nine factors which must be considered when determining whether a proposed class action settlement is fair, reasonable and adequate:

> (1) [T]he complexity, expense, and likely duration of the litigation . . . ; (2) the reaction of the class to the settlement . . . ; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment . . . ;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . ; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . .

*Girsh v. Jepson,* 521 F.2d at 157.  As discussed below, consideration of these factors leads to the conclusion that the Settlement is "fair, reasonable and adequate" and warrants approval.

## A.   The First *Girsh* Factor: The Complexity, Expense, and Likely Duration of the Litigation

"This factor captures 'the probable costs, in both time and money, of continued litigation.'"  *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001).  "By measuring the costs of continuing on the adversarial path, a court can gauge the benefit of settling the claim amicably." *GM Trucks*, 55 F.3d at 812.  This Court has agreed that "[s]ettlement is favored under this factor if litigation is expected to be complex, expensive and time consuming." *BVBA*, 2017 WL 2734714, at *7 (quoting *Yedlowski v. Roka Bioscience, Inc.,* No. 14-8020, 2016 WL 6661336, at *12 (D.N.J. Nov. 10, 2016)).

This factor weighs heavily in favor of approving the Settlement.  Class Counsel believe strongly in their claims and have vigorously pursued them, but there is risk in any litigation, and especially here, where the area of the law— ERISA Church Plan litigation—is one of the most nuanced, unpredictable, and rapidly developing areas in ERISA jurisprudence, as evidenced by the rulings of

the Supreme Court on the threshold issue of whether only a church can establish a Church Plan, and the Tenth Circuit's decision in *Medina*, 2017 WL 6459961.  In *Medina*, the Tenth Circuit considered Plaintiffs' alternative theories of ERISA liability, including (i) whether the benefit committee satisfied the principal purpose requirements of 29 U.S.C. § 1002(33)(C); (ii) whether Defendants and their benefit committee are controlled by or associated with the Roman Catholic Church; and (iii) whether the application of the Church Plan exemption to the Plan would violate the Constitution.  Prior to the district court in *Medina* ruling on those alternative theories, the parties spent over two years in discovery (including extensive document and interrogatory discovery and many important depositions), conducted expert discovery and participated in extensive motion practice.  Like *Medina*, the expense and duration time required to take this case through trial would be considerable.

In addition, it is likely that if this case were to proceed to trial, it would consume a significant amount of additional time and money for all parties, with no certainty that there would be a better result for the Class members than what the proposed Settlement will produce for them.  As the Court likely appreciates, the process of trial and post-trial briefing in this non-jury case likely would have consumed several months at least, followed by the length of time needed by the Court to review the record and these submissions and render its anticipated ruling.

Whatever decision resulted from the bench trial would certainly have been appealed by one or both sides of the case, resulting in an appeal process likely to consume an additional 12-24 months.

In view of the significant costs (and risks), which Plaintiffs are likely to incur if they continue on the litigation path, there is a substantial benefit to be derived from a negotiated resolution at this time.  The monetary and non-monetary consideration to the Plan is far better for the Class than the possibility of a more significant recovery, if any, after an expensive and protracted trial and appeal.

## B.    The Second *Girsh* Factor: The Reaction of the Class to the Settlement

The Court-ordered Class Notice, which describes the terms of the Settlement and the manner in which participants may object to the Settlement, was disseminated to the approximately 10,798 members of the Class at the beginning of November.  *See* Sections I(A)–(B) above, which discuss the procedural history of the case and the parties' settlement.  Because Class members have until February 6, 2018, to file an objection to the Settlement, it is too early to gauge *fully* the reaction of the Class.  However, as of the morning of January 19, 2018, no objections to Settlement terms had been received by Class Counsel.  Joint Decl. ¶ 36.  If there are any objections or other comments bearing on approval of the Settlement filed before February 6, 2018, they will be addressed in the reply in support of this motion and fee petition.

C.   **The Third *Girsh* Factor: The Stage of the Proceedings and the Amount of Discovery Completed**

The stage-of-proceedings factor captures "the degree of case development that Class Counsel have accomplished prior to settlement.  Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating."  *GM Trucks,* 55 F.3d at 813.  This Court has found that "[t]he fact that a case has not proceeded through discovery does not necessarily weigh against settlement approval." *BVBA*, 2017 WL 2734714, at *7.

