# Exhibit 1

*Garbaccio v. Saint Joseph's Healthcare System, Inc., et al.*
Settlement Agreement
July 20, 2017

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DONNA GARBACCIO, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ST. JOSEPH'S HOSPITAL AND MEDICAL CENTER AND SUBSIDIARIES, et al., <br><br> Defendants. | Civil Action No.: No. 2:16-cv-02740 (JMV/JBC) |

## CLASS ACTION SETTLEMENT AGREEMENT

This CLASS ACTION SETTLEMENT AGREEMENT ("Settlement Agreement") is entered into by and between Plaintiffs as defined in § 1.14 below, on the one hand, and Defendants, as defined in § 1.8 below, on the other. Plaintiffs and Defendants are referred to collectively in this Settlement Agreement as the "Parties." Capitalized terms and phrases have the meanings provided in § 1 below or as specified elsewhere in this Settlement Agreement.

1.   DEFINITIONS

1.1.   "*Action*" shall mean: the consolidated class action *Garbaccio v. Saint Joseph's Hospital & Medical Center,* No. 2:16-cv-02740, an action pending in the United States District Court for the District of New Jersey, and refers collectively to Plaintiff Garbaccio's action and to the *Barker v. Saint Joseph's Healthcare System, Inc.,* No. 2:16-cv-02748 (D.N.J) action, consolidated with the *Garbaccio* action on July 12, 2016 and terminated July 13, 2016.

1.2.   "*Church Plan*" shall mean: a plan which meets the definition of a "Church Plan" under ERISA § 3(33), 29 U.S.C. § 1002(33), and is thus exempt from the provisions of Title I and Title IV of ERISA.

1.3.   "*Class Counsel*" shall mean: Cohen Milstein Sellers & Toll, PLLC and Keller Rohrback L.L.P.

1.4.   "*Class Notice*" shall have the meaning provided in § 2.2.1.

1.5.   "*Class Settlement Amount*" shall have the meaning set forth in § 7.1.1.

1.6.   "*Complaint*" shall mean: the Class Action Complaints filed in *Garbaccio* on May 13, 2016 and in *Barker* on May 16, 2016.

*Garbaccio v. Saint Joseph's Healthcare System, Inc., et al.*
**Settlement Agreement**
**July 20, 2017**

1.7. "*Court*" shall mean: The United States District Court for the District of New Jersey.

1.8. "*Defendants*" shall mean: St. Joseph's Hospital and Medical Center and Subsidiaries; St. Joseph's Hospital and Medical Center d/b/a St. Joseph's Regional Medical Center; St. Joseph's Healthcare System, Inc.; St. Joseph's Regional Medical Center Pension Plan Committee; John and Jane Does 1-20, Members of the Committee that Administers the St. Joseph's Hospital and Medical Center Pension Plan; John and Jane Does 21-40, Members of the Executive Finance Committee of the Board of Trustees; John and Jane Does 41-60, inclusive.

1.9. "*Effective Date of Settlement*" shall mean: the date on which all of the conditions to settlement set forth in § 2 of this Settlement Agreement have been fully satisfied or waived and the Settlement shall have become Final.

1.10. "*ERISA*" shall mean: the Employee Retirement Income Security Act of 1974, as amended, including all regulations promulgated thereunder.

1.11. "*Final*" shall mean: with respect to any judicial ruling or order in the Action, that the period for any appeals, petitions, motions for reconsideration, rehearing or certiorari, or any other proceedings for review ("Review Proceeding") has expired without the initiation of a Review Proceeding, or, if a Review Proceeding has been timely initiated, that there has occurred a full and completed disposition of any such Review Proceeding, including the exhaustion of proceedings in any remand and/or subsequent appeal on remand.

1.12. "*Incentive Awards*" shall mean: the amounts requested in recognition of Plaintiffs' assistance in the prosecution of the Action, payable pursuant to § 7.1.4 below, as follows: $10,000 each to Donna Garbaccio, Mary Lynne Barker, Anne Marie Dalio, and Dorothy Flar.

1.13. "*Person*" shall mean: an individual, partnership, corporation, or any other form of organization.

1.14. "*Plaintiffs*" and "*Named Plaintiffs*" shall mean: Donna Garbaccio, Mary Lynne Barker, Anne Marie Dalio, and Dorothy Flar.

