# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DONNA GARBACCIO, individually and on behalf of all others similarly situated, | ) ) ) Civil Action ) |
| Plaintiff, | ) No. 2:16-cv-02740(JMV)(JBC) ) |
| v. | ) Honorable John Michael Vazquez |
| ST. JOSEPH'S HOSPITAL AND MEDICAL CENTER AND SUBSIDIARIES, *et al.*, | ) United States District Judge ) ) Honorable James B. Clark ) United States Magistrate Judge |
| Defendants. | ) ) CLASS ACTION |

**DECLARATION OF MICHELLE C. YAU AND LYNN LINCOLN SARKO IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT AND CERTIFICATION OF SETTLEMENT CLASS AND UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND FOR INCENTIVE AWARDS <u>TO NAMED PLAINTIFFS</u>**

Michelle Yau and Lynn Sarko respectfully submit this Declaration of Class Counsel in Support of Plaintiffs' Unopposed Motion for Final Approval of Settlement Agreement and Unopposed Motion for Award of Attorneys' Fees, Expenses, and for Incentive Awards to Named Plaintiffs. This Settlement,[1] if

---

[1] Capitalized terms not otherwise defined in this Declaration shall have the same meaning ascribed to them in the Class Action Settlement Agreement. A copy of the

approved by the Court, will resolve in its entirety this class action litigation, *Garbaccio v. St. Joseph's Hospital and Medical Center,* No. 2:16-cv-2740 (D.N.J. *filed* May 13, 2016).  We declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.     Michelle C. Yau is a Partner with the law firm of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein"), one of the firms preliminarily approved by this Court as Class Counsel for Plaintiffs and the Settlement Class.  She is a member in good standing of the bars of Massachusetts and the District of Columbia.   She has personal knowledge of the facts set forth below (except for such facts as are within the exclusive personal knowledge of another Declarant) and, if called as witness, she could and would testify competently thereto.

2.     Lynn Lincoln Sarko is the Managing Partner of Keller Rohrback, L.L.P. ("Keller Rohrback"), also one of the firms preliminarily approved by this Court as Class Counsel for Plaintiffs and the Settlement Class. He is a member in good standing of the bars of Washington, Wisconsin, and the District of Columbia. He has personal knowledge of the facts set forth below (except for such facts as are within the exclusive personal knowledge of another Declarant) and, if called as witness, he could and would testify competently thereto.

---

Settlement Agreement is attached as Exhibit 1 to Plaintiffs' Unopposed Motion for Final Approval of Settlement Agreement ("Final Approval Motion"), filed contemporaneously herewith.

94475587v3

3.     Cohen Milstein and Keller Rohrback (hereinafter "Class Counsel") have been responsible for the prosecution of the above-captioned action, and for negotiation of the Settlement Agreement.

4.     The Court preliminarily approved the Settlement Agreement and Notice Procedures on October 5, 2017 ("Preliminary Approval Order"). The Settlement Agreement binds the Settlement Class, which consists of all present and former participants (vested or non-vested) or beneficiaries of the St. Joseph's Healthcare System Pension Plan (the "Plan") as of the Effective Date of Settlement.

5.     The Settlement provides that Defendants will contribute $42.5 million dollars to the Plan within sixty (60) days after execution of the Settlement Agreement, or before.  Defendants have informed Class Counsel that they have contributed the Settlement's $42.5 million, plus an additional $2.5 million, for a total lump-sum Plan contribution of $45 million.  The Settlement provides that for seven years after the Settlement Agreement becomes final, if the Plan's trust fund is ever insufficient to pay benefits as they become due, Defendants must make sufficient contributions to the trust to meet these benefits.  Additionally, the Settlement provides that current participants in the Plan will receive certain ERISA-like reporting, disclosure, and administrative protections, which consists of annual notices regarding participants' accrued retirement benefits as well as

information regarding the funding status of the Plan, its liabilities, and its fiduciaries.  Finally, the settlement prevents St. Joseph's Hospital and Medical Center from decreasing any plan participant's accrued benefit for seven years after the Settlement Agreement is final.

6.     Class Counsel committed considerable time and resources to develop and prosecute this matter without any guarantee of payment.  Class Counsel, along with the law firms of Kessler Topaz Meltzer & Check ("Kessler Topaz") and Izard Kindall & Raabe ("Izard Kindall"), collectively "Plaintiffs' Counsel," worked closely with the Named Plaintiffs, who invested time and effort in helping to develop the claims in the Complaint (ECF No. 1) and overseeing the mediation strategy.   As detailed below, this case involved extensive investigation, consultation with experts, review of documents, and legal research, all of which were necessary to achieve a positive result for the Class.