Prior to, and during, settlement negotiations, Plaintiffs and Defendants completed a careful investigation of the facts and law of this case, allowing the Parties to fully evaluate the legal and factual issues surrounding this case.  Before filing the Complaint, Plaintiffs engaged in extensive factual and legal research in order to develop their claims and legal theories, which ultimately resulted in a sixty-page Complaint.  Joint Decl. ¶¶ 14–17.  Such investigation included, among other things, a review and analysis of: (i) the statute at issue in this case, the legislative history behind it, and agency and court opinions interpreting it; (ii) St. Joseph's public disclosures; (iii) publicly-available financial statements; (iv) governmental filings; and (v) information provided by the Plaintiffs.  Joint Decl. ¶¶ 9, 14–17.  The Parties' settlement negotiations also benefited from all the informal discovery and research that was undertaken in this matter, including Defendants' production of documents concerning the Plan and its administration (including the

operative Plan document and Summary Plan Description), and financial and actuarial data, which was evaluated by Plaintiffs' expert.  Joint Decl. ¶ 20.

In light of the above, the Parties possessed sufficient information to properly evaluate the value and benefit of this Settlement Agreement, and this factor weighs in favor of final approval.  *See BVBA*, 2017 WL 2734714, at *7 ("Indeed, courts in this district have approved settlements while the case was in the pre-trial stage and formal discovery had not yet commenced") (quoting *Johnson & Johnson Derivative Litig.,* 900 F. Supp. 2d 467, 482 (D.N.J. 2012)).

### D.   The Fourth and Fifth *Girsh* Factors: The Risks of Establishing Liability and Damages

These factors evaluate the possible risks of litigation, balancing "the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement."  *In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998). "By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had Class Counsel decided to litigate the claims rather than settle them."  *GM Trucks,* 55 F.3d at 814. Where the risks of recovery are high, these *Girsh* factors weigh in favor of approving the settlement. *In re Prudential*, 148 F.3d at 319.  Because damages are contingent on establishing liability, "the same concerns animate both of these

elements" and the Court may consider them together. *Bredbenner v. Liberty Travel, Inc.,* No. 09–905, 2011 WL 1344745, at *13 (D.N.J. Apr. 8, 2011).

In a case such as this, given the *Advocate* opinion that a Church Plan need not be established by a church, and given that Plaintiffs' claims and theories of liability are largely untested in the Circuit Courts, these *Girsh* factors require consideration of the difficulty Plaintiffs may face in proving their allegations. *See, e.g., Bell Atl. Corp. v. Bolger,* 2 F.3d 1304, 1312–13 (3d Cir. 1993). In weighing these considerations, the Court need "not press into the merits of the case" but instead may "rely to a certain extent on the estimation provided by class counsel, who is experienced with the intricacies of the underlying case." *Bredbenner,* 2011 WL 1344745, at *13.

As noted above, although Class Counsel remains confident in the merits of Plaintiffs' claims, there is risk in any litigation, particularly here, where the Supreme Court has already rejected one of Plaintiffs' central legal theories. *Advocate*, 137 S. Ct. at 1663. As to the remaining theories, Plaintiffs would face several risks, as shown by the Tenth Circuit's decision in *Medina* finding for defendants on Plaintiffs' alternate theories of liability. Again, while *Medina* is not binding on this Court, the Tenth Circuit's ruling illustrates the litigation risk addressed by this Settlement. Accordingly, liability here remains disputed and there is no guarantee that Plaintiffs would prevail.

Further, determination of losses to the Plan under ERISA is a complex endeavor, and would likely involve a 'battle of the experts' on which standards and factors would be applicable to finding the appropriate amount of damages. In considering the risks of establishing damages, settlement approval is favored where the court is likely to be "confronted with competing expert opinions of corresponding complexity, [and] there is no compelling reason to think that it would accept Lead Plaintiff's determination rather than [Defendant's]." *Cendant*, 264 F.3d at 239.

In short, given that unsettled legal and factual questions as to liability and the potential difficulty with the quantification of losses, a Class Settlement consisting of an immediate $42.5 million cash infusion into the Plan, along with significant other administrative and equitable protections, weighs in favor of the Settlement. *See, e.g.*, *Bredbenner*, 2011 WL 1344745, at *14 ("In the [face] of such considerable risks, an immediate cash settlement provides certainty and offers a significant benefit to all class members").