1.15. "*Plan*" shall mean: the St. Joseph's Healthcare System Pension Plan.

1.16. "*Released Claims*" shall have the meaning provided in § 3.

1.17. "*Releasees*" shall mean: St. Joseph's Healthcare System, all entities that are considered to be part of a single employer controlled group under Internal Revenue Code § 414, their employees, agents and directors, including any individuals and/or Defendants.

1.18. "*Settlement*" shall mean: the settlement to be consummated under this Settlement Agreement pursuant to the Final Approval Order.

*Garbaccio v. Saint Joseph's Healthcare System, Inc., et al.*
**Settlement Agreement**
**July 20, 2017**

1.19.   "*Settlement Class*" shall mean:  All present and former participants (vested or non-vested) or beneficiaries of the Plan as of the Effective Date of Settlement.

1.20.   "*St. Joseph's*" shall mean St. Joseph's Healthcare System, a New Jersey nonprofit corporation.

1.21.   "*Successor-In-Interest*" or "*Successor*" shall mean:  a Person's estate, legal representatives, heirs, successors or assigns, and any other Person who can make a legal claim by or through such Person.

1.22.    "*Term Sheet*" shall mean:  the document entitled "St. Joseph's Hospital Settlement Final Term Sheet" first signed on May 24, 2017, as supplemented June 6, 2017, and as amended July 5, 2017.

2.   CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE SETTLEMENT

2.1.   *Effectiveness of This Settlement Agreement*.  This Settlement Agreement shall not become binding unless and until each and every one of the following conditions in §§ 2.2 through 2.7 shall have been satisfied.

2.2.   *Court Approval*.  The Settlement contemplated under this Settlement Agreement shall have been approved by the Court, as provided for in this § 2.2.  The Parties agree jointly to recommend to the Court that it approve the terms of this Settlement Agreement and the Settlement contemplated hereunder.  The Parties agree to undertake their best efforts, including all steps and efforts contemplated by this Settlement Agreement, and any other steps or efforts which may become necessary by order of the Court (unless such order modifies the terms of this Settlement Agreement) or otherwise, to carry out this Settlement Agreement, including the following:

   2.2.1   *Motion for Preliminary Approval of Settlement and of Notices*.  The Court shall have approved the preliminary motion to be filed by Plaintiffs on or before August 3, 2017 ("Preliminary Motion") by issuing an order in substantially the same form as attached hereto as Exhibit 1 (the "Preliminary Approval Order"), including the class notice approved by the Court (the "Class Notice"):

>   (a)   Preliminarily approving this Settlement Agreement;
>
>   (b)   Directing the time and manner of the Class Notice; and
>
>   (c)   Finding that: (i) the proposed form of Class Notice fairly and adequately: (A) describes the terms and effect of this Settlement Agreement and of the Settlement, (B) gives notice to the Settlement Class of the time and place of the hearing of the motion for final approval of this Settlement Agreement, and (C) describes how the recipients of the Class Notice may object to approval of this Settlement Agreement; and (ii) the proposed

3

      manner of communicating the Class Notice to the members of the Settlement Class is the best notice practicable under the circumstances.

  2.2.2  *Class Certification.*

      (a)  The Court shall have certified the Action as a non-opt out class action for settlement purposes only, pursuant to Federal Rules of Civil Procedure 23(b)(1) and/or (b)(2), with Named Plaintiffs as the named Settlement Class representatives, Cohen Milstein Sellers & Toll, PLLC and Keller Rohrback, L.L.P. as Class Counsel, and with the "Settlement Class" as defined above.

      (b)  The Parties agree to stipulate to certification of the Action as a non-opt out class action for settlement purposes only, pursuant to Federal Rules of Civil Procedure 23(b)(1) and/or (b)(2), on the foregoing terms. If the Settlement does not become Final, then no Settlement Class will be deemed to have been certified by or as a result of this Settlement Agreement, and the Action will for all purposes revert to its status as of the day immediately prior to the date on which the Term Sheet was executed.