## I.     PROCEDURAL & FACTUAL BACKGROUND

### A.     Initial Investigation into the Church Plan Exemption

7.     This case is one of a number of cases pending around the country that challenge whether hospitals with a history of religious affiliations, such as St. Joseph's, are entitled to claim that their pension plans are exempt from ERISA as "Church Plans," defined in 29 U.S.C. § 1002(33).

8.     Class Counsel, Cohen Milstein and Keller Rohrback, were responsible

for developing this area of the law more than seven years ago, with the assistance of the main public interest organization concerned with pension rights, the Pension Rights Center ("PRC"). Through the PRC, Class Counsel learned that tens of thousands of hospital employees were being denied the rights and protections of ERISA, including funding, vesting rights, and disclosure rules, because hospitals claimed their pension plans were exempt from ERISA as Church Plans.

9.      Cohen Milstein and Keller Rohrback devoted many hours to researching the definition of a "Church Plan" found in both ERISA and the Internal Revenue Code, 29 U.S.C. § 1002(33) and 26 U.S.C. § 414(e), including analyzing the statutory text, its interaction with other provisions in the U.S. Code, the legislative history of the statute, and agency and court interpretations of the statute. Cohen Milstein and Keller Rohrback concluded, based upon their investigation, that there were three independent and alternative statutory prerequisites for a plan to be a Church Plan—that it be "established" by a church; that it be "maintained" by either a church or a so-called "principal-purpose organization," and that the participants be employed by either a church or an entity "controlled by or associated with" a church, as those terms were defined under ERISA.  Class Counsel concluded that with respect to a typical hospital pension plan, none of these requirements were met, and large hospital systems like St. Joseph's were improperly claiming the exemption.

10.     Cohen Milstein and Keller Rohrback also understood, based upon their research, that filing Church Plan cases like this one would challenge private letter rulings from the IRS and the informal Advisory Opinions of the U.S. Department of Labor.  They also knew that the defense would maintain that the small amount of Church Plan case law, then in existence, would favor a defense reading of the Church Plan exemption.  And they knew that once even a few of the cases were filed, the major hospitals claiming religious ties, which employ hundreds of thousands of people, would be arrayed against them.

11.     Nevertheless, Cohen Milstein and Keller Rohrback decided to take on this high-stakes, high-risk litigation.  They were the only lawyers to do so at that time.  They filed the first cases in March of 2013.  The early results in the district courts were mixed,[2] but when the first three cases reached the appellate courts, Cohen Milstein and Keller Rohrback achieved unanimous rulings in favor of the plaintiffs in the Third, Seventh, and Ninth Circuit.[3]  Those courts held that the hospital plans there at issue were not Church Plans because they were not

---

[2] *Compare, e.g.*, *Kaplan v. Saint Peter's Healthcare Sys.*, No. 13-2941, 2014 WL 1284854 (D.N.J. Mar. 31, 2014); *Rollins v. Dignity Health*, 19 F. Supp. 3d 909 (N.D. Cal. 2013); *and Stapleton v. Advocate Health Care Network*, 76 F. Supp. 3d 796 (N.D. Ill. 2014), *with Overall v. Ascension Health*, 23 F. Supp. 3d 816 (E.D. Mich. 2014); *Medina v. Catholic Health Initiatives*, No. 13-1249, 2014 WL 4244012 (D. Colo. Aug. 26, 2014).

[3] *Rollins v. Dignity Health*, 830 F.3d 900, 905 (9th Cir. 2016); *Stapleton v. Advocate Health Care Network*, 817 F.3d 517 (7th Cir. 2016); *Kaplan v. Saint Peter's Healthcare Sys.*, 810 F.3d 175 (3d Cir. 2015).

established by a church; none of the courts of appeal reached the plaintiffs' alternative statutory arguments.

12.     The defendants then sought review in the Supreme Court. The Supreme Court granted certiorari and consolidated the three cases in December 2016.[4]   Cohen Milstein and Keller Rohrback represented the plaintiffs in the Supreme Court; oral argument was heard March 27, 2017.  The Supreme Court issued its decision on June 5, 2017, reversing the holdings of the appellate courts. *Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652 (2017) ("*Advocate*"). After *Advocate*, Cohen Milstein and Keller Rohrback continue to pursue, on behalf of the plaintiffs, several other arguments in the district courts where these cases were originally filed.  They have continued to amend complaints in other Church Plan cases to reflect the *Advocate* decision and to pursue plaintiffs' alternate arguments that the pension plans of these hospital systems are not Church Plans.

13.     The Settlement could not have been achieved without the firms' total immersion in these issues and commitment to the participants of these plans.

**B.     The Investigation and Litigation of this Case**

14.     In 2016, while Class Counsel was in the process of litigating multiple other "Church Plan" cases, Class Counsel began working with Plaintiff Donna

---

[4] *See Dignity Health v. Rollins*, 137 S. Ct. 547 (Dec. 2, 2016); *Saint Peter's Healthcare Sys. v. Kaplan*, 137 S. Ct. 546 (Dec. 2, 2016); *Advocate Health Care Network v. Stapleton*, 137 S. Ct. 546 (Dec. 2, 2016).