### E.     The Sixth *Girsh* Factor: The Risks of Maintaining the Class Action Through the Trial

This risk factor was not considered in entering into the Settlement Agreement.  Although the Court had not yet ruled on class certification at the time settlement negotiations began in earnest or even as of the time the case was settled, Plaintiffs expected that they would eventually secure certification and maintain the

24

class through a trial, given the indisputably class-wide nature of the claims.  While Defendants have expressed differing views as to class certification, Plaintiffs view this as a neutral factor.[10]

### F. The Seventh *Girsh* Factor:  The Ability of Defendants to Withstand a Greater Judgment

The financial health of St. Joseph's was not a factor in Plaintiffs' decision to settle the case.  There was and is no reason to conclude that the hospital could not ultimately satisfy a judgment in the full amount of the largest projected recovery. However, that fact does not diminish the material significance of the monetary and non-monetary consideration provided under the Settlement, and a court evaluating settlements must "guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *GM Trucks*, 55 F.3d at 806. Moreover, "courts in this district regularly find a settlement to be fair even though the defendant has the practical ability to pay greater amounts." *Bredbenner*, 2011 WL 1344745, at *15 (citing cases).

---

[10] *See also In re Schering-Plough/Merck Merger Litig.*, No. 09-1099, 2010 WL 1257722, at *11 (D.N.J. Mar. 26, 2010) (noting that the Third Circuit has explained "Because the district court always possesses the authority to decertify or modify a class that proves unmanageable, examination of this factor in the standard class action would appear to be perfunctory").

G.      **The Eighth and Ninth *Girsh* Factors: The Range of
Reasonableness of the Settlement Fund in Light of the Best
Possible Recovery and All the Attendant Risks of Litigation**

The final two *Girsh* factors ask whether a settlement is reasonable in light of

the best possible recovery and the risks the parties would face if the case went to

trial.  In order to assess the reasonableness of a proposed settlement seeking

monetary relief, "the present value of the damages plaintiffs would likely recover if

successful, appropriately discounted for the risk of not prevailing, should be

compared with the amount of the proposed settlement."  *GM Trucks,* 55 F.3d at

806 (*quoting* Manual for Complex Litigation 2d § 30.44, at 252); *see also Mulroy*

*v. Nat'l Water Main Cleaning Co. of New Jersey*, No. 12-3669, 2014 WL 7051778,

at *5 (D.N.J. Dec. 12, 2014) (These factors test "reasonableness in light of the best

possible recovery and reasonableness in light of the risks the parties would face if

the case went to trial.") (quoting *In re Warfarin Antitrust Litig*., 391 F.3d at 538).

As discussed *supra*, this factor clearly favors approval of the Settlement.  The

$42.5 million cash infusion into the Plan represents approximately 50% of the

parties' estimated $85 million Plan underfunding at the time of negotiations.  Joint

Decl. ¶ 26.  Thus, for purposes of the eighth *Girsh* factor—the range of

reasonableness of the settlement fund in light of the best possible recovery—the

$42.5 million settlement amount represents a recovery of approximately <u>50%</u> of

the "best possible recovery" of $85 million assuming that *all* of Plaintiffs' theories of liability and damages were fully accepted by the Court.

However, the value of recovering the full underfunding of $85 million through litigating this case to judgment is further diminished based on the time value of money because while the Settlement Agreement provides for the Plan contribution to be paid all at once—ERISA allows underfunded pension plans to make up plan funding shortfalls through minimum funding standards over a period of seven years. *See* 29 U.S.C. § 1083(c)(2)(A). The present value of $85 million amortized over seven years is far less than an $85 million instant contribution. Relatedly, the Settlement contribution of the entire 50% of the underfunded amount (actually more given that Defendants contributed a total of $45 million after the parties executed the term sheet) allows the Plan to earn investment returns on the entire amount of the Settlement rather than on the partial payments over a seven year period that will be required should Plaintiffs achieve judgment ordering Defendants to comply with ERISA.

In addition, the Settlement offers additional, ERISA-like protections including provisions assuring accrued benefits in the event of plan amendment, termination or mergers, and the allowance of participants to receive important notices and financial information concerning the Plan and their benefits.