  2.2.3  *Issuance of Class Notice.* On the date and in the manner set by the Court in its Preliminary Approval Order, Plaintiffs and Defendants will jointly cause notice of the Preliminary Approval Order to be delivered to the Settlement Class in the form and manner approved by the Court. The Parties shall confer in good faith with regard to the form of the Class Notice in an effort to utilize cost effective forms of notice. The Parties agree, and the Preliminary Approval Order attached hereto as <u>Exhibit 1</u> shall provide, that the last known addresses for members of the Settlement Class in the possession of the Plan's current record-keeper will suffice for all purposes in connection with this Settlement, including, without limitation, the mailing of the Class Notice. Class Counsel will pay the cost for the notice program as part of the settlement administration, not to exceed $50,000. St. Joseph's will pay any amount in excess of $50,000 for the notice program.

  2.2.4  *Internet/Publication of Class Notice.* Class Counsel also shall have given notice by publication of the Settlement Agreement and Class Notice on their firms' websites.

  2.2.5  *The Fairness Hearing.*

      (a)  On the date set by the Court in its Preliminary Approval Order, the Parties shall participate in the hearing (the "Fairness Hearing"), during or after which the Court will determine by order (the "Final Approval Order") whether: (i) this Settlement Agreement is fair, reasonable, and adequate and should be approved by the Court; (ii) final judgment approving this Settlement Agreement should be entered ("Judgment"); (iii) the Settlement Class should be certified as a mandatory non-opt-out class meeting the applicable requirements for a settlement class imposed by Federal Rule of Civil Procedure 23; (iv) the requirements of Federal Rule of Civil

      Procedure 23 and due process have been satisfied in connection with the distribution of the Class Notice to members of the Settlement Class; (v) the requirements of the Class Action Fairness Act have been satisfied; (vi) to award Incentive Award(s) and if so, the amount; and (vii) to award attorneys' fees and further expenses and, if so, the amounts.

  (b)  The Parties covenant and agree that they will reasonably cooperate with one another in obtaining an acceptable Final Approval Order at the Fairness Hearing and will not do anything inconsistent with obtaining such a Final Approval Order.

  2.2.6 *Motion for Final Approval of Class Action Settlement*.  On the date set by the Court in its Preliminary Approval Order, Plaintiffs shall have filed a motion (the "Final Approval Motion") for a Final Approval Order.  The Final Approval Motion shall seek the Court's finding that the Final Approval Order is a final judgment disposing of all claims and all Parties.

2.3. *Finality of Final Approval Order*.  The Final Approval Order shall have become Final, as defined in § 1.11 of this Settlement Agreement.

2.4. *Compliance with the Class Action Fairness Act*.  The Court shall have determined that Defendants complied with the Class Action Fairness Act of 2005 ("CAFA") and its notice requirements by providing appropriate federal and state officials with information about the Settlement.

2.5. *Dismissal of Action*.  The Action shall have been dismissed with prejudice as against Defendants on the Effective Date of Settlement.

2.6. *No Termination*.  The Settlement shall not have terminated pursuant to § 9 below.

2.7. *Establishment of Effective Date of Settlement*.  If Plaintiffs and Defendants disagree as to whether each and every condition set forth in § 2 has been satisfied, they shall promptly confer in good faith and, if unable to resolve their differences within five (5) business days thereafter, shall present their disputes for determination to Robert M. Meyer, the Parties' mediator, who shall make a final determination regarding the Effective Date of the Settlement and whether all the conditions set forth in § 2 have been satisfied.  No portion of the Class Settlement Amount shall be disbursed in the event of such a dispute, pending the mediator's ruling.  Disbursement shall thereafter be made pursuant to the Court's order.

*Garbaccio v. Saint Joseph's Healthcare System, Inc., et al.*
**Settlement Agreement**
**July 20, 2017**

3. RELEASES AND COVENANT NOT TO SUE

3.1. *Released Claims.* Any and all claims, actual or potential claims, actions, causes of action, demands, obligations, liabilities, attorneys' fees, expenses and costs under federal or state laws arising out of the allegations of the Complaint that were brought or could have been brought as of the date of the Settlement Agreement, including any current or prospective challenge to the "church plan" status of the Plan, whether or not such claims are accrued, whether already acquired or subsequently acquired, whether known or unknown, in law or equity, brought by way of demand, complaint, cross-claim, counterclaim, third-party claim, or otherwise. Plaintiffs, on behalf of herself and on behalf of the Settlement Class, hereby expressly waives and relinquishes, to the fullest extent permitted by law and equity, the provisions, rights and benefits of § 1542 of the California Civil Code, which provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