7

Garbaccio to investigate any potential claims she might have against St. Joseph's Hospital and Medical Center.

15.     Class Counsel worked with Plaintiff Garbaccio to investigate the facts, circumstances, and legal issues associated with the allegations and defenses in this action.

16.     This investigation included, *inter alia*: (a) inspecting, reviewing, and analyzing documents produced by or otherwise relating to Defendants, the Plan, and the administration and funding of the Plan; (b) researching the applicable law with respect to the claims asserted in this case and the possible defenses thereto; and (c) researching and analyzing governmental and other publicly-available sources concerning the Defendants, the Plan, and the industry.

17.     Cohen Milstein and Keller Rohrback used this research to carefully draft the sixty-page Complaint.

18.     Shortly after Class Counsel filed this Complaint, Plaintiffs Mary Lynne Barker, Anne Marie Dalio, and Dorothy Flar also filed a complaint against St. Joseph's Hospital and Medical Center in this District with the same causes of action—that the Plan was improperly operating as a Church Plan exempt from ERISA. *Barker v. St. Joseph's Hospital and Medical Center*, No. 2:16-cv-2748-JLL-JAD (D.N.J. *filed* May 16, 2016) ("*Barker* Action"). The law firms representing the plaintiffs in the *Barker* Action were Kessler Topaz and Izard

8

Kindall.

19.     After the *Barker* Action was filed, Class Counsel moved to consolidate the two actions and appoint Plaintiff Garbaccio as Interim Lead Plaintiff and Cohen Milstein and Keller Rohrback as Interim Lead Class Counsel. Class Counsel and the other firms briefed the issue in both this action and the *Barker* Action.  The Court consolidated the two cases into the instant action in July 2016.  Following the refiling of the firms' motion to appoint lead plaintiffs and lead counsel, the Court appointed Cohen Milstein and Keller Rohrback as Interim Lead Class Counsel in March 2017.   Shortly thereafter, the parties agreed to attempt to resolve the case through a third party mediator.  The parties requested that the Court stay the case proceedings while they engaged in settlement negotiations.   ECF No.  97.   In response, on May 8, 2017, the Court administratively terminated the case while the parties attempted to resolve it through mediation.  ECF No.  98.  Throughout this litigation, Class Counsel have worked vigorously to ensure that Plaintiffs were represented by the law firms with the most experience and deepest understanding of the relevant law.

   **C.     Settlement Process**

20.     In preparation for mediation, the Plaintiffs requested and received several documents from Defendants to help the parties define their settlement positions, including actuarial reports about the Plan's funded status and the

assumptions underlying such reports; applicable insurance policies if any; financial statements for the hospital's non-profit organization; and information regarding the number of participants in the Plan.   Class Counsel was able to undertake a thorough investigation of the facts and relevant law, including ongoing Church Plan litigation across the country, and thus was well versed in the strengths and weaknesses of their case.

21.    The parties attended an in-person mediation session on May 24, 2017 in Los Angeles, California.   These negotiations were overseen by a third-party JAMS mediator, Robert A. Meyer, Esq.   Mr. Meyer has substantial experience mediating cases involving ERISA and retirement plan issues, including cases involving the Church Plan exemption.   The mediation occurred after the Supreme Court oral argument, but before the release of the decision.   Both Class Counsel and Defendants' Counsel spoke with the mediator about their positions and also exchanged a draft term sheet concerning potential settlement terms.

22.    The parties, after exchanging several proposals and counter proposals, reached agreement as to the principal terms at the end of the mediation on May 24, 2017.   They signed a term sheet of principal terms of the settlement, intending to further supplement the term sheet.

23.    After further negotiations, the parties signed a supplemental term sheet on June 6, 2017 and filed a notice of settlement with the Court the next day.

10

The parties continued to negotiate key parts of the settlement before finally executing the Settlement Agreement on July 20, 2017.

24.     Only after the parties reached agreement on the key terms for the Settlement did they negotiate attorneys' fees.  These negotiations were overseen by the mediator, Mr. Meyer.  Ultimately, Mr. Meyer assisted the parties in reaching an agreement on attorney's fees through a mediator's proposal, which the parties accepted (subject to approval by the Court).

25.     The Settlement Agreement now before the Court, Exhibit 1 to Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement Agreement, is a comprehensive agreement based on the Term Sheet. The Settlement is the result of lengthy arm's-length negotiations between the parties.