Furthermore, in light of the high risks of continued litigation discussed at length, *supra*, this Settlement should be regarded by the Court as a highly favorable recovery that warrants final approval.  In summary, evaluation of this proposed Settlement in light of each of the factors mandated under *Girsh* confirms that it is an excellent outcome for the Class and deserves final approval by the Court.

## III.   CERTIFICATION OF THE CLASS IS APPROPRIATE

Finally, before approving the Settlement it is necessary that the Court finally certify the Class. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 618–21 (1997) (discussing Fed. R. Civ. P. 23 and holding that the prerequisites of 23(a) and (b) must be satisfied prior to approval of a settlement that determines the rights of class members).  However, "When considering class certification in the context of approving a settlement, a court 'need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.'" *BVBA*, 2017 WL 2734714, at *3 (quoting *In re Prudential*, 148 F.3d at 308.

Federal Rule of Civil Procedure 23 provides that an action may be maintained as a class action if each of the four prerequisites of Rule 23(a) is met *and* the action also satisfies one of the subdivisions of Rule 23(b).  The Third Circuit has expressly held that class certification is appropriate in ERISA cases like

this one which seek relief to the plan as a whole under 502(a)(2). *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3rd Cir. 2009) ("In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class"); *see also* Fed. R. Civ. P. 23(b)(1)(B) Advisory Committee's Note (1966 Amendment) (certification under Fed. R. Civ. P. 23(b)(1) is appropriate in cases charging breach of trust by a fiduciary to a large class of beneficiaries). Congress has similarly embraced the use of representative actions to enforce ERISA. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985) (noting Congress' clearly expressed intent that ERISA "actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole").

Moreover, district courts have certified settlement classes in recent, similar Church Plan cases. *See, e.g.*, *Hodges v. Bon Secours Health System, Inc., et al.*, No. 1:16-cv-1079, ECF No. 117 (D. Md. Dec. 21, 2017); *Lann v. Trinity*, No. 8:14-cv-2337, ECF No. 111 (D. Md. May 31, 2017); *Griffith v. Providence Health & Servs.*, No. C14-1720-JCC, 2017 WL 1064392 (W.D. Wash. March 21, 2017). Thus this Settlement, which provides relief to the Plan, is suitable for class certification prior to final approval. As set forth below, the Class readily satisfies

the requirements of Rule 23(a), (b)(1) and (b)(2) and thus certification of the Class

is appropriate.

### A.   The Requirements of Rule 23(a) Are Easily Satisfied

#### 1.   Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all

members is impracticable." Fed. R. Civ. P. 23(a)(1). To be "impracticable" does

not mean that joinder of every Class member is impossible. Rather, proof of

"difficulty or inconvenience of joining all members of the class" suffices. *Weisfeld*

*v. Sun Chem. Corp.,* 210 F.R.D. 136, 139 (D.N.J. 2002) (citation omitted).

Defendants have identified, and the Class Notice has been sent to, approximately

10,798 members of the Class. *See* Dahl Aff. ¶ 6. There is no minimum number of

plaintiffs required to maintain a suit as a class action, but generally, "if the named

plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first

prong of Rule 23(a) has been met." *BVBA*, 2017 WL 2734714, at *4 (quoting

*Stewart v. Abraham,* 275 F.3d 220, 226–27 (3d Cir. 2001)). Thus, it is clear that

the 10,798 members of the Class satisfy numerosity. *See, e.g., In re Ikon Office*

*Solutions, Inc. Sec. Litig.,* 191 F.R.D. 457, 462 (E.D. Pa. 2000) ("[N]umerosity

standard is easily met" in ERISA case involving "thousands of participants in the

plan in any given year").

#### 2.   Commonality

Under Rule 23(a)(2), for an action to be properly maintained as a class

action there must be at least one common issue of law or fact. The "threshold of commonality is not high." *In re School Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986) (quoting *Jenkins v. Raymark Indus. Inc.*, 782 F.2d 468 (5th Cir. 1986)). A *single* common issue of law or fact suffices. *Johnson v. HBO Film Mmgt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001); *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). "It is only necessary to show that the named plaintiffs share at least one question of law or fact with the grievances of the prospective class." *Simon v. KPMG LLP*, No. 05-3189, 2006 WL 1541048, at *5 (D.N.J. June 2, 2006); *BVBA*, 2017 WL 2734714, at *4.