  3.1.1 Released Claims are not intended to include the release of any of the following:

  3.1.2 Any rights or duties arising out of the Settlement Agreement, including the express warranties and covenants in the Settlement Agreement;

  3.1.3 Individual state law claims for benefits pursuant to the Plan's documents;

  3.1.4 Claims related to any other plan that is merged, adopted, or consolidated into the Plan after the execution date of the Term Sheet;

  3.1.5 Following the expiration of the period set forth in 29 U.S.C § 1002(33)(D)(iii), any claim arising under ERISA solely for any act, error, omission or event committed or occurring entirely after the Internal Revenue Service issues a written ruling that the Plan does not qualify as a Church Plan;

  3.1.6 Any claim arising under ERISA after the Plan Sponsor elects to be governed by ERISA;

  3.1.7 Any claim arising under ERISA after a court of law issues a final, non-appealable ruling that the Plan is not a Church Plan

  3.1.8 Any claim arising under ERISA after the Roman Catholic Church claims no association with the plan sponsor; and

  3.1.9 Any claim arising under ERISA after an amendment to ERISA is enacted and become effective as a law of the United States eliminating the Church Plan exception.

3.2. *Release by Named Plaintiffs and Settlement Class.* Subject to § 9 below, upon the Effective Date of Settlement, Named Plaintiffs on behalf of herself and on behalf of the

Settlement Class absolutely and unconditionally releases and forever discharges the Releasees from any and all Released Claims that Plaintiffs or the Settlement Class have.  The Settlement Class covenants and agrees: (i) not to file against any of the Releasees any claim based on, related to, or arising from any Released Claim; and (ii) that the foregoing covenants and agreements shall be a complete defense to any such claim against any Releasee.

3.3.    *Defendants' Releases of Named Plaintiffs, the Settlement Class, and Class Counsel*.  Subject to § 9 below, upon the Effective Date of Settlement, Defendants absolutely and unconditionally release and forever discharge the Named Plaintiffs, the Settlement Class and Class Counsel from any and all claims relating to the institution or prosecution of the Action.

4.    COVENANTS

Named Plaintiffs, on her own behalf and on behalf of the members of the Settlement Class, and Defendants, hereby covenant as follows:

4.1.    *Non-Disparagement*.  The Parties, their counsel, and their agents shall refrain from making derogatory or disparaging comments as to the Settlement Agreement, Plaintiffs, Plaintiffs' Counsel, any Releasee, Defendants, the Plan, and/or Defendants' Counsel.

4.2.    *Plan Status*.  Nothing herein shall be construed as an agreement that the Plan is not properly treated as a Church Plan or that the Plan is subject to ERISA.  Similarly, nothing herein shall be construed as an agreement that the Plan is properly treated as a Church Plan or that the Plan is not subject to ERISA.  The Parties acknowledge that Defendants will continue to operate the Plan as a Church Plan.  Further, the Parties acknowledge that the Plan will be closed to new participants and accrued benefits will be "frozen" on or before December 31, 2018.  Thereafter, no additional benefits will accrue under the Plan for any participants.

5.    REPRESENTATIONS AND WARRANTIES

5.1.    *Parties' Representations and Warranties*.

5.1.1    Named Plaintiffs represents and warrants that she has not assigned or otherwise transferred any interest in any Released Claims against any Releasee, and further covenant that she will not assign or otherwise transfer any interest in any Released Claims.

5.1.2    Named Plaintiffs represents and warrants, on behalf of herself and the Settlement Class, that she shall have no surviving claim or cause of action against any of the Releasees for the Released Claims against them.

5.1.3    The Parties, and each of them, represent and warrant that they are voluntarily entering into this Settlement Agreement as a result of arm's-length negotiations among their counsel; in executing this Settlement Agreement they are relying solely upon their own judgment, belief and knowledge, and the advice and recommendations of their own independently-selected counsel, concerning the nature, extent and duration of their rights and

claims hereunder and regarding all matters that relate in any way to the subject matter hereof; and each Party assumes the risk of and unconditionally waives any and all claims or defenses arising out of any alleged mistake as to facts or law.