### D.     <u>Settlement Agreement</u>

26.     The Settlement Agreement provides substantial monetary consideration to improve the retirement security of all Plan participants and beneficiaries.  Defendants were required to contribute $42.5 million to the Plan by September 20, 2017, and they have done so, plus an additional $2.5 million in furtherance of this obligation.  This amount represents approximately half of the underfunding of the Plan, and the contribution will result in a substantial reduction of the Plan's underfunding (an estimated $85 million underfunding at the time of negotiations).

11

27.    The Settlement also provides for a guarantee that for the next seven years after the date the Settlement becomes final, if the assets in the Plan's trust are ever insufficient to pay accrued benefits, St. Joseph's will make contributions to the trust fund sufficient to pay participants' accrued benefits (as defined by the terms of the Plan) as benefits become due.

28.    The Settlement Agreement also provides that for seven years, any amendment or termination of the Plan cannot reduce participants' accrued benefits as defined in the Plan.  Likewise, for the next seven years, if the Plan is ever merged with or into another plan, participants will be entitled to the same or greater accrued benefits under the terms of the Plan than they were before the merger.

29.    Also, for the next seven years, the Plan must furnish participants with yearly notifications informing participants about the funding status of the Plan, a statement of each participant's individual benefit, the Plan's total income, the assets and liabilities of the Plan, and the Plan's claim review procedure. This provision of the settlement mimics ERISA's notification requirements and was designed to provide Class members with ERISA-like informational protections so that they are able to plan for their retirement.  At mediation, Class Counsel was told that Defendants anticipated that on or before December 31, 2018, the Plan would be amended to close participation for new employees and freeze accrued

benefits for current participants.   These administrative protections will commence after the Plan is amended.

### E. **Preliminary Approval**

30.     The Court preliminarily approved the Settlement, including the Notice Program, on October 5, 2017.

31.     The Class Notice detailed information about the Settlement, including: (1) a comprehensive summary of the Settlement's terms; (2) notice of Class Counsel's intent to request attorneys' fees, reimbursement of expenses, and Incentive Awards for the services performed by Named Plaintiffs; and (3) detailed information about the Released Claims.

32.     In addition, the Class Notice provided information about the Fairness Hearing date, rights of members of the Settlement Class to object (and deadlines and procedures for objecting), and the procedures to receive additional information.  The Notice included contact information for Class Counsel, information on the toll-free phone number for inquiries, and the address of the settlement website for further information: http://www.cohenmilstein.com/st-josephs-settlement.

33.     Prior to the deadline for disseminating the Class Notice, on October 31, 2017, Class Counsel filed a letter seeking an amendment to the Court's Preliminary Order to allow more time for an attorney hired by an objector to file

any notices of intention to appear at the Final Approval hearing.  This request was necessitated by the Order's deadline providing for such filing on a Sunday, and therefore requiring a Friday filing pursuant to Rule 6(a)(5), reducing the time in which to file.  The Court granted the request, allowing any notices of intention to appear to be filed on or before Monday, February 12, 2018.  The amendment to the Class Notice was made before the Settlement Administrator distributed the Notice to the preliminarily-approved Class.

34.    In accordance with the Preliminary Approval Order, the settlement administrator Dahl Administration LLC, mailed the Class Notice on November 3, 2017 to 10,798 current and former Plan participants, and Class Counsel posted the Complaint, Settlement Agreement, Class Notice, Preliminary Approval Motion, and the Preliminary Order on the Class Settlement websites, https://www.cohenmilstein.com/saintjosephs-settlement                  and www.kellersettlements.com.

35.    As of January 19, 2018, Class Counsel have received and responded to phone calls and emails from 56 Class members.  The settlement website has received 151 hits.  Class Counsel will continue to devote substantial time to answering inquiries from Class members about the Settlement.

36.    To date, Class Counsel have not received any objections to the proposed settlement.  Class Counsel have not received any notices of intention to

14

appear at the March 6, 2018 fairness hearing.

## II.    CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND EXPENSES

37.    With respect to the statements in this Section and Section III, below, the Declarants each make their declarations with respect to the fees and expenses incurred by their respective law firms only, and not as to those of each other's law firms.

38.    Pursuant to the Settlement Agreement, the Parties have agreed that Plaintiffs will seek no more than $2.5 million in a petition for attorneys' fees and expenses and incentive awards of $10,000 for each of the four Named Plaintiffs.