The members of the Class here share multiple issues of law and fact, such as whether the Plan is exempt from ERISA as a Church Plan, and, if not, whether the fiduciaries of the Plan have failed to administer and fund the Plan in accordance with ERISA.  These questions and issues are all common to the Class because the Class members "share common legal theories" and their "claims arise out of the same nucleus of operative facts[.]" *Simon*, 2006 WL 1541048, at *5.  *See, e.g., Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 458 (D. Md. 2014) (identifying similar common issues in an ERISA breach of fiduciary duty case); *Kolar v. Rite Aid Corp.*, No. 01-1229, 2003 WL 1257272, at *2 (E.D. Pa. Mar. 11, 2003) (certifying settlement class where common questions included "whether the individual defendants violated their ERISA fiduciary duties"); *Banyai v. Mazur*,

31

205 F.R.D. 160, 163 (S.D.N.Y. 2002) (same)). The commonality requirement is undeniably satisfied in this case because it presents numerous common questions of both law and fact.

### 3.   Typicality

Rule 23(a)(3) requires that the claims asserted by a plaintiff on behalf of a class be typical of the claims of the other class members. "Typicality is established when the plaintiffs' claims arise from the 'same event or course of conduct which in turn had given rise to the claims of other class members.'" *Dodge v. Cambrex Corp.*, No. 03-CV-4896 (PGS), 2007 WL 608365 at *5 (D.N.J. Feb. 23, 2007); *Hoxworth v. Blinder Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992); *BVBA*, 2017 WL 2734714, at *4 (citation omitted); *see also Fields v. Biomatrix, Inc.*, 198 F.R.D. 451, 456 (D.N.J. 2000). Where the claims of the named plaintiffs and of the class "are all based on the same legal theories" and "the central inquiries of the case concern the same events and practices alleged to have been perpetrated by defendants," the typicality requirement is satisfied. *See Simon*, 2006 WL 1541048 at *6.

Here, Plaintiffs' claims arise from the same course of events as the claims of the Class as a whole—Defendants' alleged failure to maintain the Plan in accordance with ERISA.  Moreover, Plaintiffs assert the same claims arising from the same conduct by Defendants and seek the same relief on behalf of the Plan—

compliance with ERISA.  Accordingly, the individual claims of the class representatives have the essential characteristics common to the other class members' claims, and satisfy the typicality requirement. *See In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 478 (W.D. Pa. 1999); *BVBA*, 2017 WL 2734714, at *4; *see also Fields*, 198 F.R.D. at 456 (the basic question under the typicality requirement is "whether the proposed class representative's factual or legal stance is characteristic of that of other class members").

### 4. <u>Adequacy</u>

Before certifying a class, the Court must also find that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement has two related elements: the interests of the named plaintiffs must be sufficiently aligned with those of the class members; and Class Counsel must be qualified, experienced and generally capable of serving the interests of the entire class. *Amchem Prods.*, 521 U.S. at 635; *Dodge,* 2007 WL 608365 at *7; *Fields*, 198 F.R.D. at 457; *see also Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975).

A determination of the adequacy of a named plaintiff as a class representative often follows from the analysis of the commonality and typicality requirements, which tend to merge together to establish that the representative plaintiffs' claims are typical enough of the class-wide claims that the

representatives will adequately represent the interests of the class. *See BVBA*, 2017 WL 2734714, at *4 (quoting *GM Trucks,* 55 F.3d at 800).

Both prongs of the adequacy test are readily satisfied here. First, there is nothing to suggest that the Named Plaintiffs have any interest antagonistic to or divergent from the interests of all members of the Class. Moreover, to date they have vigorously pursued the claims on behalf of all Class members. As such, interests of the Named Plaintiffs are congruent with those of the other members of the Class: all seek to enhance their retirement security under this Plan, whether through monetary or non-monetary relief.

Second, the Named Plaintiffs have retained highly experienced counsel in the field of class action litigation, and particularly class litigation brought under ERISA on behalf of participants and beneficiaries, including Church Plan cases. Declarations including brief biographical statements for counsel are submitted herewith. Accordingly, this class action satisfies the adequacy requirement of Rule 23(a)(4).

## B. The Class Satisfies the Requirements of Rule 23(b)(1) and (b)(2)

### 1. Individual Actions Would Create Inconsistent Adjudications or be Dispositive of the Interests of Absent Members

Plaintiffs' claims are appropriate for certification under both Rule 23(b)(1)(A) and Rule 23(b)(1)(B).