    5.1.4   The Parties, and each of them, represent and warrant that they have carefully read the contents of this Settlement Agreement; they have made such investigation of the facts and law pertaining to this Settlement Agreement and all of the matters pertaining thereto as they deem necessary; and this Settlement Agreement is executed freely by each Person executing it on behalf of each of the Parties.

5.2.   *Signatories' Representations and Warranties*.  Each individual executing this Settlement Agreement on behalf of any other Person hereby personally represents and warrants to the other Parties that he or she has the authority to execute this Settlement Agreement on behalf of, and fully bind, each principal that such individual represents or purports to represent.

6.    NO ADMISSION OF LIABILITY

    Defendants deny any and all allegations of wrongdoing made in the Complaint. Defendants aver that the Plan has been and continues to be properly administered as a Church Plan, as defined in Internal Revenue Code § 414(e) and ERISA § 3(33).  This Settlement is not evidence of liability of any type.

7.    SETTLEMENT PAYMENTS

7.1.   *The Class Settlement Amount*.

    7.1.1   The "Class Settlement Amount" shall be forty-two million, five hundred thousand dollars ($42,500,000.00), which consists of the Plan Payment defined in § 7.1.2.

    7.1.2   Defendants are obligated to contribute an aggregate amount of $42.5 million to the Plan no later than sixty (60) days after execution of this Settlement Agreement, or at any prior time. Defendants have the discretion either to contribute $42.5 million directly to the Plan or to contribute $42.5 million to an escrow account and then transfer these proceeds (including interest thereon) to the Plan forty-five (45) days after the Settlement Agreement becomes Final. Additionally, in its sole discretion, Defendants may make additional contributions to the Plan at any time.

    7.1.3   *Payment to Plaintiffs' Counsel*.  Defendants will not oppose Plaintiffs' application to the Court for an award of reasonable attorney fees, out of pocket expenses, and Incentive Award(s) (together, the "Fee Award").  The Fee Award shall not exceed two and one half million dollars ($2,500,000.00) (the "Maximum Total Fee").  The Incentive Award(s), if any, will be paid by Plaintiffs' Counsel from the aggregate amount of the Fee Award.  Defendants will cause the Fee Award to be paid in addition to the payment described in § 7.1.2 of this Settlement Agreement. Defendants will pay Plaintiffs' Counsel the Maximum Total Fee or any lesser amount as ordered by the Court in its discretion within thirty (30) days after the Court's entry of

the Order and Final Judgment, notwithstanding the existence of any timely-filed objections thereto, potential for appeal therefrom, or any collateral attack on the Settlement or any part thereof, subject to the obligation of Plaintiffs' Counsel to make appropriate refunds or repayments to St. Joseph's plus accrued interest (based on the one year Treasury constant maturity rate) within ten calendar days, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or expense award is reduced or reversed.

       7.1.4   *Application for Fees, Expenses, and Incentive Awards for Plaintiffs*.  Class Counsel shall petition the Court for the Fee Award on the date set by the Court in its Preliminary Approval Order.  Defendants and the Releasees expressly agree not to contest or take any position with respect to any application for the Fee Award that does not exceed the Maximum Total Fee, and acknowledge that these matters are left to the sound discretion of the Court.  The procedure for and the allowance or disallowance of any application for the Fee Award that does not exceed the Maximum Total Fee are matters separate and apart from the Settlement and shall be requested to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement.  Any order or proceeding relating solely to a Fee Award that does not exceed the Maximum Total Fee, or any appeal from any order relating thereto, or any reversal or modification thereof, shall have no effect on the Settlement and shall not operate to, or be grounds to, terminate or cancel the Settlement Agreement or to affect or delay the finality of the Final Approval Order or Judgment.

7.2.   *Cost of Notice*.  From the aggregate amount of the Fee Award, Plaintiffs' Counsel will pay the cost for the notice program as part of the settlement administration, not to exceed $50,000.  Defendants will pay any amount in excess of $50,000 for the notice program.

8.      AGREED UPON PLAN PROVISIONS.

8.1.   *Benefits Commitment*. For a period of seven years after the Settlement Agreement becomes Final, if the Plan's trust fund becomes insufficient to pay benefits as they are due, Defendants will make contributions to the trust fund sufficient to pay participants' accrued benefits as defined by the terms of the Plan as benefits become due.