39.    In total, Class Counsel and the other firms expended 2,091.25 professional hours litigating and settling this case. This includes time spent on the following: (1) learning about the widespread use of the Church Plan exemption by major hospital chains to avoid compliance with ERISA; (2) researching the law bearing on the Church Plan exemption and concluding large hospital systems were not entitled to the exemption; (3) investigating the non-profit hospital business as it bore on liability and defenses; (4) investigating the facts of this case, and drafting and filing the Complaint; (5) reviewing hundreds of pages of documents, including publicly available information about the plans and a confidential production of documents from Defendants; (6) conducting factual and legal research; (7) engaging in motion practice to consolidate the *Garbaccio* action with the *Barker*

15

action, appoint interim lead counsel, and appoint an interim lead plaintiff; (8) monitoring developments in all the Church Plan cases in order to determine the impact on this case; (9) negotiating and crafting a comprehensive Settlement Agreement after arm's-length negotiations overseen by a third-party mediator; (10) successfully moving for preliminary approval of the Settlement; (11) drafting the Class Notice materials and posting them on dedicated settlement websites; and (12) individually responding to class member inquiries concerning the Class Notices, the Settlement, and this litigation.

40.    As this case progresses through final approval proceedings, Class Counsel expects that they will continue to devote additional time to this matter. Indeed, Class Counsel still needs to: (1) prepare for and attend the final approval hearing; (2) research, draft, and prepare any additional submissions requested by the Court; (3) assist Settlement Class members with their inquiries; (4) respond to any objections that may arise; and (5) handle any resulting appeal.

41.    This work represents 1,497.25 hours from professionals at Cohen Milstein, 300.50 hours from professionals at Keller Rohrback, 239.50 hours from Kessler Topaz and 54.00 hours from Izard Kindall. *See also* Declaration of Mark K. Gyandoh, ¶ 4; Declaration of Mark Kindall, ¶ 4.

42.    Plaintiffs' Counsel kept files contemporaneously documenting all time spent developing, investigating, and prosecuting the claims in this case.

16

These time and expense reports for our respective firms are summarized herein and attached as Exhibits C (Cohen Milstein fees and expenses) and D (Keller Rohrback fees and expenses), and summarized in the Declaration of Mark Gyandoh (Kessler Topaz's fees and expenses) and the Declaration of Mark Kindall (Izard Kindall's fees and expenses).

43.     The 2,091.25 hours Plaintiffs' Counsel collectively expended on this case were reasonably spent, especially given the high-stakes, high-risk nature of this litigation.

44.     At Plaintiffs' Counsel's standard hourly rates, which are comparable to those of other class action attorneys, Plaintiffs' Counsel's total lodestar for this case comes to $1,169,336.05.

45.     The $2,425,863.95 that Plaintiffs request in attorneys' fees for Plaintiffs' Counsel (the total fee request less expenses and incentive awards for Plaintiffs) therefore represents a multiplier of 2.07.

46.     Work was allocated across the firms to maximize efficiency.  Class Counsel carefully distributed work among all Plaintiffs' Counsel to minimize the fees in this case; thus, senior attorneys did not do the work that could be accomplished by more junior attorneys, and attorneys did not do the work that could be completed by paralegals.  Class Counsel assigned tasks depending on a number of considerations, with the goal of minimizing duplication of effort.  If

17

Class Counsel had not been stringent in these efforts, the number of hours devoted to the case would have been much higher.

47.     Presenting an ERISA case of this type on the merits invites substantial risks, expense, and delay.  Defendants have defended their actions with respect to the Plan to date, and there is no reason to believe they would not continue to do so through trial and on appeal if necessary.  Their counsel, Proskauer Rose LLP, is highly experienced in defending complex ERISA class actions, which further required sufficient devotion of time and resources to this case.

48.     Class Counsel have served in leadership positions in the past, and the hours spent on this case are consistent with Class Counsel's experience in those cases.

49.     The schedule attached as Exhibit C is a summary of time spent by Cohen Milstein attorneys and other professional support staff in this case and the lodestar calculation based on the firm's current billing rates from the inception of the case through January 16, 2018.

50.     The hourly rates charged by Cohen Milstein in this case have been approved in many judicial settlement hearings, and are consistent with rates approved in this Circuit and others in many recent class action cases.

51.     The schedule attached hereto as Exhibit D is a summary of time spent by Keller Rohrback attorneys and other professional support staff in this litigation

and the lodestar calculation based on the firm's current billing rates from the development and inception of this case through January 16, 2018.

52.     The hourly rates charged by Keller Rohrback in this case are similar to those that approved in other judicial settlement hearings, and are consistent with rates approved in this Circuit and others in recent class action cases.

53.     The Declaration of Mark Gyandoh contains a summary of time spent by Kessler Topaz attorneys and other professional support staff in this litigation and the lodestar calculation based on the firm's current billing rates from the development and inception of this case through December 17, 2017. Gyandoh Decl. ¶ 4.    The hourly rates charged by Kessler Topaz in this case are commensurate with rates approved in other litigation, and are consistent with rates approved in this Circuit and others in many recent class action cases.