To maintain a class action under Rule 23(b)(1)(A), a named plaintiff must show that "the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A); *see Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 397 (E.D. Pa. 2001). Rule 23(b)(1)(A) is properly used "to obviate the actual or virtual dilemma which would . . . confront the party opposing the class" if separate lawsuits were decided differently so as to result in "incompatible standards" for that opposing party. Fed. R. Civ. P. 23(b)(1)(A), Advisory Committee's Note; *see also In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, MDL No. 1658, No. 05-1151, 2009 WL 331426, at *11–12 (D.N.J. Feb. 10, 2009) (finding courts often certify ERISA breach of fiduciary duty claims brought on behalf of plan "principally because (b)(1)(A) focuses on the rights of the party opposing certification and the defendants' fiduciary conduct toward the proposed class usually is alleged to be uniform.") (citing, 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 5:5 (3d ed. 2008)); *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 604 ("In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class"); *see also Kolar,* 2003 WL 1257272, at

*3 ("Palpably, 'inconsistent or varying adjudications' would be intolerable for the employees of the same employee benefit plans [and] one member's claim would indeed 'as a practical matter be dispositive of the interests' of fellow members of those Plans").

Here, the risk of inconsistent adjudications and incompatible standards as a result of not granting class certification is obvious: in the absence of certification, two participants could bring identical actions and achieve different results, with one court holding that the Plans are ERISA-regulated and the other holding that they are not.  If this were to occur, the Plan fiduciaries would be faced with incompatible standards for their conduct—one court would order them to comply with the panoply of requirements as set forth in the Complaint, and another would rule that the Plan is exempt from these requirements.

Alternatively, Rule 23(b)(1)(B) applies where individual cases would "as a practical matter be dispositive of the interests" of nonparty class members "or substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B).  Therefore, Rule 23(b)(1)(B) frequently has served as the basis for class certification in ERISA cases challenging the conduct of plan representatives alleged to violate plan terms or statutory rights. As Judge Yohn concluded in certifying the class in *Thomas* under Rule 23(b)(1)(B), when breach of fiduciary duties are at issue "[a]ny decision regarding whether defendants breached their

fiduciary duty would necessarily affect the interests of the other participants." 201 F.R.D. at 397. The same would be true of any decision on the question whether it was unlawful for defendants to designate the Plan as an ERISA-exempt Church Plan, and whether the fiduciaries of the Plan have failed to administer and fund the Plan in accordance with ERISA, inasmuch as plan fiduciaries must administer and implement a plan uniformly.

The 1966 Advisory Committee Note makes clear that Rule 23(b)(1)(B) was designed to address situations where trust beneficiaries alleged a breach of a fiduciary duty. *See* 1966 Advisory Committee Note, Rule 23(b)(1) ("The same reasoning applies to an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class"). *See also Bon Secours,* No. 1:16-cv-1079, ECF No. 117 (certifying a class for settlement under Fed. R. Civ. P. 23(b)(1) and (2) in a Church Plan case); *Trinity*, No. 8:14-cv-2337, ECF No. 111 (same); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 191 F.R.D. at 466 (certifying ERISA class under 23(b)(1)(B); stating that where the claim seeks plan-wide relief "there is a risk that failure to certify the class would leave future Plaintiffs without relief"); *Specialty Cabinets and Fixtures, Inc. v. Am. Equitable Life Ins. Co.*, 140 F.R.D. 474, 478–79 (S.D. Ga. 1991) (holding that suit alleging breach of ERISA fiduciary duties should be certified under 23(b)(1)(B) because the breach of fiduciary duty would necessarily

affect all participants).  This is a classic case suitable for class certification under Rule 23(b)(1)(A) and Rule 23(b)(1)(B).

> **2.      Defendants Have Acted on Grounds Generally Applicable to the Class and the Declaratory and Injunctive Relief Plaintiffs Seek is Appropriate for the Class as Whole**

Plaintiffs' claims are also appropriate for certification under Rule 23(b)(2). Rule 23(b)(2) permits an action to be maintained as a class action when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Here, Plaintiffs allege that Defendants failed to comply with ERISA on a Plan-wide basis and seek, among other things, declaratory relief that the Plan is not a Church Plan as well as injunctive relief requiring that the Plan comply with ERISA.  ERISA §§ 502(a)(2) & (3); 29 U.S.C. §§ 1132(a)(2) & (3).