8.2.   *Plan Mergers*.  For a period of seven years after the Settlement Agreement becomes Final, if the Plan is merged with or into another plan adopted by additional employers, or consolidated with another plan, after such event, the Plan's participants and beneficiaries will be entitled to the same (or greater) accrued benefits under the terms of the Plan as they enjoyed before the event.

8.3.   *Funding Restrictions*. If the Plan is ever determined to be governed by ERISA, nothing herein shall be interpreted to prevent the Plan from complying with the benefit restrictions of Section 436 of the Internal Revenue Code of 1986, *as amended,* or any other applicable law, including all restrictions on lump sum payments.

*Garbaccio v. Saint Joseph's Healthcare System, Inc., et al.*
**Settlement Agreement**
**July 20, 2017**

8.4. *Plan Amendment and Termination.* For a period of seven years after the Settlement Agreement becomes Final, St. Joseph's retains the right to amend or terminate the Plan at any time, provided that no amendment or termination will result in a reduction in a participant or beneficiary's accrued benefit as defined in the Plan document.

8.5. *Plan Administration.* Contemporaneous with the Plan amendments closing and freezing the Plan, on or before December 31, 2018, the Plan Administrator will establish procedures concerning Plan administration and notices, as set forth in sections below. At Defendants' sole discretion, any and all reporting and disclosure to Plan participants and/or beneficiaries may be accomplished via electronic dissemination, by electronic posting on Defendants' intranet site or via hard copy. Should a participant request a reporting and disclosure document described below in hard copy, Defendants will furnish such a document in hard copy within a reasonable time.

    8.5.1 *Plan Documents.* Contemporaneous with the Plan amendments closing and freezing the Plan, on or before December 31, 2018, and to the extent such provisions are not already found within the Plan documents, the Plan documents shall: (a) designate a named fiduciary; (b) describe the procedure for establishing and carrying out the current funding policy and method; (c) describe a procedure for allocation of administration responsibilities; (d) provide a procedure for plan amendments and identifying a person(s) with authority to make such amendments; (e) specify the basis on which payments are made to and from the Plan; and (f) provide a joint and survivor annuity payment option for participants and their spouses.

    8.5.2 *Summary Plan Descriptions.* Contemporaneous with the Plan amendments closing and freezing the Plan, on or before December 31, 2018, the Plan Administrator or its designee shall prepare a summary plan description ("SPD") written in a manner calculated to be understood by the average participant. The SPD will include the following information: (a) The name and type of administration of the Plan; (b) the name and address of the person designated as agent for the service of legal process (if not the Plan Administrator); (c) the name and address of the Plan Administrator; (d) the names, titles, and addresses of any trustee or trustees (if they are persons different from the Plan Administrator); (e) a description of the relevant provisions of any applicable collective bargaining agreement, if any; (f) the Plan's requirements respecting eligibility for participation and benefits; (g) a description of the provisions providing for nonforfeitable pension benefits; (h) circumstances which may result in disqualification, ineligibility, or denial or loss of benefits; (i) the source of financing of the Plan and the identity of any organization through which benefits are provided; (j) the date of the end of the Plan year and whether the records of the Plan are kept on a calendar, policy, or fiscal year basis; (j) the procedures to be followed in presenting claims for benefits under the Plan, which shall be those stated in the current SPD and/or the Plan; and (k) the procedures for the filing of an appeal of a denial or partial denial of benefits under the Plan, as currently provided in the SPD and/or the Plan. The SPDs shall be furnished to current participants and beneficiaries as described in § 8.5.

    8.5.3 *Pension Benefit Statements.* For participants who are current or former employees only, the Plan Administrator shall prepare pension benefit statements as it does now, which will be distributed electronically or in hard copy at St. Joseph's sole discretion, as least

once every three years. All other participants and beneficiaries may make a written request for a copy of a pension benefit statement, to be provided within a reasonable time in electronic or hard copy format at St. Joseph's discretion.

  8.5.4 *Plan's Claim Review Procedure*. The Plan's claim review procedures shall be those currently stated in the Summary Plan Description.