54.     The Declaration of Mark Kindall contains a summary of time spent by Izard Kindall attorneys and other professional support staff in this litigation and the lodestar calculation based on the firm's current billing rates from the development and inception of this case through December 31, 2017.  Kindall Decl. ¶ 4.  The hourly rates charged by Izard Kindall in this case are commensurate with rates approved in other litigation, and are consistent with rates approved in this Circuit and others in many recent class action cases.

55.     The lodestar figures provided above are based on each firm's current

billing rates and contemporaneous time records regularly prepared and maintained by our respective firms.  Expense items are billed separately and such charges are not duplicated in a firm's billing rates.

56.    Cohen Milstein's rates range from $280 to $880 per hour for 1,497.25 hours performed; Keller Rohrback's rates range from $285 to $995 per hour for 300.50 hours performed; Kessler Topaz's rates range from $250 to $850 per hour for 239.50 hours performed; and Izard Kindall's rates range from $550 to $925 per hour for 54.00 hours performed. *See* Exs. C & D, Gyandoh Decl. ¶ 4; Kindall Decl. ¶ 4.  The lower end represents rates charged by support staff such as paralegals, while the higher end represents rates charged by the senior partners.

57.    These rates are reasonable given the complexity of this litigation, which, as mentioned previously, involved nuanced factual and legal issues against the backdrop of a fast-developing and hotly disputed area of the law.

58.    The rates are justified considering the host of risks presented to Plaintiffs in this litigation.  While this case was progressing, the threshold issue of whether a Church Plan must be established by a church reached the Supreme Court.  Negotiations began after the Supreme Court heard oral argument on the Church Plan cases, but before a decision was issued. The parties signed a term sheet with all the financial terms agreed upon before the decision was issued. Plaintiffs were well aware of the risks of an adverse decision by the Supreme Court

throughout the pendency of this case.  Additionally, Plaintiffs recognize both that the *Advocate* ruling had a negative impact on Plaintiffs' case, and also that post-*Advocate*, additional factual and legal issues remain in this litigation, including how the Supreme Court's ruling will apply to the specific facts of this case; class certification; liability; and damages.   Moreover, the Tenth Circuit issued an opinion in a separate but similar Church Plan case in *Medina v. Catholic Health Initiatives*, No. 16-1005 (10th Cir. Dec. 19, 2017), holding that the plan at issue qualified as a Church Plan because it met the requirements of 29 U.S.C. § 1002(33)(C)(i).   *Medina* is not binding on the case and was released after preliminary approval was granted—nevertheless, it demonstrates the risks present in litigation that this Settlement avoids.

59.     Class Counsel's rates have been approved in other Church Plan cases. Most recently, Cohen Milstein and Keller Rohrback submitted fee petitions in cases in which they reported hourly rates at amounts comparable to those sought herein, and the courts approved the fee awards. *See* Plaintiffs' Motion for Attorney Fees and Expenses, and Incentive Awards to Named Plaintiffs, *Hodges v. Bon Secours Health System, Inc.*, No. 1:16-cv-1079 (D. Md. Oct. 13, 2017),  ECF No. 113 (seeking fees at similar attorney rates to this action); Order Finally Approving Class Settlement, *Bon Secours*, No. 1:16-cv-1079 (D. Md. Dec. 21, 2017), ECF No. 117, attached hereto as Ex. E (approving fees at similar attorney rates to this

21

action); Plaintiffs' Motion for Attorney Fees and Expenses, and Incentive Fees to Named Plaintiffs, *Lann v. Trinity Health Corporation* , No. 8:14-cv-2237,  (D. Md. April 17, 2017),  ECF No. 103-1 (seeking fees at similar attorney rates to this action); Order Finally Approving Class Settlement, *Trinity*, No. 8:14-cv-2237 (D. Md. May 31, 2017), ECF No. 11, attached hereto as Ex. F (approving fees at similar attorney rates to this action); Pls' Motion for Attorney Fees and Expenses, and Incentive Fees to Named Pls., *Griffith v. Providence Health & Services,* No. 14-01720 (W.D. Wash. Feb. 3, 2017), ECF No. 57 (seeking fees at similar attorney rates to this action); Order Finally Approving Class Settlement ¶ 10, *Griffith v. Providence Health & Services*, No. 14-cv-1720 (W.D. Wash. Mar. 21, 2017), ECF No. 69, attached hereto as Ex. G  (approving fees at similar attorney rates to this action); *see also* Pl.'s Mot. for Awards of Att'ys' Fees, Expenses & Incentive Fee, *Overall v. Ascension Health,* No. 13-11396 (E.D. Mich. Aug. 17, 2015), ECF No. 97; Order and Final Judgment ¶ 8, *Overall v. Ascension Health*, No. 13-11396 (E.D. Mich. Sept. 17, 2015) ECF No. 115, attached hereto as Ex. H.