Remedies under ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2), are by definition plan-wide, a classic example of equitable relief.  *See Mass. Mut. Life Ins. Co.*, 473 U.S. at 140–41.  As discussed, *supra,* the Settlement provides for critical injunctive relief, including the prevention of accrued benefit cutbacks in the event of Plan merger or termination, and furnishing participants with important, ERISA-like disclosures regarding the Plan, such as summary plan descriptions, pension benefit statements, and access to the Plan's claim review procedures.  While the

Settlement also includes monetary consideration to the Plan, that consideration flows directly from Plaintiffs' prayer for injunctive and declaratory relief. *Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 338 F.3d 755, 763–64 (7th Cir. 2003) (certifying Fed. R. Civ. P. 23(b)(2) class where ERISA plaintiffs sought declaratory relief); *Mulder v. PCS Health Systems, Inc.,* 216 F.R.D. 307, 318–19 (D.N.J. 2003) (certification of an ERISA claim proper under Rule 23(b)(2) where monetary relief is sought in conjunction with injunctive relief); *see also Bon Secours,* No. 1:16-cv-1079, ECF No. 117 (certifying Church Plan settlement class under Fed. R. Civ. P. 23(b)(1) and (2)); *Trinity*, No. 8:14-cv-2337, ECF No. 111 (same). Accordingly, Plaintiffs' claims are certified properly under Rule 23(b)(2).

### 3.   Plaintiffs' Counsel Satisfy The Requirements of Rule 23(g)

When certifying a class, a court must also appoint Class Counsel under Rule 23(g), which mandates that a court appoint Class Counsel who will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1).

The Court undertook this analysis when it appointed Cohen Milstein and Keller Rohrback as Interim Class Counsel in March of 2017. As Judge Clark found and as this Court adopted, Class Counsel "spent years researching the legislative history of the 'Church Plan' exemption" and sought "comprehensive protection for plaintiffs and the class" under ERISA. ECF No. 94 at 5, ECF No. 96. Moreover, Class Counsel are experienced in handling class actions and other

complex litigation, particularly in developing and litigating Church Plan cases. *Id.* (noting Class Counsel have been "litigating 'church plan' matters since 2013" and have an "intimate knowledge of the applicable law"). Further, Class Counsel have detailed above the time and effort expended in connection with this litigation. *See* Section I, *supra*; *see also* Joint Decl. ¶¶ 7–25.

For all of those reasons, Class Counsel satisfies the requirements of Rule 23(g).

## IV.   CONCLUSION

Plaintiffs respectfully submit that the Settlement should be fully and finally approved because it is a fair and reasonable result.  Moreover, the Class meets all the requirements of Rule 23 and should be finally certified.

Dated: January 19, 2018                    Respectfully submitted,

                                    */s/ Scott M. Lempert*
                                    Scott M. Lempert, NJBN 035281995
                                    Karen L. Handorf, *admitted pro hac vice*
                                    Michelle C. Yau, *admitted pro hac vice*
                                    Mary J. Bortscheller, *admitted pro hac vice*
                                    **COHEN MILSTEIN SELLERS**
                                    **  & TOLL PLLC**
                                    1100 New York Avenue, N.W., Suite 500
                                    Washington, DC 20005
                                    Tel.: (202) 408-4600
                                    Fax: (202) 408-4699

Email: slempert@cohenmilstein.com
khandorf@cohenmilstein.com
myau@cohenmilstein.com
mbortscheller@cohenmilstein.com

Laura R. Gerber, *admitted pro hac vice*
Lynn Lincoln Sarko, *admitted pro hac vice*
Havila C. Unrein, *admitted pro hac vice*
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384
Email: lgerber@kellerrohrback.com
lsarko@kellerrohrback.com
hunrein@kellerrohrback.com

Ron Kilgard, *admitted pro hac vice*
**KELLER ROHRBACK L.L.P.**
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel.: (602) 248-0088
Fax: (602) 248-2822
Email: rkilgard@kellerrohrback.com

***Counsel for Plaintiff Garbaccio***

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 19, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

<u>s/ Scott Lempert       </u><br>
Scott Lempert