9. TERMINATION OF THE SETTLEMENT AGREEMENT

9.1. *Automatic Termination*. This Settlement Agreement shall automatically terminate, and thereupon become null and void, in the following circumstances:

  9.1.1 If the Court declines to approve the Settlement, and if such order declining approval has become Final, then this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the date that any such order becomes Final, provided, however, that if the Court declines to approve the Settlement for any reason, the Parties shall negotiate in good faith to cure any deficiency identified by the Court, and further provided that, if necessary to cure any such deficiency, Class Counsel shall re-submit within a reasonable time the Preliminary or Final Approval Motion with an additional or substitute member of the Settlement Class as a named Class Representative.

  9.1.2 If the Court issues an order in the Action modifying the Settlement Agreement, and if within thirty-one (31) days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Court or by the Parties, then, provided that no Review Proceeding is then pending from such ruling, this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the thirty-first day after issuance of the order referenced in this § 9.1.2.

  9.1.3 If the Third Circuit reverses the District Court's order approving the Settlement, and if within ninety-one (91) days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Third Circuit or by the Parties, then, provided that no Review Proceeding is then pending from such ruling, this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the ninety-first day after issuance of the Third Circuit order referenced in this § 9.1.3.

  9.1.4 If the Supreme Court of the United States reverses or remands a Third Circuit order approving the Settlement, and if within thirty-one (31) days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Supreme Court or by the Parties, then this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the thirty-first day after issuance of the Supreme Court order referenced in this § 9.1.4.

  9.1.5 If a Review Proceeding is pending of an order declining to approve the Settlement Agreement or modifying this Settlement Agreement, this Settlement Agreement shall not be

terminated until Final resolution or dismissal of any such Review Proceeding, except by written agreement of the Parties.

9.2.     *Consequences of Termination of the Settlement Agreement*.  If the Settlement Agreement is terminated and rendered null and void for any reason, the following shall occur:

9.2.1    The Action shall for all purposes with respect to the Parties revert to its status as of the day immediately prior to the execution of the Term Sheet.

9.2.2    All Releases given or executed pursuant to the Settlement Agreement shall be null and void; none of the terms of the Settlement Agreement shall be effective or enforceable; neither the fact nor the terms of the Settlement Agreement shall be offered or received in evidence in the Actions or in any other action or proceeding for any purpose, except in an action or proceeding arising under this Settlement Agreement.

9.2.3    If attorney's fees have been paid to Class Counsel, within ten days of the date that all Parties agree to be the termination date of the Settlement Agreement, Class Counsel will refund or repay St. Joseph's the paid attorney's fees, plus accrued interest (based on the one year Treasury constant maturity rate).

10.     MISCELLANEOUS PROVISIONS

10.1.    *Jurisdiction*.  The Court shall retain jurisdiction over all Parties, the Settlement Class, the Action, and this Settlement Agreement to resolve any dispute that may arise regarding this Settlement Agreement or the orders and notice referenced in § 2 above, including any dispute regarding validity, performance, interpretation, administration, enforcement, enforceability, or termination of the Settlement Agreement, and no Party shall oppose the reopening and reinstatement of the Action on the Court's active docket for the purposes of effecting this § 10.1.

10.1.1  Robert Meyer, mediator in the Action, will act as the final arbiter of any disagreements as to language and confirmatory discovery regarding the Settlement Agreement.

10.2.    *No Limitation of Remedies*.  In the event that the Defendants breach this Settlement Agreement, Plaintiffs will continue to have any and all remedies for such breach.  In the event that Plaintiffs or the Settlement Class breaches this Settlement Agreement, Defendants will continue to have any and all remedies for such breach.

10.3.    *Governing Law*.  This Settlement Agreement shall be governed by the laws of the United States, including federal common law, except to the extent that, as a matter of federal law, state law controls, in which case New Jersey law will apply without regard to conflict of law principles.

10.4.    *Severability*.  The provisions of this Settlement Agreement are not severable.

10.5. *Amendment*. Before entry of a Final Approval Order, any common law to the contrary notwithstanding, this Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Parties. Following entry of a Final Approval Order, any common law to the contrary notwithstanding, the Settlement Agreement may be modified or amended only by written agreement signed on behalf of all Parties, and approved by the Court.

10.6. *Waiver*. The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving Party. The waiver by any Party of any breach of this Settlement Agreement shall not be deemed to be or construed as a waiver of any other breach of this Settlement Agreement, whether prior, subsequent, or contemporaneous with this Settlement Agreement.

10.7. *Construction*. None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against a drafter.