60.     District courts have also granted final approval and awarded fees to Cohen Milstein based on the firm's then-current rates in several ERISA cases.  *See, e.g.*, *Chesemore v. All. Holdings, Inc.*, No. 09-413, 2014 WL 4415919, at *6 (W.D. Wis. Sept. 5, 2014) (awarding then-current attorneys' rates between $395 and $895); *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003 (D. Colo. 2014)

22

(awarding then-current attorneys' rates between $395 and $570); *In re Beacon Assocs. Litig.*, No. 09-777 (S.D.N.Y. May 29, 2013), ECF No. 485 (awarding attorneys' rates between $295 and $895); *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, No. 08-8093 (S.D.N.Y. May 27, 2015), ECF Nos. 271, 273-4B, 287 (awarding attorneys' rates between $210 and $915); *N.J. Carpenters Health Fund v. RALI Series 2006-Q01 Trust*, No. 08-8781 (S.D.N.Y. July 31, 2015), ECF Nos. 347, 353 (awarding attorneys' rates between $240 and $915); *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, No. 12-5125 (C.D. Cal. Dec. 5, 2013), ECF Nos. 182, 320 (awarding attorneys' rates between $330 to $835); *In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, No. 09-2063 (D. Colo. July 31, 2014), ECF Nos. 505, 527 (awarding attorneys' rates between $250 and $895); *Redington v. Goodyear Tire & Rubber Co.*, No. 07-1999 (N.D. Ohio Sept. 22, 2008), ECF Nos. 109-1, 113 (awarding then-current attorneys' rates between $575 and $625).

61.     Similarly, district courts granted final approval and awarded fees to Keller Rohrback based on the firm's then-current rates in several ERISA cases. *See, e.g.*, *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, MDL No. 2335 (S.D.N.Y. Sept. 24, 2015), ECF No. 637 (awarding then-current attorneys' rates between $475 and $895); *In re Bear Stearns Cos. ERISA Litig.*, No. 08-2804 (S.D.N.Y. Sept. 20, 2012), ECF No. 163 (awarding then-current attorneys' rates between $295 and $785); *In re Ford Motor Co. ERISA Litig.*, No.

94475587v3

06-11718 (E.D. Mich. Feb. 15, 2011), ECF No. 291 (awarding then-current attorneys' rates between $331 and $740); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, No. 05-1725 (E.D. Mich. May 12, 2010), ECF No. 493 (awarding then-current attorneys' rates between $300 and $675); *In re State St. Bank & Trust Co. ERISA Litig.*, No. 07-8488 (S.D.N.Y. Feb. 19, 2010), ECF No. 191 (awarding then-current attorneys' rates between $300 and $740); *In re CMS Energy ERISA Litig.*, No. 02-72834 (E.D. Mich. June 27, 2006), ECF No. 226 (awarding then-current rates between $300 and $640).

62.     Additionally, Class Counsel's rates are on a par with, or even below, other plaintiffs' firms with whom they have litigated cases. For example, on May 27, 2015, the Southern District of New York approved fees for attorneys at Bernstein Litowitz Berger & Grossmann ranging from $340 to $975 per hour.[5] And, as a further example, on March 3, 2015, the Southern District of New York approved fees for attorneys at Labaton Sucharow LLP and Berman DeValerio ranging from $300 to $975 and $300 to $835 per hour, respectively.[6]  And on June 4, 2014, the District of West Virginia approved fees for attorneys at Labaton Sucharow LLP and Robbins Geller Rudman & Dowd LLP ranging from $275 to

---

[5] *See* Stickney Decl. at Ex. 1, *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, No. 08-08093 (S.D.N.Y), ECF No. 273-6.
[6] *See* Tubbs Decl. at Ex. A & DeValerio Decl. at Ex. A, *In re Fannie Mae 2008 Sec. Litig.*, No. 08-7831 (S.D.N.Y.), ECF Nos.  542-9, 542-10.

$975 per hour.[7]

63.   Class Counsel's rates are also commensurate with, or below those of defense firms that are defending Church Plan cases. The *National Law Journal*'s annual survey of law firm billing rates in 2014 shows that the 2014 billing rates for attorneys at Proskauer Rose LLP, defense counsel in this case, ranged from $295 to $950.[8] Similarly, the 2014 billing rates for attorneys at Arnold & Porter LLP, defense counsel in the *Dignity* Church Plan case, ranged from $345 to $950.[9]

64.   At this point, no Class members have objected to the fee request.

## III.   CLASS COUNSEL'S EXPENSES

65.   Class Counsel have advanced or incurred a total of $34,136.05 in expenses to date.   Summaries of each firms' expenses are attached hereto as Exhibits C (Cohen Milstein's expenses), D (Keller Rohrback's expenses), Gyandoh Decl. ¶ 5, and Kindall Decl. ¶ 5.   The expenses incurred in developing and prosecuting this litigation are commercially reasonable and are reflected on the books and records of each firm.   These books and records are prepared from

---

[7] *See* Bernstein Decl. at Ex. B & Reise Decl. at Ex. B, *In re Massey Energy Co. Sec. Litig.*, No. 10-00689 (S.D. W.Va.), ECF Nos. 197-7, 197-8.