10.8. *Principles of Interpretation*. The following principles of interpretation apply to this Settlement Agreement:

    10.8.1 *Headings*. The headings of this Settlement Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Settlement Agreement.

    10.8.2 *Singular and Plural*. Definitions apply to the singular and plural forms of each term defined.

    10.8.3 *Gender*. Definitions apply to the masculine, feminine, and neuter genders of each term defined.

    10.8.4 *References to a Person*. References to a Person are also to the Person's permitted successors and assigns.

    10.8.5 *Terms of Inclusion*. Whenever the words "include," "includes," or "including" are used in this Settlement Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

10.9. *Further Assurances*. Each of the Parties agrees, without further consideration, and as part of finalizing the Settlement hereunder, that they will in good faith execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter and purpose of this Settlement Agreement.

10.10. *Survival*. All representations, warranties and covenants set forth in this Settlement Agreement shall be deemed continuing and shall survive the Effective Date of Settlement.

10.11. *Notices*.  Any notice, demand, or other communication under this Settlement Agreement (other than notices to members of the Settlement Class) shall be in writing and shall be deemed duly given if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail (postage prepaid), sent by confirmed facsimile, or delivered by reputable express overnight courier:

A.  IF TO NAMED PLAINTIFFS:

Karen L. Handorf
Michelle C. Yau
Scott Lempert
Mary Bortscheller
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., NW, Suite 500 West
Washington, DC 20005
Fax: (202) 408-4699

Lynn Lincoln Sarko
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Fax: (206) 623-3384

Ron Kilgard
KELLER ROHRBACK L.L.P.
3101 North Central Ave., Suite 1400
Phoenix, AZ 85012
Fax: (602) 248-2822

B.  IF TO DEFENDANTS:

Howard Shapiro
Stacey C.S. Cerrone
PROSKAUER ROSE LLP
650 Poydras Street, Suite 1800
New Orleans, LA 0130
Fax:  (504) 310-2022

Any Party may change the address at which it is to receive notice by written notice delivered to the other Parties in the manner described above.

92245939v1

10.12. *Entire Agreement*. This Settlement Agreement contains the entire agreement among the Parties relating to the settlement of the Action. It specifically supersedes any settlement terms or settlement agreements relating to Defendants that were previously agreed upon orally or in writing by any of the Parties, including the terms of the Term Sheet and any and all discussions, representations, warranties, or the like prior to the Effective Date of Settlement.

10.13. *Counterparts*. This Settlement Agreement may be executed by exchange of faxed or emailed executed signature pages, and any signature transmitted by facsimile for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement. This Settlement Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.

10.14. *Binding Effect*. This Settlement Agreement binds and inures to the benefit of the parties hereto, their assigns, heirs, administrators, executors and Successors-in-Interest.

10.15. *Employee Communications*. In their sole discretion as to content and timing of the communication, as to the current employees, Defendants reserve and have the right to communicate information about this settlement and the Plan amendments that will occur, including that the Plan will be closed to new participants, accrued benefits will be "frozen" on or before December 31, 2018, and new features will be added to the 403(b) Plan.

[THIS SPACE INTENTIONALLY LEFT BLANK]

92245939v1

*Garbaccio v. Saint Joseph's Healthcare System, Inc., et al.*
**Settlement Agreement**
**July 20, 2017**

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the dates set forth below.

### FOR NAMED PLAINTIFFS AND THE SETTLEMENT CLASS

Dated this 20th day of July, 2017.

By: _____
Karen L. Handorf
Michelle C. Yau
Scott Lempert
Mary Bortscheller
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., NW, Suite 500 West
Washington, DC 20005

By: _____
Lynn Lincoln Sarko
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052

Ron Kilgard
KELLER ROHRBACK L.L.P.
3101 North Central Ave., Suite 1400
Phoenix, AZ 85012

*Class Counsel*

16

*Garbaccio v. Saint Joseph's Healthcare System, Inc., et al.*
**Settlement Agreement**
**July 20, 2017**

---

**FOR ALL DEFENDANTS**

Dated this 20th day of July, 2017.

By: _____/s/ Howard Shapiro_____
Howard Shapiro
Stacey C.S. Cerrone
PROSKAUER ROSE LLP
650 Poydras Street, Suite 1800
New Orleans, LA 0130

*Attorneys for Defendants*

17