[8] *See Billing Rates Across the Country: The National Law Journal's Annual Survey of Law Firm Billing Rates for Partners & Associates*, Nat'l L. J. (Jan. 13, 2014), http://www.nationallawjournal.com/id=1202636785489/ Billing-Rates-Across-the-Country?slreturn=20150704133227 (last accessed January 18, 2018).

[9] *See Billing Rates Across the Country: The National Law Journal's Annual Survey of Law Firm Billing Rates for Partners & Associates*, Nat'l L. J. (Jan. 13, 2014), http://www.nationallawjournal.com/id=1202636785489/ Billing-Rates-Across-the-Country?slreturn=20150704133227 (last accessed January 18, 2018).

94475587v3

expense vouchers, check records, and other source materials and represent an accurate recordation of the expenses incurred.

66.     The categories of expenses for which Class Counsel seek reimbursement are the type of expenses routinely charged to hourly clients and should therefore be reimbursed here.  These costs included, *inter alia*: filing fees; travel expenses for court appearances and mediation; copying, delivery and telecommunications charges; expert fees; mediator's charges; settlement administration costs; and similar litigation expenses.  These expenses are typically billed by attorneys to paying clients, and are calculated based on the actual expenses of these services in the markets in which they have been provided. Counsel maintains appropriate back-up documentation for each expense.  These expenses incurred were necessary to secure the resolution of this litigation.

67.     These expenses were advanced with no guarantee of recovery.  As a result, Class Counsel had a strong incentive to keep costs to a reasonable level and did so.

## IV.    INCENTIVE AWARDS TO NAMED PLAINTIFFS

68.     Class Counsel also wish to note the efforts made on behalf of the Class by the four Named Plaintiffs—Donna Garbaccio, Mary Lynne Barker, Anne Marie Dalio, and Dorothy Flar.

69.     The Named Plaintiffs came forward to file the Complaints in this

action, and thereafter actively worked with Plaintiffs' Counsel throughout the litigation. They collected numerous documents relating to their employment at St. Joseph's and their participation in the Plan; reviewed drafts of the Complaints and approved the filing of the final version; stayed abreast of the filings and settlement negotiations; monitored developments in the other Church Plan cases pending in the courts of appeal and the Supreme Court; and were involved in the mediation and ultimate settlement of this litigation. The Named Plaintiffs communicated with Class Counsel by telephone, email, and by U.S. Mail throughout this lawsuit. They contributed time that could otherwise have been devoted to work and family obligations, and did so in order to help the members of the Settlement Class secure significant relief—resulting in an approximately 50% reduction of the Plan's underfunding.

70. The Class Notice sent to the members of the Settlement Class disclosed that Class Counsel would seek Incentive Awards for these Plaintiffs, to be taken from the $2.5 million award described in § 7.1.4 of the Settlement Agreement. To date, no objections to these awards have been received.

71. Class Counsel believe that payment of Incentive Awards to these Plaintiffs is justified in this case, and that the amounts are fair and reasonable in light of the benefits that Plaintiffs helped achieve for the Settlement Class. Class Counsel accordingly asks the Court to recognize the efforts of Named Plaintiffs by

awarding incentive awards in the amount of $10,000 each.

## V.    CONCLUSION

For the reasons discussed herein, Class Counsel has concluded that the Settlement is a fair, reasonable, and adequate resolution of the claims against Defendants in this ERISA class action.  The requested fees, expenses, and class representative Incentive Awards to the Named Plaintiffs are warranted as well. Thus, Named Plaintiffs and Class Counsel respectfully request that the Court grant their Unopposed Motion for Final Approval of Settlement Agreement and Certification of Settlement Class and approve attorneys' fees and expenses, grant Incentive Awards to the Named Plaintiffs, and enter the final order and judgment in its entirety.

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 19TH day of January, 2018, in Washington, D.C.

COHEN MILSTEIN SELLERS & TOLL, PLLC

By: s/ *Michelle C. Yau*
Michelle C. Yau
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C.  20005
Tel: (202) 408-4600
Fax: (202) 408-4699

28

94475587v3

Email: myau@cohenmilstein.com

***Attorney for Plaintiffs***

KELLER ROHRBACK L.L.P.

By: s/*Lynn Lincoln Sarko*
    Lynn Lincoln Sarko
    1201 Third Avenue, Suite 3200
    Seattle, WA 98101
    Tel: (206) 623-1900
    Fax: (206) 623-3384
    Email: lsarko@kellerrohrback.com

94475587v3